RYAN H. WEINSTEIN (Bar No. 240405)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067-4643
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email:  rweinstein@cov.com

DYLAN SILVA (Bar No. 306363)
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, California 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email:  dsilva@cov.com

Attorneys for Nonparty
New Wave MMXV Limited

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PETITION OF OASIS FOCUS FUND LP FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING | No. _____<br><br>**NONPARTY NEW WAVE MMXV LIMITED'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA ISSUED BY OASIS FOCUS FUND LP; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date: Not Set<br>Hearing Time: Not Set |

## NOTICE OF MOTION AND MOTION TO QUASH

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, at a hearing in the above-referenced Court that will occur on a date and at a time to be determined, nonparty New Wave MMXV Limited ("New Wave") will, and hereby does, move to quash the subpoena of Oasis Focus Fund LP ("Oasis").

This motion is made pursuant to 28 U.S.C. § 1782 ("§ 1782") and Rule 45 of the Federal Rules of Civil Procedure on the following grounds:

(1)  The subpoena violates Rule 45's 100-mile rule by purporting to require New Wave — a China-based holding company incorporated in the British Virgin Islands with no employees or business in the United States — to produce documents and a witness in San Francisco, thousands of miles from where New Wave resides.  *See* Fed. R. Civ. P. 45(c)(1)(A) & (2)(A).

(2)  The subpoena fails to satisfy § 1782's statutory requirements because (a) New Wave is a foreign entity that does not reside in and cannot be "found" in the Southern District of New York, the district where Oasis filed its § 1782 application; and (b) much of the subpoenaed discovery is irrelevant to the foreign proceeding.  Section 1782's requirement that the subpoenaed entity "resides or is found" in the district where the application is made "extends § 1782's reach to the limits of personal jurisdiction consistent with due process."  *In re del Valle Ruiz*, 939 F.3d 520, 523-24 (2d Cir. 2019).  In the discovery context, this means "the respondent's [sic] having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all."  *Id.* at 530.  Yet Oasis's requested discovery has nothing to do with New Wave's single in-forum contact:  a March 2021 acquisition of NASDAQ-traded shares.  In any event, the foreign tribunal has *already ruled* that much of the requested discovery is irrelevant and thus cannot be "use[d]" in the foreign proceeding.

(3)  The subpoena far exceeds the scope of permissible discovery under Rules 26 and 45 of the Federal Rules of Civil Procedure, and, accordingly, the Court should exercise its "broad discretion" under *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) to quash it.  Oasis's subpoena seeks duplicative and extraordinarily burdensome discovery that will already be produced to Oasis by a party to the underlying proceeding in the Cayman Islands.  The subpoena also seeks to circumvent the Cayman Islands court's rulings, which set temporal limits on discovery and established a protocol for seeking the

preproduction approval of Chinese regulatory authorities.  In this way and others, the subpoena represents a blatant end-run around the "foreign proof-gathering restrictions or other policies of a foreign county." *See Intel*, 542 U.S. at 265.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Virginia Milstead and exhibits thereto, the Declaration of Dylan Silva and exhibits thereto, the pleadings and other papers filed in the action, all matters of which the Court may take judicial notice, and such other matters and argument as the Court may consider at the time of the hearing.

DATED:  October 28, 2022                    Respectfully submitted,

COVINGTON & BURLING LLP


By:   */s/ Ryan H. Weinstein*
        RYAN H. WEINSTEIN

*Attorneys for Nonparty*
*New Wave MMXV Limited*

## STATEMENT OF ISSUES (Civ. L.R. 7-4(a)(3))

1.     Whether the subpoena violates Rule 45's 100-mile rule by purporting to require New Wave — a China-based holding company incorporated in the British Virgin Islands with no employees or business in the United States — to produce documents and a witness in San Francisco, California, thousands of miles from where New Wave resides. *See* Fed. R. Civ. P. 45(c)(1)(A) & (2)(A).

2.     Whether the subpoena should be quashed under 28 U.S.C. § 1782 because New Wave is a foreign entity that does not reside in and cannot be "found" in the Southern District of New York, the district where Oasis filed its § 1782 application.

3.     Whether the subpoena should be quashed under 28 U.S.C. § 1782 and Rules 26 and 45 of the Federal Rules of Civil Procedure because it seeks discovery irrelevant to the only issue in the foreign proceeding.

4.     Whether the subpoena should be quashed under 28 U.S.C. § 1782, Rules 26 and 45 of the Federal Rules of Civil Procedure, and *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), because compliance would: (1) require New Wave to circumvent the Cayman Court's discovery rulings and Chinese data privacy regulations; and (2) unduly burden New Wave by requiring it to produce the same documents that will be produced by a party to the proceeding.

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................ 3

    A.    New Wave.............................................................................................. 3

    B.    The Sina Going-Private Transaction.................................................... 3

    C.    Cayman Islands Appraisal Proceeding ................................................ 4

    D.    The § 1782 Petition and Rule 45 Subpoenas ....................................... 5

    E.    New Wave's Attempts to Meet and Confer .......................................... 6

III.    ARGUMENT ..................................................................................................... 7

    A.    Oasis's Subpoena Is Invalid Because It Violates Rule 45's Geographical Limits . 7

    B.    Oasis's Subpoena Fails to Satisfy § 1782's Statutory Prerequisites...................... 9

        1.    New Wave Does Not Reside In, and Cannot Be "Found" In, the Southern District of New York ................................................................. 9

        2.    The Subpoena Seeks Discovery Irrelevant to the Sole Issue in the Cayman Islands Proceeding .................................................................. 12

    C.    The Court Should Exercise Its Discretion Under *Intel* and the Federal Rules to Quash the Subpoena................................................................ 14

        1.    The Subpoena Seeks Duplicative Discovery More Readily Obtainable — and Already Requested — From a Party to the Foreign Proceeding........ 14

        2.    The Subpoena Imposes Undue Burdens on a Nonparty .......................... 16

        3.    The Subpoena Circumvents the Cayman Court's Discovery Rulings...... 18

IV.    CONCLUSION................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## FEDERAL CASES

*Ex Parte Abdalla*,
 2021 WL 168469 (S.D.N.Y. Jan. 19, 2021) ...................................................................19

*In re Al Sadeq*,
 2021 WL 2828810 (N.D. Cal. Mar. 30, 2021)...............................................................12

*In re: Application of Joint Stock Co. Raiffeinsenbank*,
 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) ................................................................12

*In re Application of Ooo Promnefstroy*,
 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ...............................................................15

*In re Ex Parte Application of Qualcomm Inc.*,
 162 F. Supp. 3d 1029 (N.D. Cal. 2016) ........................................................................12

*In re: Ex Parte Application Varian Med. Sys. Int'l AG*,
 2016 WL 1161568 (N.D. Cal. Mar. 24, 2016)...............................................................14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 2013 WL 183944 (N.D. Cal. Jan. 17, 2013) .......................................................2, 15, 18

*Certain Funds, Accounts And/Or Inv. Vehicles v. KPMG, L.L.P.*,
 798 F.3d 113 (2d Cir. 2015)....................................................................................12, 13

*City of Roseville Emps.' Ret. Sys. v. Apple Inc.*,
 2021 WL 1176641 (N.D. Cal. Mar. 29, 2021).................................................................8

*Compaq Comput. Corp. v. Packard Bell Elecs., Inc.*,
 163 F.R.D. 329 (N.D. Cal. 1995)..................................................................................18

*In re Edelman*,
 295 F.3d 171 (2d Cir. 2002)............................................................................................7

*Est. of Klieman v. Palestinian Auth.*,
 293 F.R.D. 235 (D.D.C. 2013).........................................................................................8

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
 27 F.4th 136 (2d Cir. 2022) ..........................................................................................18

*Genx Processors Mauritius Ltd. v. Jackson*,
 2018 WL 5777485 (D. Nev. Nov. 2, 2018) .....................................................................8

*In re Gorsoan Ltd.*,
 2021 WL 240736 (S.D.N.Y. Jan. 25, 2021) ..................................................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Hermitage Glob. Partners LP v. Prevezon Holdings Ltd.*,
2015 WL 728463 (S.D.N.Y. Feb. 19, 2015)............................................................8

*Matter of Hranov*,
2022 WL 1261827 (S.D.N.Y. Apr. 28, 2022)....................................................9, 11

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*,
326 U.S. 310 (1945)..........................................................................................10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004).....................................................................................*passim*

*Khrapunov v. Prosyankin*,
931 F.3d 922 (9th Cir. 2019) .........................................................................9, 10

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
895 F.3d 238 (2d Cir. 2018)...........................................................................9, 14

*In re Klein*,
2022 WL 1567584 (S.D.N.Y. May 18, 2022) ......................................................10

*Knaggs v. Yahoo! Inc.*,
2016 WL 3916350 (N.D. Cal. July 20, 2016)......................................................14

*Lemberg Law LLC v. Hussin*,
2016 WL 3231300 (N.D. Cal. June 13, 2016) ....................................................16

*In re Letters Rogatory from the Tokyo Dist. Prosecutor's Office*,
16 F.3d 1016 (9th Cir. 1994) .............................................................................14

*In re Ex Parte LG Elecs. Deutschland GmbH*,
2012 WL 1836283 (S.D. Cal. May 21, 2012) .....................................................15

*In re Macquarie Bank, Ltd.*,
2015 WL 3439103 (D. Nev. May 28, 2015)........................................................15

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015)...............................................................................16

*Menken v. Emm*,
503 F.3d 1050 (9th Cir. 2007) ...........................................................................10

*In re Moose Enters. Pty. Ltd.*,
2016 WL 10987320 (C.D. Cal. June 2, 2016) ......................................................8

*Nidec Corp. v. Victor Co. of Japan*,
249 F.R.D 575 (N.D. Cal. 2007)...............................................................2, 15, 16

*Pfaff v. Deutsche Bank AG*,
2020 WL 3994824 (S.D.N.Y. July 15, 2020) ................................................11, 12

*In re Portfolio Recovery Assocs., LLC Tel. Consumer Prot. Act Litig.*,
  2021 WL 5920086 (S.D. Cal. Dec. 15, 2021) ..................................................................8

*Price Waterhouse LLP v. First Am. Corp.*,
  182 F.R.D. 56 (S.D.N.Y. 1998) .................................................................. *passim*

*Rainsy v. Facebook, Inc.*,
  311 F. Supp. 3d 1101 (N.D. Cal. 2018) ..................................................................12

*Singleton v. Kernan*,
  2018 WL 2287444 (S.D. Cal. May 18, 2018) ..................................................................15

*Tiffany (NJ) LLC v. Qi Andrew*,
  276 F.R.D. 143 (S.D.N.Y. 2011) ..................................................................17, 19

*Tresona Multimedia, LLC v. Legg*,
  2015 WL 4911093 (N.D. Ill. 2015) ..................................................................17

*Uniloc USA, Inc. v. Apple Inc.*,
  2020 WL 6262349 (N.D. Cal. Oct. 23, 2020) ..................................................................8

*Union Fenosa Gas, S.A. v. Depository Tr. Co.*,
  2020 WL 2793055 (PAE) (S.D.N.Y. 2020) ..................................................................18

## FEDERAL STATUTES

28 U.S.C. § 1782 .................................................................. *passim*

## FEDERAL RULES

Federal Rule of Civil Procedure 26 .................................................................. *passim*

Federal Rule of Civil Procedure 45 .................................................................. *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

New Wave MMXV Limited ("New Wave") is a China-based holding company incorporated in the British Virgin Islands with no employees.  Its sole director is a citizen of the Hong Kong Special Administrative Region of the People's Republic of China and a permanent resident of China.  In March 2021, New Wave acquired the remaining outstanding shares of Sina Corporation ("Sina"), a leading online media company incorporated in the Cayman Islands and headquartered in Beijing.  The result of this "going private" transaction was that Sina's shares ceased to be publicly traded on the NASDAQ.  Although more than 93% of Sina's voting shares approved the transaction, a few investors, including Oasis Focus Fund LP ("Oasis"), dissented.  Sina therefore petitioned the Grand Court of the Cayman Islands to determine the fair value of the dissenting shareholders' shares.

Discovery in this Cayman Islands proceeding is now underway:  Sina is currently collecting and reviewing at least 45,000 documents for production to Oasis and other dissenting shareholders.  But rather than await *any* of these documents, Oasis served a 15-page subpoena on nonparty New Wave, pursuant to 28 U.S.C. § 1782, that demands a corporate deposition and 47 categories of documents, all of which Oasis has *already* demanded from Sina.  Oasis's breathtakingly broad subpoena is a transparent effort to unduly burden an affiliated *nonparty* with discovery properly obtained from a party to the underlying proceeding.  Indeed, in the six months since serving the subpoena, Oasis's counsel has been unable to identify *a single document* that New Wave possesses but that Oasis cannot obtain in party discovery from Sina, a far more "convenient" and "less burdensome" source.  *See* Fed. R. Civ. P. 26(b)(C)(i) & 45(d)(1).[1]  Nor is New Wave aware of any such documents.[2]  Worse, Oasis's defective and duplicative subpoena would circumvent the Cayman Islands court's carefully crafted discovery limits and other protocols designed to help ensure compliance with Chinese data privacy law.

The subpoena should be quashed for at least three reasons.

---

[1] *See* Declaration of Dylan Silva ("Silva Decl.") ¶ 6; concurrently filed herewith.

[2] *Id.*

*First*, the subpoena runs roughshod over Rule 45's 100-mile rule.  It would require New Wave to produce documents and a corporate designee in San Francisco, *over 6,000 miles* from where New Wave resides.  The subpoena should be quashed for this reason alone.  *See* Fed. R. Civ. P. 45(c)(1)(A) & (2)(A).

*Second*, the subpoena fails to satisfy § 1782's statutory prerequisites.  New Wave does not reside in and cannot be "found" in the Southern District of New York, where Oasis filed its *ex parte* application for issuance of the subpoena  *Cf.* 28 U.S.C. § 1782.  Oasis's subpoena also violates § 1782's "for use" requirement by demanding discovery irrelevant to the sole issue in the Cayman proceeding: the fair value of Sina's shares when Sina's shareholders approved the "going private" merger in December 2020.

*Third*, there is ample reason for the Court to exercise its discretion under the Federal Rules of Civil Procedure and *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), to quash the subpoena.  The subpoena demands discovery that Oasis knows will soon be produced by a party to the litigation and a far "more convenient, less burdensome, [and] less expensive" source.   *See* Fed. R. Civ. P. 26 (b)(2)(C)(i).  Indeed, the Cayman Court *already ordered* Sina to produce much, if not all, of the relevant discovery Oasis has subpoenaed from New Wave.  Oasis's subpoena would thus force a nonparty to expend substantial time, effort, and expense merely to replicate work already underway by a party.  In this way and others, Oasis has failed to take "reasonable steps to avoid imposing undue burden or expense" on a nonparty.  *See* Fed. R. Civ. P. 45(d)(1); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D 575, 577 (N.D. Cal. 2007) ("[A] party may seek to quash a subpoena by demonstrating that the documents may be sought from other sources that are less burdensome without the need to seek them from a nonparty by subpoena.").

Finally, the subpoena blatantly seeks to circumvent the Cayman Islands court's orders setting temporal limits on discovery — which Oasis has opted to appeal — as well as protocols designed to allow time for preapproval by Chinese regulatory authorities.  Oasis cannot evade what it perceives as "less-than-favorable discovery rules" in two foreign fora by invoking the jurisdiction of U.S. courts.  *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *2, *3 (N.D. Cal. Jan. 17, 2013).  Yet that is precisely what Oasis attempts to do here.

For all these reasons and those discussed below, the subpoena should be quashed.

## II.    BACKGROUND

### A.    New Wave

New Wave is a China-based holding company incorporated in the British Virgin Islands that does not conduct any business activities and does not have any employees.  (Declaration of Virginia Milstead ("Milstead Decl."), Ex. 1 at 4, 7/10/20 Sina Schedule 13D/A.)  It is not registered to do business in California and has no offices in the United States.  (Milstead Decl. ¶ 3.)  Charles Guowei Chao is New Wave's sole director and resides in Shanghai, China.  (*Id.*)  New Wave does not do business of any kind in the United States.  (*Id.*)[3]

### B.    The Sina Going-Private Transaction

Sina is a leading online media company registered in the Cayman Islands and headquartered in Beijing.  (*Id.* ¶ 2.)  The company offers Chinese-language digital content and services to the global Chinese communities.  (*Id.*)  Among other entities, Sina controls Sina Weibo, a Chinese-language microblogging platform with more than 200 million users.  (*Id.*)  From April 2000 until March 2021, Sina's shares were publicly traded on the NASDAQ.  (*Id.*)

In July 2020, New Wave sent a non-binding proposal letter to Sina's Board of Directors proposing to acquire all of Sina's outstanding shares that New Wave did not already own for $41 per share.  (*Id.*, Ex. 2 at 4, 7/6/2020 Sina 6-K.)  At the time, New Wave owned Sina shares representing about 58% of the aggregate voting power.  (*Id.* at 1.)  To evaluate the proposal, Sina's Board formed a Special Committee, which then retained Morgan Stanley Asia Limited as its financial advisor.  (*Id.*, Ex. 3 at 4, 8/7/2020 Sina 6-K.)

On the advice of its financial and legal advisors, the Special Committee unanimously recommended that the Board approve the merger, which it did in September 2020.  Under the final merger agreement, New Wave agreed to acquire each of Sina's outstanding shares for $43.30.  (*Id.*, Ex. 4 at 7, 9/28/2020 Sina 6-K.)  On December 23, 2020, the matter was put to a shareholder vote, with 93.6% of the total votes cast approving the merger.  (*Id.*, Ex. 5, 12/23/2020 Sina 6-K.)  The Company received notices

---

[3] Although New Wave indirectly owns two California-based entities, Weibo R&D Limited and Sina.com Online, New Wave neither exercises control nor conducts any business through these two entities. (Milstead Decl. ¶ 3.)

of objections from a few dissenting shareholders, including Oasis.  (*Id.*)  The merger closed on March 22, 2021.  (*Id.*, Ex. 6, 3/23/2021 Sina 6-K.)

### C.     Cayman Islands Appraisal Proceeding

On May 18, 2021, Sina petitioned the Grand Court of the Cayman Islands, Financial Services Division, to determine the fair value of the dissenting shareholders' shares.  (*Id.*, Ex. 7, 1/25/2022 Judgment, at 3 ("Cayman Judgment").)

In January and May 2022, the Cayman Court issued orders that resolved certain discovery issues relevant here:

(1)  The Cayman Court held that events after December 23, 2020 — the date on which Sina's shareholders overwhelmingly approved the merger — would "have no part in the calculation" of the fair value of Sina shares.  (*See id.* ¶¶ 8, 34-45, 46 ("[T]he [valuation] date should be ascertained by reference to the date on which a vote was taken by all shareholders and it makes sense that the fair value is to be assessed at the same point in time and in the same circumstances as existed when the majority of shareholders voted to approve the terms of the merger.").)

(2)  Consistent with that ruling, the Cayman Court limited the dissenting shareholders' party discovery requests to documents "prepared or created in the five year period ending on [December 23, 2020] and which are relevant to the determination of the fair value of the Dissenters' shares in the Company as at [December 23, 2020]."  (*See id.*, Ex. 8, 5/18/2022 Directions Order ¶ 8(a) ("Directions Order").)[4]

(3) To facilitate compliance with Chinese law, the Cayman Court allowed Sina to first request and obtain approval from the Beijing Municipal Cyberspace Administration of China before producing any documents located in China.  (*See id.*, Ex. 7, Cayman Judgment ¶¶ 52, 57-58, 63, 68, 76.)  In so ruling, the Court recognized "the potentially severe consequences" for Sina's business if it "fails to obtain the necessary approvals" under Chinese law.  (*Id.* ¶ 68.)

---

[4] The dissenting shareholders are appealing the valuation date set by the Cayman court.  (*See* Milstead Decl., Ex. 9.)

(4)   The Cayman Court ordered Sina to produce to the dissenters 25 categories of documents, including documents related to the merger valuation and transaction; Sina's financial statements and projections; the Fairness Opinion; the Special Committee's formation and activities; communications with New Wave, other interested buyers, and shareholders; and TuSimple's IPO funding and valuation (one of several companies in Sina's long-term investment portfolio at the time of the merger).  (*See id.*, Ex. 8, Directions Order, App. 3 at 31-35.)  Sina is reviewing about 45,000 potentially responsive documents collected from various custodians, all of whom are in China.  (Milstead Decl. ¶¶ 13-14.)  Sina has sought approval from the Office of the Central Cyberspace Affairs Commission in China to produce the materials to Oasis and the other dissenters.  (*Id.* ¶ 14.)  Sina has twice requested information from the dissenters needed to proceed with Sina's application for regulatory approval to transfer the requested documents abroad.  As of the date of this filing, the dissenters have not provided Sina with the information required to facilitate that process.  (*See* Milstead Decl., Ex. 11.)

### D.     The § 1782 Petition and Rule 45 Subpoenas

On April 14, 2022, before *any party discovery* had been produced in the Cayman proceeding, Oasis filed an *ex parte* application in the Southern District of New York seeking issuance of subpoenas under 28 U.S.C. § 1782 to New Wave and Mr. Chao.  (*See* Silva Decl. ¶ 2, Ex. 1, *In re Petition of Oasis Focus Fund, LP*, No. 22-mc-113, filed April 14, 2022.)[5]  The application attached separate but nearly identical Rule 45 subpoenas addressed to the two nonparties.  The New Wave subpoena requested 47 categories of documents, with a date range of January 1, 2018 through May 1, 2021, that directly overlap with the discovery Sina will produce under the Cayman Court's Directions Order.  For example, Oasis requested

---

[5] Oasis also filed separate § 1782 applications against different entities in the District Court for the Southern District of California (seeking discovery from TuSimple), and in the District Court of Delaware (seeking discovery from Morgan Stanley and Morgan Stanley & Company, the parent of MSAL and the underwriter of TuSimple's April 2021 initial public offering, respectively).  *See In re Petition of Oasis Focus Fund, LP*, No. 22-MC-0024-MN-SRF (D. Del.), filed on January 20, 2022; *In re Petition of Oasis Focus Fund, LP*, No. 3:22-mc-00112-BGS (S.D. Cal.), filed on January 21, 2022.  TuSimple filed a motion to quash that is fully briefed and is pending.  Morgan Stanley opposed the application but the dispute appears to have been resolved.

Oasis has not asked the Cayman court to issue letters of request to United States, Chinese, or British Virgin Island courts for any of the discovery that it seeks in that proceeding. (Milstead Decl. ¶ 16.)

all documents related to the merger (*Id.*, Ex. 3, Oasis Subpoena to New Wave ("Subpoena"), Req. Nos. 5-10, 22, 24-26, 28-29, 33), Sina's value and financial performance (*id.*, Req. Nos. 12-17, 19-21, 31, 34), other proposals to acquire Sina (*id.*, Req. No. 23), and the TuSimple IPO (*id.*, Req. Nos. 36-47). Oasis also requested all documents related to New Wave's formation (*id.*, Req. No. 1), any equity financing that Mr. Chao provided New Wave for the merger (*id.*, Req. No. 29), Sina preference shares allegedly issued to New Wave around November 7, 2017 (*id.*, Req. No. 30), and any profits or returns that New Wave or Mr. Chao anticipated making from the merger (*id.*, Req. No. 35).

Along with the 47 document requests, Oasis's subpoena demands testimony from a New Wave corporate representative about every document produced by New Wave, "the subjects [the documents] cover," and how the documents were identified, collected, and reviewed for production. (*Id.* at 15.) Because the Application was made *ex parte*, the court granted Oasis's proposed order without prejudice to objections New Wave might later raise. (*Id.*, Ex. 2, May 4, 2022 Order at 2 ("Nothing in this Order shall preclude Respondents from seeking relief under Rule 26 and Rule 45 of the Federal Rules of Civil Procedure[.]").)

The subpoena designates the place of compliance as San Francisco. (*See id.*, Ex. 3, Subpoena at 1.) New Wave has therefore moved to quash before this Court. *See* Fed. R. Civ. P. 45(d)(3)(A).

### E.    New Wave's Attempts to Meet and Confer

Since June 2022, New Wave has attempted to resolve this nonparty discovery dispute informally, to no avail. During the parties' discussions, counsel for Oasis admitted that it served the nonparty subpoena on New Wave before receiving *any* party discovery in the underlying litigation. (Silva Decl. ¶ 6.) Over the ensuing four months, Oasis refused to identify any specific categories of documents that it believes New Wave possesses but cannot be obtained in party discovery. (*Id.* ¶ 6(a).) Instead, counsel asserted a broad right to cumulative and duplicative discovery from New Wave, contrary to the Federal Rules. (*Id.* ¶ 6(d).) Counsel also consistently declined to explain why it is necessary to burden a nonparty here, especially before receiving party discovery. At the same time, counsel repeatedly demanded that New Wave produce documents located exclusively in China without first seeking the necessary approval from Chinese regulatory authorities, effectively demanding that New Wave violate Chinese law and expose itself to potentially severe sanctions. (*Id.*)

In September 2022, New Wave confirmed through discussions with Sina's Cayman Islands counsel that Sina does, in fact, possess documents responsive to the 47 subpoena requests, and that Sina intends to produce these materials to Oasis in the underlying litigation after receiving approval from the competent authorities in China. (*Id.* ¶ 6(c).) New Wave then conveyed this information to Oasis's counsel and offered to produce a declaration from Sina's lawyers to this effect. Again, however, Oasis refused to withdraw the subpoena or to meaningfully limit its scope. (*Id.* ¶ 6(d).) More recently, and to avoid needless litigation, New Wave offered to produce seven categories of documents (subject to all Chinese data privacy regulations) and to revisit Oasis's document requests after Oasis had reviewed Sina's production. Once more Oasis refused, instead asserting a right to all the burdensome and duplicative discovery that its subpoena demanded. New Wave was therefore forced to file this motion. (*Id.* ¶ 6(f)-(h).)

## III.  ARGUMENT

### A.  Oasis's Subpoena Is Invalid Because It Violates Rule 45's Geographical Limits

As a threshold matter, Oasis's subpoena is defective because it violates Rule 45's 100-mile rule. It purports to require New Wave — a China-based holding company incorporated in the British Virgin Islands that conducts no business activities and has no employees — to produce documents and a corporate designee in San Francisco, thousands of miles from where New Wave resides.

Permissible discovery under 28 U.S.C. § 1782 must comply with the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1782(a) ("[T]he testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."). Under Rule 45, "the court for the district where compliance is required *must* quash or modify a subpoena that: . . . requires a person to comply beyond the geographic limits specified in Rule 45(c)." Fed. R. Civ. P. 45(d)(3)(A)(ii) (emphasis added). Rule 45(c), in turn, allows subpoenas to command nonparties to attend depositions or produce documents only "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A) & (2)(A); *see also In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002) (confirming the 100-mile rule applies to subpoenas issued pursuant to 28 U.S.C. §1782).

Oasis's subpoena to New Wave violates these geographical limits. The subpoena requires that New Wave produce a corporate designee and documents responsive to 47 requests in San Francisco. (*See*

Silva Decl., Ex. 3, Subpoena.)  It demands that New Wave's designee testify about "all documents" produced, the "subjects" covered in every document produced, and how each document was "identified, collected, and reviewed for production." (*Id.* at 11.)  Yet New Wave does not reside in, regularly transact business in, or employ anyone in the United States. (Milstead Decl. ¶ 3.)  Although New Wave indirectly owns two California-based subsidiaries (*id.* ¶ 3), the subpoena's requests have nothing to do with these entities. (*See generally* Silva Decl., Ex. 3, Subpoena.)  Instead, the subpoenaed documents — as much as they relate to New Wave at all — pertain to New Wave's China-based investment activity. (*Id.*)  Thus, if the documents exist, they are maintained in Beijing (Milstead Decl. ¶ 17), and any corporate designee with knowledge sufficient to testify about them resides in China — 6,000 miles from the place of compliance. (*Id.*)

Courts regularly quash nonparty subpoenas under these circumstances. *See, e.g.*, *In re Portfolio Recovery Assocs., LLC Tel. Consumer Prot. Act Litig.*, 2021 WL 5920086, at *4 (S.D. Cal. Dec. 15, 2021) (refusing to enforce document subpoena where nonparty did not conduct business within 100 miles of place of compliance); *Uniloc USA, Inc. v. Apple Inc*., 2020 WL 6262349, at *2 (N.D. Cal. Oct. 23, 2020) (same); *In re Moose Enters. Pty. Ltd*., 2016 WL 10987320, at *1-2 (C.D. Cal. June 2, 2016) (quashing Rule 45 subpoena for 30(b)(6) testimony of an Australian company when "employees who ha[d] knowledge about the case live[d] and work[ed] in Australia and d[id] not regularly conduct business" in California); *accord Hermitage Glob. Partners LP v. Prevezon Holdings Ltd.*, 2015 WL 728463, at *4 (S.D.N.Y. Feb. 19, 2015) (quashing Rule 45 subpoena seeking 30(b)(6) testimony where no corporate witness with personal knowledge of topics resided in or was employed within 100 miles of the deposition location); *Est. of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 239 (D.D.C. 2013) ("[U]nder Rule 45 this Court must quash a subpoena where a nonparty organization does not employ anyone who is suitable to serve as a Rule 30(b)(6) representative within 100 miles of the [deposition location].").[6]

---

[6] Indeed, for similar reasons, this Court would lack personal jurisdiction over New Wave to enforce the subpoena because New Wave lacks sufficient contacts with the Northern District of California. *See Genx Processors Mauritius Ltd. v. Jackson*, 2018 WL 5777485, at *6 (D. Nev. Nov. 2, 2018) ("A district court must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Rule 45."); *City of Roseville Emps.' Ret. Sys*. *v. Apple Inc.*, 2021 WL 1176641, at *10 (N.D.

The same result should follow here.  In seeking to circumvent the discovery rulings of the Cayman Islands court (*see* Section III.C.3, *infra*), Oasis has served a duplicative and unduly burdensome nonparty subpoena (*see* Sections III.C.1. & C.2, *infra*) that violates Rule 45's geographical limitations.  The subpoena should be quashed for this reason alone.

### B.    Oasis's Subpoena Fails to Satisfy § 1782's Statutory Prerequisites

The subpoena is also invalid for failing to satisfy 28 U.S.C. §1782's statutory prerequisites.  Under § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782.  This statutory language has been distilled to permit district courts to authorize discovery where three requirements are met: "(1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'"  *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (internal citation omitted); *accord Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 243 (2d Cir. 2018).  Oasis's subpoena is defective because it fails to satisfy the first and second requirements.

### 1.    New Wave Does Not Reside In, and Cannot Be "Found" In, the Southern District of New York

Oasis's subpoena fails to satisfy § 1782's first prerequisite because New Wave does not reside in and cannot be "found" in the Southern District of New York, where Oasis filed its *ex parte* petition.  *Cf.* 28 U.S.C. § 1782; *Khrapunov*, 931 F.3d 922 at 925.  New Wave is a British Virgin Islands entity based in China without employees or any physical presence in New York.  (Milstead Decl. ¶ 3, Ex. 1.)  It is not registered to do business, and, in fact, does not do business in the United States.  (*Id.*)  The subpoena should therefore be quashed.  *See id.*; *Matter of Hranov*, 2022 WL 1261827, at *1, *7 (S.D.N.Y. Apr. 28,

---

Cal. Mar. 29, 2021) ("If the non-party named in the subpoena is a corporation, the corporation is amenable to service" only in the "forum within which the corporation has sufficient minimum contacts.").

2022) (granting motion to quash where foreign bank not "found in" New York); *In re Klein*, 2022 WL 1567584, at *6 (S.D.N.Y. May 18, 2022) (similar).

Section 1782's requirement that the subpoenaed entity "'resides or is found' in the district . . . where the application is made," *Prosyankin*, 931 F.3d at 925, "extends § 1782's reach to the limits of personal jurisdiction consistent with due process." *del Valle Ruiz*, 939 F.3d at 523-24. To determine whether the Court can exercise specific personal jurisdiction over a nonparty foreign corporation, the Second Circuit devised a framework in which the court must: (i) "'first assess the connection between the nonparty's contacts with the forum and the order at issue' and [(ii)] 'then decide whether exercising jurisdiction for the purposes of the order would comport with fair play and substantial justice.'" *Id.* at 529 (internal citation omitted). Put differently, the petitioner must show that "the respondent's [sic] having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all." *Id.* at 530; *see also id.* at 531 n.12 ("For instance, an applicant could target its discovery to all documents relating to *x* created during the course of respondent's engagement with forum entity *y*."); *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007) (specific jurisdiction requires (1) "purposeful availment and direction" of forum-related contacts; (2) that "the claim must be one which arises out of or relates to" those contacts; and (3) that "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable").

Oasis does not claim that New Wave's contacts with the Southern District of New York support the court's exercise of general jurisdiction. (*See* Silva Decl., Ex. 1, Oasis Mem. at 13-15.) Nor do the facts support the court's exercise of specific jurisdiction. In its petition, Oasis contends that New Wave purposefully availed itself of the forum's laws — and thereby subjected itself to U.S. discovery demands — merely by acquiring Sina shares that were once listed on the NASDAQ. (*See id.* at 15.) But, by this logic, any foreign investor who purchases securities traded on U.S. exchanges effectively consents to personal jurisdiction in the United States over all of its business activities. Exercising personal jurisdiction based on such minimal contacts hardly comports with notions of "fair play and substantial justice." *See Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 320 (1945).

In any event, New Wave's acquisition of Sina shares under the merger agreement are not "the primary or proximate reason" that the requested discovery exists, for at least two reasons. *First*, the

subpoena seeks discovery that predates the merger by *three years*.  (*See* Silva Decl., Ex. 3, Subpoena at 8 (specifying date range as "January 1, 2018 through May 1, 2021").).  Those materials would exist regardless whether the merger had taken place, and thus regardless whether New Wave had acquired Sina's publicly traded shares as part of the merger.  That is reason alone to quash the subpoena.  *See Matter of Hranov*, 2022 WL 1261827, at *6 (quashing subpoena after finding no causal relationship between forum contacts and discovery requests "contain[ing] no geographic or temporal limitations").

     *Second*, the subpoena seeks discovery that has nothing to do with the March 2021 NASDAQ transaction itself.  For example, Oasis demands *all* documents related to: (1) New Wave's formation, operations, and acquisition of Sina preference shares *in November 2017*[7]; (2) Sina's *past* value and performance, its investments, business activities, the industry in which it operates, communications with the Chinese Government, and any other proposals to acquire Sina stock or assets other than the merger[8]; and (3) TuSimple's 2019 and 2020 fundraising, its 2021 IPO, and its relationship with New Wave, Mr. Chao, and Sina.[9]  None of these documents exist because New Wave acquired Sina's publicly traded shares as part of the challenged merger agreement.  The court therefore lacked jurisdiction to order their production.  *See del Valle Ruiz*, 939 F.3d at 529.

     Oasis's reliance on *Pfaff v. Deutsche Bank AG*, 2020 WL 3994824 (S.D.N.Y. July 15, 2020) is unavailing.  (*See* Silva Decl., Ex. 1, Oasis Mem. at 13-14.)  In *Pfaff*, the court ordered a foreign entity to produce § 1782 discovery that *specifically related* to and existed because of the subpoenaed entities' silver trading on the New York Commodities Exchange (COMEX).  For example, the subpoena requested the *trading data itself*, communications *about* the trades, employment and disciplinary files *related to the*

---

[7] *See, e.g.*, Subpoena, Req. No. 30 ("All DOCUMENTS and COMMUNICATIONS concerning the preference shares issued to NEW WAVE on or around November 7, 2017, as referenced in [Sina's] Form 6-k filing dated November 8, 2017.").

[8] *Id.* Req. No. 18 ("All DOCUMENTS and COMMUNICATIONS concerning [Sina's] filings with the Securities and Exchange Commission and any agency or component of the Government of the People's Republic of China."); No. 23 ("All DOCUMENTS and COMMUNICATIONS concerning any inquiry, expression of interest, or proposal from any party to acquire any or all of the stock or assets of [Sina].").

[9] *Id.* Req. No. 36 ("All DOCUMENTS and COMMUNICATIONS concerning the TUSIMPLE IPO."); No. 39 ("All DOCUMENTS and COMMUNICATIONS concerning the TUSIMPLE 2019 PRIVATE PLACEMENT.").

trades, employee compensation *attributable to* trading gains, and bank income *earned from* the trades. *See Pfaff v. Deutsche Bank AG*, Case 1:20-mc-00025-KPF, Dkt. 1-1, filed January 14, 2020 (S.D.N.Y.). Thus, "the discovery material sought — which largely relate[d] to Moving Respondents' silver trading through COMEX —*proximately resulted* from the respondent's forum contacts." *Pfaff*, 2020 WL 3994824, at *10 (emphasis added). By contrast, Oasis here demands broad discovery unrelated to New Wave's sole in-forum contact: the March 2021 acquisition of publicly-traded Sina shares. Because the court lacked jurisdiction to order this discovery, the subpoena should be quashed.

### 2. The Subpoena Seeks Discovery Irrelevant to the Sole Issue in the Cayman Islands Proceeding

Oasis's subpoena also violates § 1782's "for use" requirement by demanding discovery irrelevant to the sole issue in the Cayman proceeding: the fair value of Sina's shares on December 23, 2020, the date Sina's shareholders approved the "going private" merger.

Section 1782 requires that the subpoenaed discovery be "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782. "By adopting the phrase 'for use,' Congress plainly meant to require that § 1782 applicants show that the evidence sought is 'something that will be employed with some advantage or serve some use in the proceeding.'" *Certain Funds, Accounts And/Or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015) (internal citation omitted). This means that, at a minimum, the subpoenaed discovery "must be relevant." *In re Al Sadeq*, 2021 WL 2828810, at *3 (N.D. Cal. Mar. 30, 2021) ("To be 'for use' in a foreign proceeding, the information sought must be relevant."); *Rainsy v. Facebook, Inc*., 311 F. Supp. 3d 1101, 1110 (N.D. Cal. 2018) ("A party seeking discovery pursuant to §1782 must show that the discovery sought is relevant to the claims and defenses in the foreign tribunal."). Indeed, "it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding." *KPMG*, 798 F.3d at 121 n.7; *see also Certain Funds*, 798 F.3d at 121 (explaining that the key question is "not simply whether the information sought is relevant, but whether [Petitioners] will actually be able to *use* the information in the proceeding") (emphasis in original). This requirement squares with the Federal Rules, which further delimit § 1782 discovery. *See In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) (applying Rule 26 to deny petition for § 1782 discovery); *see also In re: Application of Joint Stock*

*Co. Raiffeinsenbank*, 2016 WL 6474224, at \*6 (N.D. Cal. Nov. 2, 2016) ("The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure.").

Oasis cannot show that its overbroad subpoena meets these standards. The sole issue to be determined in the Cayman proceeding is the "fair value of the Dissenters' shares in [Sina] as a going concern as at 23 December 2020." (*See* Milstead Decl., Ex. 8, Directions Order at 2.) Yet the Oasis subpoena seeks expansive discovery "through May 1, 2021" (Silva Decl., Ex. 3, Subpoena) and thus over four months *after* the December 23, 2020 "valuation date" established by the Cayman court. (Milstead Decl., Ex. 7, Cayman Judgment ¶¶ 8, 34-45, 46.) Indeed, the Cayman court has already ruled that events post-dating December 23, 2020 are irrelevant and that the dissenting shareholders may not request documents created after that date in fact discovery. (*See id.* ¶ 34; *id.*, Ex. 8, Directions Order ¶ 8(a).)[10] Any requests for materials created or prepared *after* the December 23, 2020 merger approval therefore fail § 1782's "for use" requirement.

The subpoena also demands broad discovery having nothing to do with the December 2020 value of Sina's shares, including: (1) "all DOCUMENTS concerning the formation of NEW WAVE" (Silva Decl., Ex. 3, Subpoena, Req. No 1); (2) "all . . . DOCUMENTS AND COMMUNICATIONS concerning [the] Cayman Islands Appraisal Proceeding" itself (*id.*, Req. No. 4); (3) "all DOCUMENTS and COMMUNICATIONS exchanged between [New Wave] and the government of the People's Republic of China concerning [Sina] (Req. No. 11); and (4) "ALL DOCUMENTS AND COMMUNICATIONS concerning" the April 2021 IPO of TuSimple, a San Diego self-driving truck startup. (Req. Nos. 13-14.) Even setting aside the Cayman court's temporal restrictions, Oasis cannot show that materials responsive to these breathtakingly broad requests "will be employed with some advantage or serve some use" in the appraisal proceeding. *See KPMG*, 798 F.3d at 120 (internal quotation marks and citation omitted).

---

[10] Although the Directions Order contemplates that the parties' *experts* may seek materials from Sina "produced" after the valuation date (*see* Milstead Decl., Ex. 8, Directions Order ¶ 21), New Wave is unaware of any such request made by Oasis's experts in the Cayman proceeding. In any event, the Cayman Court held that the parties themselves may not seek discovery post-dating the December 23, 2020 valuation date.

1

2

**C.     The Court Should Exercise Its Discretion Under *Intel* and the Federal Rules to Quash the Subpoena**

3

4

5

6

Even if Oasis's subpoena had satisfied § 1782's statutory requirements, the Court still retains "broad discretion" to grant or deny the requested discovery.  *See Intel*, 542 U.S. at 260-61, 264; *see also Kiobel*, 895 F.3d at 244 ("Once a district court is assured that it has jurisdiction over the petition, it 'may grant discovery under § 1782 in its discretion.'") (internal citation omitted).

7

8

9

10

11

12

In *Intel*, the Supreme Court set forth four non-exclusive factors that a district court should consider when determining whether to exercise its discretion in connection with a § 1782 petition.  Among those factors are:  (1) whether the discovery sought can be obtained from "a participant in the foreign proceeding"; (2) whether the discovery sought is "unduly intrusive or burdensome"; and (3) whether the § 1782 petition "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country."  *Intel*, 542 U.S. at 264-65.  Oasis's subpoena fails on all accounts.

13

14

15

16

17

18

19

20

21

The subpoena also exceeds the permissible scope of nonparty discovery under the Federal Rules, which determine "[t]he proper scope of discovery arising out of a § 1782 application."  *See In re: Ex Parte Application Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *5 (N.D. Cal. Mar. 24, 2016) ("The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure."); *In re Letters Rogatory from the Tokyo Dist. Prosecutor's Office*, 16 F.3d 1016, 1019-20 & n.3 (9th Cir. 1994) ("[T]he legislative history [of 28 U.S.C. § 1782] makes clear that '[i]f the court fails to prescribe the procedure, the appropriate provisions of the Federal Rules of Civil Procedure are to be followed'"); *Knaggs v. Yahoo! Inc.*, 2016 WL 3916350, at *7 (N.D. Cal. July 20, 2016) (collecting cases).  For both reasons, the Court should exercise its discretion to quash the subpoena.

22

23

**1.     The Subpoena Seeks Duplicative Discovery More Readily Obtainable — and Already Requested — From a Party to the Foreign Proceeding**

24

25

26

27

The first *Intel* factor favors quashing the subpoena because the requested discovery can be more easily obtained from Sina, "a participant in the foreign proceeding."  *See Intel*, 542 U.S. at 264-65.  Oasis's subpoena amounts to little more than an attempt to apply coercive pressure on an affiliated *nonparty* through burdensome and needless discovery.

28

While *Intel's* first discretionary factor assesses whether the "person from whom discovery is sought is a participant in the foreign proceeding," *id.* at 264, the "key issue is whether the material is obtainable through the foreign proceeding." *In re Macquarie Bank, Ltd.*, 2015 WL 3439103, at *6 (D. Nev. May 28, 2015); *In re Application of Ooo Promnefstroy*, 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009) ("[I]t is the foreign tribunal's ability to control the evidence and other production, not the nominal target of the § 1782 application, on which the district court should focus.").  Courts therefore look to whether the petitioner could obtain the subpoenaed discovery from a party to the foreign proceeding. *See, e.g.*, *In re Ex Parte LG Elecs. Deutschland GmbH*, 2012 WL 1836283, at *2 (S.D. Cal. May 21, 2012) (finding this factor weighed against allowing § 1782 discovery); *Cathode Ray Tube*, 2013 WL 183944, at *2 (first *Intel* factor weighed against discovery where "it [was] obvious that [petitioner] actually [sought] information" about parties to foreign proceeding and petitioner "ha[d] discovery options available to it in [the foreign proceeding]"); *Macquarie Bank*, 2015 WL 3439103, at *6 ("This factor militates against allowing § 1782 discovery when the petitioner effectively seeks discovery from a participant in the foreign tribunal even though it is seeking discovery from a related, but technically distinct entity.").

Any arguably *relevant* discovery that Oasis seeks through its subpoena (*see* Section III.B.2., *supra*) can be obtained from Sina, a party to the Cayman proceeding and a far "more convenient, less burdensome" source.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i); *Singleton v. Kernan*, 2018 WL 2287444, at *1 (S.D. Cal. May 18, 2018) ("Courts will consider granting a request for a subpoena duces tecum only if the documents sought from the non-party are discoverable, are not equally available to plaintiff, and are not obtainable from defendants through a request for production of documents."); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.").  Nearly all of Oasis's 47 document requests overlap with the categories of documents that the Cayman court has already required Sina to disclose. (*Compare* Silva Decl., Ex. 3, Subpoena Req. Nos. 1-47 *with* Directions Order Categories a-x.).[11]

---

[11] Discovery that can be obtained directly from Sina includes, for example, documents and testimony related to (1) the Sina merger negotiations (Req. Nos. 5-7, 22, 25-26, 28, 33); (2) the value and financial performance of Sina, its assets, investments, and businesses (Req. Nos. 4, 12-17, 19-21, 30-31, 34);  (3) proposals to acquire "any or all of the stock or assets" of Sina (Req. No. 23); and (4) the TuSimple's IPO (Req. Nos. 36-43, 45-46).

These documents are already in Sina's possession and documents "prepared or created in the five year period ending on [December 23, 2020]" will soon be produced by Sina to Oasis in accordance with the Cayman court's procedures for party discovery.  (*See* Milstead Decl., Ex. 8, 5/18/2022 Directions Order ¶ 8(a); Milstead Decl. ¶¶ 8, 13, 14, 17 (confirming that Sina has collected and is producing relevant, responsive documents); *see also id.*, Ex. 10 (Lord Aff. ¶¶ 6-7 (discussing the status of Sina's document preservation and collection efforts).)  There is "simply no reason" to allow Oasis to bypass party discovery under these circumstances.  *See Nidec Corp.*, 249 F.R.D. at 577.

### 2.    The Subpoena Imposes Undue Burdens on a Nonparty

Oasis's broad subpoena should also be quashed under the Federal Rules and *Intel's* second factor because the subpoena unduly burdens New Wave, a nonparty to the foreign proceeding.  *See Intel*, 542 U.S. at 264-65.  "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015).  Rule 26 requires the court to "limit the frequency or extent of discovery that . . . is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26 (b)(2)(C)(i).  Nonparties subject to a subpoena are further protected by Rule 45, which requires parties to "avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  The court therefore "must quash or modify a subpoena that . . . subjects a [nonparty] to undue burden."  Fed R. Civ. P. 45(d)(3)(a)(iv); *Lemberg Law LLC v. Hussin*, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) ("The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts.") (citing *United States v. C.B.S., Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1982)).

Oasis's subpoena unduly burdens New Wave for at least four reasons.  *First*, the 47 separate document requests each seek broad categories of documents that would effectively require New Wave to replicate the document collection and review efforts already undertaken by Sina, a party to the dispute.  There is simply no reason why New Wave, as a nonparty, should be forced to expend considerable time, effort, and expense consulting, reviewing, and analyzing huge volumes of documents, merely to replicate the work already underway by a party to the action.  Oasis cannot show that its expansive discovery

requests *from a nonparty* are "proportional to the needs of the case," especially given "the parties' relative access to relevant information." Fed. R. Civ. P. 26(b)(1). Indeed, nearly all of Oasis's requests call for documents and information more readily accessible by Sina. (*See* Section III.C.1, *infra*.). In the six months since serving the subpoena, Oasis's counsel has been unable to identify *any specific categories of documents* that cannot be obtained from Sina, a party to the dispute. (*See id.*) Instead, Oasis has asserted a right to duplicative or cumulative discovery from New Wave. (*See* Silva Decl. ¶ 6.) That is contrary to law. *Cf.* Fed. R. Civ. P. 26 (b)(2)(C)(i) & 45(d)(1); *Tresona Multimedia, LLC v. Legg*, 2015 WL 4911093, at * 3 (N.D. Ill. 2015) ("A non-party subpoena seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative.") Oasis's refusal to take "reasonable steps" to meaningfully reduce the undue burden on a nonparty constitutes grounds to quash the subpoena. *See* Rule 45(d)(1).

*Second*, the subpoena seeks documents that are located exclusively in China. (*See* Milstead Decl. ¶¶ 14, 17.) The production of Chinese documents to foreign entities is strictly regulated by Chinese data privacy laws, and New Wave would face harsh sanctions for failing to secure the preproduction approval of Chinese authorities. (*See id*. ¶ 14.) To comply with the subpoena, New Wave would need to engage in the same burdensome approval process to be undertaken by Sina. (*See id*. ¶¶ 14, 17.) This constitutes yet another independent ground to quash Oasis's subpoena. *See, e.g.*, *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 159 (S.D.N.Y. 2011) (*Intel* factor weighed against discovery when producing documents could subject respondents to "potentially harsh sanctions . . . applicable to both the Banks and their personnel" from Chinese authorities); *In re Gorsoan Ltd.*, 2021 WL 240736, at *7 (S.D.N.Y. Jan. 25, 2021) (denying § 1782 petition where burden included "mov[ing responsive documents] across international borders" and "engag[ing] additional foreign counsel or translat[ing] the documents into English so that the documents can be reviewed for responsiveness and privilege").[12]

---

[12] While "the Second Circuit has recently held that 'a district court is not categorically barred from allowing discovery under § 1782 of evidence located abroad,' the Circuit stated, in the very next sentence, that 'a court may properly, and in fact should, consider the location of documents and other evidence when deciding whether to exercise its discretion to authorize such discovery.' The Court must therefore still consider the appropriateness of the subpoena's request for documents outside the United States." *Union*

*Third*, the subpoena seeks documents created through May 1, 2021, well past the December 23, 2020 cut-off date ordered by the Cayman court.  (*See* Part III.B.2., *supra*.)  As a nonparty, New Wave should not be forced to engage in more expansive discovery than the parties themselves.  Moreover, as the Cayman court has already ruled, documents related to events after the December 23, 2020 merger approval are irrelevant to the appraisal proceeding.  (*See* Milstead Decl., Ex. 7, Cayman Judgment ¶ 34.) "Obviously, if the sought-after documents are not relevant . . . , then any burden whatsoever imposed upon [the nonparty] would be by definition 'undue.'"  *Compaq Comput. Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995).

*Finally*, Oasis's demand for corporate representative testimony about every single document produced and every topic covered by those documents is unduly burdensome on its face.  Requiring a witness to prepare to testify about any one of tens of thousands of documents imposes an undue burden far exceeding the scope of permissible discovery.  *See Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 62 (S.D.N.Y. 1998) (explaining that "Rule 45's goal is to prevent inconvenience to the flesh-and-blood human beings who are asked to testify").

### 3.    The Subpoena Circumvents the Cayman Court's Discovery Rulings

The third *Intel* factor also weighs in New Wave's favor because the subpoena seeks to evade the Cayman court's orders placing temporal restrictions on document discovery and establishing protocols for assuring compliance with Chinese data privacy laws.  *See Intel*, 542 U.S. at 264-65.

"[C]ircumvention occurs where the applicant uses a § 1782 application to avoid measures that are intended to restrict certain means of gathering or using evidence."  *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 153 (2d Cir. 2022).  Where there is a "perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782," this factor weighs against the application.  *Cathode Ray Tube*, 2013 WL 183944, at *2.

---

*Fenosa Gas, S.A. v. Depository Tr. Co.*, 2020 WL 2793055 (PAE) (S.D.N.Y. 2020) (quoting *del Valle Ruiz,* 939 F.3d at 533).

The New Wave subpoena seeks to side-step the Cayman court's discovery rulings in two ways. *First*, as explained, the Cayman court ruled that the dissenting parties themselves can only request discovery materials created or prepared on or *before* the December 23, 2020 merger approval.  (*See* Milstead Decl., Ex. 7, Cayman Judgment ¶ 34; *id.*, Ex. 8, Directions Order ¶ 8(a)).[13]  The dissenters have appealed that order (*see id.*, Ex. 9).  But rather than await the outcome of its appeal, Oasis seeks to circumvent the lower court's ruling by invoking the jurisdiction of U.S. courts to demand documents through May 1, 2021.  The § 1782 application thus constitutes a blatant end-run around the "foreign proof-gathering restrictions or other policies of a foreign country."  *See Intel*, 542 U.S. at 265.

*Second*, Oasis is demanding that New Wave produce documents located in China without obtaining the preapproval of Chinese regulatory authorities.  (Silva Decl., Ex. 6.)  Yet, as Oasis knows, the Cayman Islands court ruled nine months ago that Sina *must* be allowed to obtain the approval of the Beijing Municipal Cyberspace Administration before producing nearly identical categories of documents. (*See* Milstead Decl., Ex. 7, Cayman Judgment ¶ 68 ("There is no question that [Sina] should be permitted (and encouraged) to continue with its attempts to obtain approval from the PRC authorities.  In light of what [Sina] says are the potentially severe consequences for its business if it fails to obtain the necessary approvals, it is obvious that it should have the opportunity to do so.").)  If Chinese regulators allow Sina to produce the requested documents, Oasis will receive them directly from Sina; there is no need to burden New Wave with clearing Chinese regulatory hurdles a second time.  On the other hand, if regulators deny Sina's request to transmit the documents to the Cayman Islands, requiring New Wave to produce these documents would circumvent the "clearly established procedures" of *two* foreign authorities, as well as impose oppressive burdens and costs on a nonparty.  *See Ex Parte Abdalla*,  2021 WL 168469, at *5 (S.D.N.Y. Jan. 19, 2021); *see also Tiffany*, 276 F.R.D. at 158-59 (denying motion to compel production of financial records from nonparty, China-based banks due to, among other reasons, potential sanctions under Chinese law for complying with a U.S. subpoena).  Either way, the discovery and "proof gathering"

---

[13] As noted above, while the Directions Order contemplates that the parties' *experts* may seek materials from Sina "produced" after the valuation date (*see* Milstead Decl., Ex. 8, Directions Order ¶ 21), that ruling does not apply to the party fact discovery requested here.

procedures established by the Cayman Islands court should be respected, not circumvented. *See Intel*, 542 U.S. at 264-65.  For this reason as well, Oasis's § 1782 subpoena should be quashed.

## IV.    CONCLUSION

For all these reasons, Oasis's § 1782 subpoena to New Wave should be quashed in its entirety.

DATED: October 28, 2022                    Respectfully submitted,

COVINGTON & BURLING LLP

*/s/ Ryan H. Weinstein*
RYAN H. WEINSTEIN

1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email:  rweinstein@cov.com

DYLAN SILVA
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email:  dsilva@cov.com

*Attorneys for Nonparty*
*New Wave MMXV Limited*