# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

In re

OASIS FOCUS FUND LP,

Petitioner, for an Order Pursuant to 28
U.S.C.§ 1782 to Conduct Discovery for Use
in a Foreign Proceeding

MISC. No. 22-mc-113

# MEMORANDUM OF LAW IN SUPPORT OF THE *EX PARTE* PETITION OF OASIS FOCUS FUND LP FOR AN ORDER TO TAKE DISCOVERY FROM CHARLES GUOWEI CHAO AND NEW WAVE MMXV LIMITED FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 4

    A.    Mr. Chao Controls Sina and its Valuable Subsidiaries Through New Wave .............. 4

    B.    Mr. Chao and New Wave Orchestrate a Sale of Sina to Themselves ......................... 6

    C.    The Merger Price Seriously Understated Sina's Value ............................................. 9

    D.    The Appraisal Proceeding ....................................................................................... 11

ARGUMENT ...................................................................................................................... 12

I.    The Petition Satisfies the Statutory Requirements of Section 1782. ............................. 12

    A.    Mr. Chao and New Wave Are Each Found in This District. .................................... 13

    B.    Petitioner Seeks Discovery for Use in a Foreign Proceeding. .................................. 15

    C.    Petitioner Is an Interested Person. .......................................................................... 16

II.    The Discretionary Factors Favor Granting the Petition. ............................................. 16

    A.    Neither Respondent Is Not a Participant in the Appraisal Proceeding. ..................... 17

    B.    The Cayman Court Is Receptive to U.S. Judicial Assistance. ................................... 18

    C.    The Petition Is Not an Attempt to Circumvent Cayman Law. ................................. 20

    D.    The Discovery Sought Is Not Unduly Burdensome. ................................................ 21

        1.    The Requested Discovery Is Appropriate Given Mr. Chao and New Wave's Extensive Roles in the Underlying Events ........................................................... 22

        2.    The Requests to Depose Mr. Chao and New Wave Are Not Burdensome. ......... 25

        3.    Section 1782 Reaches Documents Located Outside the United States. .............. 25

    E.    The Context of the Appraisal Proceeding Supports Approval of the Petition. .......... 27

III.    *Ex Parte* Relief Is Warranted ..................................................................................... 29

CONCLUSION ................................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**

*Blackmer v. United States,*
    284 U.S. 421 (1932) ........................................................................ 28

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
    673 F.3d 76 (2d Cir. 2012) ............................................................. 15

*CA, Inc. v. AppDynamics, Inc.,*
    2014 WL 12860591 (E.D.N.Y. Sept. 8, 2014) ............................... 24

*de Leon v. Clorox Co.,*
    2021 WL 718840 (N.D. Cal. Feb. 24, 2021) .................................. 18

*Euromepa S.A. v. R. Esmerian, Inc.,*
    51 F.3d 1095 (2d Cir. 1995) ........................................................... 18

*Federal Republic of Nigeria v. VR Advisory Services, Ltd.,*
    27 F.4th 136 (2d Cir. 2022) ............................................... 16, 17, 20

*Ford Motor Co. v. Montana Eighth Judicial District Court,*
    141 S.Ct. 1017 (2021) .................................................................... 13

*Fund for Protection of Investor Rights in Foreign States Pursuant to
    28 U.S.C. § 1782 for Order Granting Leave to Obtain Discovery,*
    5 F.4th 216 (2d Cir. 2021) ............................................................. 18

*Gushlak v. Gushlak,*
    486 Fed.Appx. 215 (2d Cir. 2012) ................................................ 29

*Huang v. iTV Media, Inc.,*
    2017 WL 706194 ............................................................................ 23

*Illumina Cambridge,*
    2020 WL 820327 (N.D. Cal. Feb. 19, 2020) ................................. 27

*In re Accent Delight International Ltd.,*
    791 Fed.Appx. 247 (2d Cir. 2019) ........................................... 20, 21

*In re Aegean Marine Petroleum Network, Inc., Securities Litigation,*
    529 F.Supp.3d 111 (S.D.N.Y 2021) .............................................. 14

*In re Application of Patokh Chodiev,*
    2021 WL 3270042 (S.D.N.Y. July 30, 2021) ................................ 29

*In re Application of Polygon Global Partners LLP for an Order Pursuant to
    28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding,*
    2021 WL 1894733 (S.D.N.Y. May 11, 2021) ................................ 26

*In re Application of Polygon Global Partners LLP for an Order Pursuant to
    28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding,*
    2021 WL 2117397 (S.D.N.Y. May 25, 2021) ................................ 21

*In re Aso,*
    2019 WL 2345443 (S. D. N.Y. June 3, 2019) ............................... 15

*In re Atvos Agroindustrial Investimentos SA,*
    481 F. Supp.3d 166 (S.D.N.Y. 2020) ....................................... 18, 19

*In re Bayer AG,*
    146 F.3d 188 (3d Cir. 1998) ...................................................... 21, 22

*In re Belparts Group, N.V.*,
2021 WL 4942134 (D. Conn. Oct. 22, 2021) .......................................................... 26

*In re De Leon*,
No. 20-3406, 2020 WL 3969865 (6th Cir. May 26, 2020)..................................... 27

*In re del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019)........................................................................ 13, 26, 27

*In re Evenstar Master Fund SPC*,
2021 WL 5498283 (S.D.N.Y. Nov. 13, 2021) ....................................................... 17

*In re Ex Parte Application of Porsche Automobil Holding SE for an Order*
*Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign*
*Proceedings*,
2016 WL 702327 (S.D.N.Y. Feb. 18, 2016)...................................................... 25, 29

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
236 F.R.D. 177 (S.D.N.Y. 2006) ........................................................................... 23

*In re Gorsoan Ltd.*,
2021 WL 240736 (S.D.N.Y. Jan. 25, 2021) .......................................................... 27

*In re H.M.B. Limited*,
2018 WL 4778459 (S.D. Fla. July 2, 2018) ........................................................... 18

*In re Hopkins*,
2020 WL 733182 (N.D. Cal. Feb. 13, 2020) .......................................................... 19

*In re Kidd*,
2020 WL 5594122 (D. Conn. Sep. 18, 2020) ................................................... 18, 23

*In re Kuwait Ports Authority*,
2021 WL 5909999 (S.D.N.Y. Dec. 14, 2021) ................................................... 17, 26

*In re Liverpool Ltd. P'ship*,
2021 WL 3793901 (D. Del. Aug. 26, 2021) ........................................................... 26

*In re Oasis Focus Fund LP*,
No. 22-MC-00024-MN-SRF...................................................................................... 12

*In re Oasis Focus Fund LP*,
No. 3:22-mc-00112-BGS............................................................................................ 12

*In re Ord. Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a*
*Foreign Proceeding*,
No. 4:21-MC-00153-AGF, 2021 WL 1611673 (E.D. Mo. Apr. 26, 2021) ........... 16

*In re Penner*,
2017 WL 5632658 (D. Mass. Nov. 22, 2017) ........................................................ 19

*In re Platinum Partners Value Arbitrage Fund L.P.*,
583 B.R. 803 (Bankr. S.D.N.Y. 2018).................................................................... 19

*In Re Teligent, Inc.*,
358 B.R. 45 (Bankr. S.D.N.Y. 2006) ..................................................................... 23

*In re Top Matrix Holdings Ltd.*,
2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) ............................................... 17, 18, 21

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)........................................................................................ *passim*

*Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited*,
   [2009] CILR 553 ............................................................................................ 19, 25

*Matter of De Leon*,
   2020 WL 1180729 (S.D. Ohio Mar. 12, 2020) ............................................ 26

*Matter of Degens*,
   2020 WL 4252725 (S.D.N.Y. July 24, 2020) .............................................. 26

*Mees v. Buiter*,
   793 F. 3d 291 (2d Cir. 2015)........................................................................ 15, 21

*Pfaff v. Deutsche Bank AG*,
   2020 WL 3994824 (S.D.N.Y. July 14, 2020) .............................................. 13

*Sergeeva v. Tripleton Int'l Ltd.*,
   834 F.3d 1194 (11th Cir. 2016) ................................................................... 26

*Union Fenosa Gas, S.A. v. Depository Tr. Co.*,
   2020 WL 2793055 (S.D.N.Y. May 29, 2020) ............................................. 26

*United States v. Int'/ Bus. Machines Corp.*,
   71 F.R.D. 88 (S.D.N.Y. 1976) ..................................................................... 23, 24

**Statutes**

28 U.S.C. § 1782 ............................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 26(b)(1)................................................................................... 23

Petitioner Oasis Focus Fund LP, a Delaware limited partnership, hereby respectfully petitions this Court for an order pursuant to 28 U.S.C. § 1782 ("Section 1782") authorizing Petitioner to take document discovery and deposition testimony from (i) Charles Guowei Chao ("Mr. Chao"),[1] an American citizen, and (ii) New Wave MMXV Limited ("New Wave" and together with Mr. Chao, "Respondents"), a holding company incorporated in the British Virgin Islands and under Mr. Chao's control. The requested discovery will be used in connection with an appraisal proceeding (the "Appraisal Proceeding") pending in the Cayman Islands in which the Financial Services Division of the Grand Court of the Cayman Islands (the "Cayman Court") will determine the fair value of Petitioner's shares in Sina Corporation ("Sina" or the "Company"). Sina is a Chinese company, incorporated in the Cayman Islands, which was recently delisted from the NASDAQ market as a result of a take-private merger transaction (the "Merger"). In the Appraisal Proceeding, Petitioner contends that the per-share price paid to minority shareholders as part of the Merger was woefully inadequate. The Merger was orchestrated and directed by Mr. Chao and New Wave. As a result of the Merger, New Wave indirectly owns all the equity interests in Sina. Petitioner has dissented under Cayman law and is pursuing the Appraisal Proceeding to recover the full value of its Sina shares.

This Petition is supported by the Declaration of Samuel Martin Dawson, a Cayman Islands attorney, (the "Dawson Decl."), and the Declaration of Minyao Wang (the "Wang Decl.").

## PRELIMINARY STATEMENT

Petitioner brings this Petition to obtain discovery from Mr. Chao and New Wave pursuant to Section 1782 for use in the Appraisal Proceeding. The discovery Petitioner seeks is directly

---

[1] Mr. Chao's last name has also been spelled in certain public documents as Cao.

relevant to the central issue the Cayman Court must decide in the Appraisal Proceeding: the fair value of Petitioner's (and the other dissenting shareholders') Sina shares.

Prior to the Merger, Mr. Chao was the chairman of Sina and, through his control of New Wave, its controlling shareholder. Even though New Wave held only 14.7% of the Company's shares, Mr. Chao, due to certain super-voting shares, controlled 61% of Sina's voting power when he and New Wave proposed to take the Company private. The Company agreed to Respondents' Merger proposal without undertaking any of the pre-signing or post-signing market-checks normally associated with an insider-driven transaction. The majority of Sina's public shareholders did not support the Merger, but Respondents' ownership of super-voting shares enabled them to obtain the requisite shareholder approval for the Merger. Following the Merger, New Wave owns all of Sina's equity. Petitioner and other shareholders have dissented under Cayman law. This Appraisal Proceeding has been commenced to establish the fair value of the dissenting shareholders' shares in Sina prior to the Merger.

Because the Cayman Court does not have jurisdiction over Respondents, it cannot order them to produce discovery in the Appraisal Proceeding. However, Cayman law permits litigants to use evidence obtained through U.S. courts by means of Section 1782. Accordingly, Petitioner brings this Petition to obtain discovery from Respondents, who are both subject to the jurisdiction of this Court, to assist the Cayman Court in determining the fair value of Petitioner's Sina shares.

The Petition satisfies the statutory requirements of Section 1782 because: (i) both Mr. Chao and New Wave are "found in" the Southern District of New York because they participated in the purchase of the shares of an issuer listed on an exchange located in this District and effectuated its eventual delisting; (ii) the requested discovery is "for use" in a foreign proceeding; and (iii) Petitioner is an "interested person." 28 U.S.C. § 1782(a) Accordingly, this Court has the

discretion to grant the Petition. In *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004), the Supreme Court identified four non-exclusive factors a district court may consider in deciding whether to grant discovery under Section 1782. *Id* at 264. Each of those factors weighs in favor of granting the Petition:

*First*, neither Respondent is a party to the Appraisal Proceeding. Nor are they subject to the jurisdiction of the Cayman Court. Consequently, Petitioner cannot use the Cayman legal process to obtain discovery from either Respondent.

*Second*, the Cayman Court will be receptive to the assistance afforded by American courts through Section 1782. The Cayman Court has emphasized that judges need access to *all* available information concerning valuation to determine the fair value of shares in an appraisal proceeding, including evidence from outside the Cayman Islands.

*Third*, the Petition is not an attempt to circumvent any restrictions imposed by Cayman law on proof gathering. Far to the contrary, the scope of discovery is broad under Cayman law and Cayman courts welcome the introduction of foreign evidence through Section 1782.

*Fourth*, the discovery Petitioner is seeking is not unduly burdensome. It is designed to obtain information directly relevant to the critical issues in the Appraisal Proceeding, such as the fair value of Petitioner's Sina shares, the methods Sina used to value its assets as it relates to the Merger consideration, the negotiation process between Respondents and the Company's purportedly independent directors that culminated in a definitive agreement for the Merger, and the approval process for the Merger.

In sum, Respondents have information in their possession, custody, or control that is directly relevant to the central issue in the Appraisal Proceeding. The Petition satisfies the

requirements of Section 1782 and the *Intel* factors, is fully consistent with the policies behind Section 1782, and should be granted.

## STATEMENT OF FACTS

### A.    Mr. Chao Controls Sina and its Valuable Subsidiaries Through New Wave

Mr. Chao is an American citizen who since the early 2000's has used multiple addresses in Northern California on filings submitted to the Securities and Exchange Commission ("SEC") and the California Secretary of State. New Wave, a British Virgin Islands entity headquartered in Beijing, China, is Mr. Chao's holding company. According to a recent SEC filing by Sina, Mr. Chao is the "sole director" of New Wave and personally holds *all* the voting shares in New Wave. Wang Decl. Ex. C at 7, 10.

Sina is a technology company incorporated in the Cayman Islands with its headquarters in Beijing, China. In April 2000, the Company completed its initial public offering and was listed on the NASDAQ Exchange. Sina shares were traded in the United States until the Merger closed.

Mr. Chao joined Sina in 1999 as Vice President for Finance. He became President in September 2005 and was appointed Chief Executive Officer in May 2006. Mr. Chao became Sina's chairman in 2012. Even though he held, through New Wave, only 14.7% of the Company's outstanding common shares, Mr. Chao was the central domineering figure in the Company. Petitioner understands that Mr. Chao was assured in the Company's governing documents a permanent seat on Sina's board of directors. In November 2017, after narrowly prevailing in a proxy fight against an American activist investor that attempted to add two independent directors to a board filled with allies of Mr. Chao, the Company issued New Wave 7,150 newly created Class A Preference Shares with 10,000 votes per share. Mr. Chao paid the nominal consideration of $7,150 for these shares. As a result of this stock issuance, Mr. Chao's share of the voting power in the Company increased dramatically from 11.1% to 55.5%. *See* Wang Decl. Ex. D at 2-3. In

other words, through the fiat of Sina's board and for nominal consideration, Mr. Chao obtained majority voting control of the Company overnight. This extraordinary step assured Mr. Chao that he could continue to dictate the Company's direction. When it announced the decision to issue New Wave these shares, the Board admitted that it was motivated by a desire to prevent future proxy fights. *Id.*

Sina is the parent of Weibo Inc. ("<u>Weibo</u>"), which operates a Twitter-like platform that serves the Chinese-speaking community worldwide. Weibo is a highly valuable asset in Sina's portfolio. Weibo is listed separately on the NASDAQ Exchange. At the time the Merger was under consideration, Sina held 44.9% of Weibo's outstanding ordinary shares and held 71.0% of Weibo's voting power. Mr. Chao has been the chairman of Weibo's board of directors since Weibo's inception. At the time of the Merger, three of the five Weibo directors were affiliated with Sina. All senior executive officers of Weibo have a prior Sina affiliation. Weibo has more than three million registered users in North America. About half a million of those users are based in California.

Sina and Weibo both have wholly owned subsidiaries based in California: Sina.com Online and Weibo R & D Limited. These two subsidiaries share the same business address in Palo Alto, California. Mr. Chao is the CEO and sole director of Sina.com Online. Bonnie Zhang, the Chief Financial Officer of Sina, serves as its secretary, chief financial officer, and agent for service of process. Petitioner understands that Sina.com Online operates servers physically located in California that are necessary for both the Sina and Weibo portals to meet their business needs in the United States. And Sina.com Online is also Sina's interface with the Chinese-speaking population in the United States. Sina has publicly listed Sina.com Online's current business address in Palo Alto, California as a "Sina U.S. office." Sina also maintains a Facebook page that

caters to Chinese speakers in North America. That page lists Sina.com Online's prior business address in California as the point of contact. Moreover, Sina.com Online owns multiple Sina trademarks, including the iconic Sina logos.

### B.     Mr. Chao and New Wave Orchestrate a Sale of Sina to Themselves

On July 6, 2020, when the Company, like most businesses, was experiencing a temporary dip in stock price because of the COVID-19 pandemic, Sina announced it had received a proposal from New Wave to take the Company private for US$41.00 per share (the "July 6 Proposal"). Wang Decl. Ex. E. Mr. Chao signed New Wave's offer letter, attached to Sina's SEC filing, on behalf of New Wave as its director. *Id*. at 6. Sina acknowledged in its filing that Mr. Chao "controlled" New Wave. *Id*. at 1.

By then, as a result of the Company's stock repurchases, Mr. Chao's share of the shareholder voting power had further grown to 61.1%, even though he still controlled only about 14.8% of the Company's equity. Wang Decl. Ex. G at 37. Because Cayman law requires two-thirds of outstanding shares in attendance at the extraordinary general meeting of shareholders ("EGM") to vote in favor of a proposed merger, Mr. Chao needed to only persuade, *at most*, 6% of public stockholders to support the Merger. Depending on the turnout at the meeting, Mr. Chao had the ability to get the Merger passed through his New Wave supervotes alone (as in fact occurred here).

The Board appointed a special committee (the "Special Committee") consisting of three purportedly independent directors of the Company to evaluate the Merger proposal. The Special Committee retained Gibson Dunn & Crutcher LLP as legal advisor and Morgan Stanley Asia Limited ("MS Asia") as financial advisor to assist it with the evaluation process. From July 2020 to September 2020, Respondents and their counsel worked extensively with the Special Committee and its advisors on the terms of the Merger. The Merger price was increased modestly from

US$41.00 per share in the July 6 Proposal to US$43.30 per share. While the Special Committee stated that it believed that US$45.00 per share would be a more appropriate price, Respondents declined to increase the price further and the Special Committee acquiesced.

It was ultimately agreed that the Merger would be effectuated with the formation of two new corporate entities controlled by Mr. Chao: New Wave Holdings Limited ("Parent"), a wholly owned entity of New Wave, and Parent's wholly owned subsidiary, New Wave Mergersub Limited ("Merger Sub"). Mr. Chao was the sole director of both Parent and Merger Sub. When the Merger closed, the Merger Sub would be merged into the Company and ceased to exist as a separate entity. The surviving entity would then become a wholly owned subsidiary of Parent and would continue to do business under the name "Sina Corporation" post-Merger. After the Merger, Mr. Chao would, through his control of New Wave, own Sina.

It was further agreed that Mr. Chao would personally provide equity financing of up to US$127 million to fund the Merger. To that end, Mr. Chao signed, in his personal capacity, a funding commitment letter addressed to New Wave. The letter was publicly filed with the SEC. Wang Decl. Ex. G at 207-212. The balance of the Merger purchase price would be funded with debt financing of up to $2.1 billion, with New Wave as the borrower. The debt finance commitment letters, also publicly filed with the SEC, were addressed to Mr. Chao in his capacity as the controlling shareholder of New Wave. *See* Wang Decl. Exs. H and I.

During the Merger negotiation process, Respondents informed the Special Committee that they would oppose any alternative transaction, including the sale of Sina's business lines (including Weibo) to a third party. Sina's public filings state that MS Asia "explained to the Special Committee the general market practice of a pre-signing market check and/or post-signing go-shop in similar going private transactions involving Cayman-domiciled companies where a buyer group

owns more than 50% of the aggregate voting power." Wang Decl. Ex. G at 27. Yet the Special Committee ignored its banker's advice and failed to conduct any kind of genuine market check before agreeing to sell the Company to Mr. Chao and New Wave.

In addition, Respondents rejected the Special Committee's request for a "majority of the minority" provision in the Merger agreement. *Id.* at 29-30. Had such a provision been included, the Merger could only have been consummated had a majority of the shares not controlled by Respondents voted in favor of the Merger. By failing to insist on this provision (and by failing to at least obtain a benefit from Respondents for the benefit of the public shareholders commensurate with this critical concession to Mr. Chao), the Special Committee effectively disenfranchised Sina's public shareholders.

While the Merger was under discussion, the Special Committee received communications from a "Shareholder A" who expressed dissatisfaction with the Merger price and expressed its view that shareholders could benefit from the Company's substantial break-up value. *Id.* at 27-28. The Special Committee considered a potential sale of Sina's stake in Weibo but concluded that it was not practical because Mr. Chao could veto any such proposed sale. *Id.* at 63. In other words, the Special Committee yielded to Chao's self-interested intransigence and failed to seriously consider a potential value-maximizing alternative transaction that would have been in the best interests of Sina's public shareholders.

At a Special Committee meeting on September 28, 2021, MS Asia delivered its 40-page financial analysis (the "MS Presentation") of the Merger to the Special Committee along with an oral opinion affirming the purported fairness of the proposed US$43.30 Merger price to holders of the Company's shares. *Id.* at 32. Later that day, MS Asia delivered a written fairness opinion (the "Fairness Opinion") to the Special Committee. *Id.* at 46. Thereafter, based in part on the

recommendation from MS Asia, Sina entered into a definitive Merger agreement to be taken private by Mr. Chao's New Wave buyer group for a price of US$43.30 per share. *Id.* at 1. Mr. Chao signed the Merger agreement on behalf of Parent and Merger Sub. *Id.* at 177. As explained below, MS Asia's assessment of the Company's value was substantively deficient and possibly tainted by a conflict of interest.

The Company, Mr. Chao, New Wave, Parent and Merger Sub jointly filed different versions of Schedule 13E-3 with the SEC regarding the Merger, which attached a Proxy Statement for the Merger. Mr. Chao signed the filing in his personal capacity, *and* also on behalf of New Wave, Parent and Merger Sub. Wang Decl. Ex. F at 36. Mr. Chao also co-signed the Proxy Statement as chairman of the Company's board. Wang Decl. Ex. G at 5. In its Proxy Statement, the Company recommended that shareholders support the Merger. *Id.* at 3.

**C.**     **The Merger Price Seriously Understated Sina's Value**

Petitioner intends to prove in the Appraisal Proceeding that US$43.30 per share was a grossly unfair price that drastically understated the true value of the Company. Dawson Decl. ¶16. Petitioner submits that this valuation of the Company was materially flawed in a broad multitude of ways. We make the following illustrative points concerning the valuation for the Merger:

*First*, based on the MS Presentation, Oasis infers that MS Asia valued Sina's stake in Weibo at between US$25.57 and US$43.22 per Sina share, with a value of US$1.6 billion to US$2.7 billion. But this valuation cannot withstand scrutiny. As an initial matter, Weibo's trading price increased materially between the dates of signing of the Merger agreement in September 2020 and closing of the Merger in March 2021, which means MS Asia's valuation of Sina's stake in Weibo was, at best, stale and irrelevant. Specifically, Weibo's class A shares traded on the NASDAQ Exchange at US$45.94 per share on the last trading date (December 22, 2020) prior to the EGM, suggesting Sina's position in Weibo had a market value of US$4.7 billion, equivalent

to US$77.92 per Sina share. By the time the Merger closed on March 22, 2021, Weibo's shares were trading at US$52.46, suggesting Sina's position in Weibo had a market value of approximately US$5.3 billion, equivalent to US$88.97 per Sina share. This suggests that MS Asia might have undervalued Sina's stake in Weibo by as much as US$62.00 per share, measured from the low end of MS Asia's valuation.

*Second*, as of December 2020, Sina held (through an affiliate, Sun Dream Inc.) approximately 55.21 million shares of TuSimple Holdings, Inc. ("TuSimple"), a self-driving truck company based in California. This made Sina TuSimple's largest shareholder. Wang Decl., Ex. K at 134. Sina's stake in TuSimple was so important that both Mr. Chao and Sina's CFO sat (and still sit) on TuSimple's board. Wang Decl. Ex. J at 144-145. The MS Presentation valued Sina's stake in TuSimple between US$186 million to US$288 million (using book value and a 30% discount to the valuation used for a 2019 private placement). Wang Decl., Ex. F at 615, 623. This equated to only US$3.94 per Sina share. But at the time, TuSimple was in the final stages of preparing for its initial public offering. Moreover, MS Asia's affiliate Morgan Stanley & Co. LLC ("MSC") was serving as TuSimple's lead underwriter for the IPO. Wang Decl. J at 182 (identifying underwriters). On December 23, 2020, the date of the EGM for Sina's shareholders to vote on the Merger, TuSimple filed confidentially a draft registration statement for the IPO with the SEC. *See* Wang Decl., Ex. K. This material fact was not disclosed to the Sina shareholders at the time.

On April 14, 2021, less than one month after the Merger closed, TuSimple sold approximately 27 million shares for US$40 per share during its initial public offering. *See* Wang Decl., Ex. J at 1. At US$40 per share, Sina's 55.21 million shares of TuSimple equated to US$2.2 billion which is equivalent to US$36.80 per Sina share, or almost ***nine times*** the value MS Asia assigned to Sina's interest in TuSimple. This huge and unexplained difference, only a few months

apart, between the market-tested valuation and MS Asia's artificial valuation designed to justify Respondents' insider-driven Merger proposal, strongly suggests irregularities in MS Asia's work.

*Third*, there are serious process issues in terms of how the Merger was reviewed and ultimately approved. Based on publicly available information, the Special Committee was not truly independent. Its members were Songyi Zhang, Yichen Zhang and Yan Wang. Yichen Zhang has been a purported "independent" director of Sina since 2002 and overlapped with Mr. Chao on Sina's board. From 2014 to 2016, he served on Weibo's board along with Mr. Chao. Songyi Zhang has been an "independent" director since 2004 and, therefore, also overlapped with Mr. Chao on the Sina board for a significant period of time. Mr. Wang previously served as Chairman and Chief Executive Officer of Sina, at the same time that Mr. Chao also held high-level positions at Sina. Mr. Chao succeeded Mr. Wang as chairman of Sina in 2012. In addition, in May 2021, shortly after the Merger closed, Mr. Wang joined Mr. Chao on the board of Weibo, where he currently still sits. In other words, the close and overlapping relationships between Mr. Chao and members of the Special Committee cast serious doubt on whether the Committee was able to exercise independent judgment when reviewing the Merger. The Special Committee's lack of independence is reinforced by the Special Committee's failure to insist on standard pre-signing and post signing marketing checks (which the Special Committee's own banker, MS Asia, advised were normal practices) and to insist on a "majority of the minority" protection for the approval of the Merger.

### D.    The Appraisal Proceeding

When the Company held the EGM in December 2020 to consider the Merger, it encountered significant opposition. More than half of the public shareholders either did not vote or voted against approval of the Merger. Respondents were able to push the Merger through only by virtue of their super-voting rights. Had the "majority of the minorities" clause been included, the Merger proposal would have easily been defeated. The Merger closed on March 22, 2021.

11

After Petitioner dissented from the Merger, the Company initiated the Appraisal Proceeding seeking a judicial determination of the value of the Sina shares held by Petitioner and the other dissenting shareholders. The shareholders and the Company will each retain a valuation expert to assist the Cayman Court in arriving at a fair valuation of Sina shares. Dawson Decl. ¶17. Although Cayman law permits litigants to obtain discovery from third parties located in the Cayman Islands, Cayman courts do not have the power to compel discovery from third parties not subject to the jurisdiction of the Cayman Court, such as Respondents. Mr. Chao is an American citizen and does not live in the Cayman Islands. New Wave is an entity incorporated in the British Virgin Islands and headquartered in Beijing, China. The Cayman Court therefore cannot exercise jurisdiction over either Respondent. *Id*. ¶¶25-28.

Accordingly, Petitioner seeks leave of this Court to serve subpoenas on Respondents for documents and deposition testimony related to the Merger for use in the Appraisal Proceeding.[2]

## **ARGUMENT**

### I. **The Petition Satisfies the Statutory Requirements of Section 1782.**

A petitioner under Section 1782 must make three threshold showings: (i) the respondent "resides" or is "found" in the judicial district where the petition is brought; (ii) the requested discovery is "for use in a proceeding in a foreign or international tribunal;" and (iii) the petitioner is an "interested person." 28 U.S.C. § 1782(a). The Petition satisfies all three requirements.

---

[2] Petitioner has filed a Section 1782 application in the District of Delaware (*In re Oasis Focus Fund LP*, No. 22-MC-00024-MN-SRF) against Morgan Stanley and MSC seeking relevant discovery related to the Merger and the IPO transaction for TuSimple. Briefing in that case was recently completed. Petitioner also commenced a Section 1782 application in the Southern District of California (*In re Oasis Focus Fund LP*, No. 3:22-mc-00112-BGS) against TuSimple. The court granted that application *ex parte* and TuSimple has advised that it intends to move to quash Petitioner's subpoena.

## A.    **Mr. Chao and New Wave Are Each Found in This District.**

In the Second Circuit, the phrase "found in" for purposes of Section 1782 is coextensive with specific personal jurisdiction under the Due Process Clause. *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (noting Congressional intent to view the reach of Section 1782 broadly and physical presence in the judicial district is not necessary for jurisdiction). The test to establish specific jurisdiction requires that (i) the respondent purposefully directed his or her activity to the forum state, and (ii) there is a connection between that activity and the underlying controversy. *Id*. The Supreme Court recently clarified that the requisite connection does not have to arise to the level of causality. *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S.Ct. 1017 (2021) ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do . . . some relationships will support jurisdiction without a causal showing.").

The Second Circuit instructs in the context of Section 1782 that a court should analyze the "relationship between respondent's forum contacts and the resulting availability of the evidence." *Ruiz*, 939 F.3d at 530, n.12. An application for discovery should be granted if the discovery sought by the applicant "proximately resulted from the respondent's forum contacts" *Id*. at 530. If "the respondent's contacts are broader and more significant, a petitioner need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts." *Id*. The Second Circuit illustrated that "[f]or instance, an applicant could target its discovery to all documents relating to x created during the course of respondent's engagement with forum entity y." *Id*. n.12.

It is settled law that trading securities on a New York-based exchange subjects a foreign entity to specific personal jurisdiction in this District. Applying *Ruiz*, this Court approved a 1782 application against two European banks in *Pfaff v. Deutsche Bank AG*, 2020 WL 3994824 (S.D.N.Y. July 14, 2020). The *Pfaff* court found that even though the banks' employees were not

physically in New York to execute the trades, their remote participation in a New York-based exchange was a forum contact sufficient to confer specific personal jurisdiction. *Id*. at *10 ("While Petitioner does not contend that Moving Respondents executed their trades from New York, the trades for which Petitioner seeks discovery, occurred largely through COMEX, which operates in New York, New York."). Therefore, discovery related to the two banks' trading on the New York-based exchange "proximately resulted from the respondent's forum contacts" and was subject to discovery under Section 1782.

Outside of Section 1782, this Court has also held that the former chief executive officer of a Greek-based company listed on the New York Stock Exchange was subject to specific personal jurisdiction in this District for legal claims arising from the company's repurchase of his shares, even though the defendant was never in New York for the transaction. *In re Aegean Marine Petroleum Network, Inc.*, *Securities Litigation*, 529 F.Supp.3d 111, 139 (S.D.N.Y 2021). Judge Naomi Buchwald explained that:

> The reason for this conclusion is that the Repurchase, in the context of the Section 20A claim, was aimed at the United States. Aegean stock traded only on the NYSE and Aegean's transfer agent is located in Colorado. Unlike the business transactions that could readily occur entirely overseas, this one could not be effected anywhere other than in the United States. Facilitating a $100 million stock buyback of shares that trade on the NYSE, constituting over 20% of shares outstanding, created a "near certainty that United States shareholders ... would be adversely affected" by [Defendant's] actions.

*Id*. (internal citations omitted)

Judge Buchwald rejected the defendant's argument that the stock transaction at issue had no impact on United States shareholders because it was a private transaction between the defendant and the company. *Id*. at 140 ("Even though there was no direct United States shareholder on the other side of the transaction, the Repurchase inevitably affected United States shareholders.'").

14

Under these standards, Mr. Chao and New Wave are "found in" the Southern District of New York, regardless of where Mr. Chao was physically located or where New Wave was based at the time of the Merger transaction. Respondents orchestrated and consummated a ***public*** US$2.6 billion transaction that purchased ***all*** the non-insider shares of an issuer listed on the NASDAQ exchange located in New York City, and ultimately delisted that issuer from NASDAQ through the Merger. This Court can and should exercise specific personal jurisdiction over both Respondents.

**B.     Petitioner Seeks Discovery for Use in a Foreign Proceeding.**

Petitioner will use the requested discovery in the Appraisal Proceeding to establish the fair value of its Sina shares. The Appraisal Proceeding in the Cayman Islands is clearly a "foreign proceeding," and Petitioner seeks the documents "for use" in the Appraisal Proceeding.

An applicant "satisfies the statute's 'for use' requirement by showing that the materials she seeks are to be used at some stage of a foreign proceeding." *Mees v. Buiter*, 793 F. 3d 291, 295 (2d Cir. 2015). A petitioner is not required to demonstrate that the discovery sought will be ultimately admissible in the foreign proceeding. *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("as a district court should not consider the discoverability of the evidence in the foreign proceeding, it should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application."); *see also In re Aso*, 2019 WL 2345443, at *4 (S.D. N.Y. June 3, 2019) (engrafting an admissibility rule would impermissibly "require district courts to predict or construe the substantive law of the foreign jurisdiction"). Nor does a petitioner have to establish that the requested evidence is necessary to establish its case in the foreign proceeding. *Mees*, 793 F. 3d at 298 ("The plain meaning of the phrase 'for use in a proceeding' indicates something that will be employed with some advantage or serve some use in the proceeding—not necessarily something without which the applicant could not prevail.").

Here, Oasis will provide the documents and deposition testimony obtained from Respondents to experts to be retained by the dissenting shareholders and the Company. *See* Dawson Decl. ¶24. Oasis may also seek to present some discovery to the Cayman Court during the trial. *Id*. The draft directions order in the Appraisal Proceeding that is currently awaiting Court approval contains a clause, not subject to dispute by the parties in that proceeding, explicitly requiring the discovery from these proceedings to be promptly provided to the parties and the experts. *Id*. ¶¶21-22. In other words, the Cayman Court contemplates the potential use of discovery under Section 1782 for this Appraisal Proceeding. *Id*. ¶ 23. This is more than sufficient to satisfy the second statutory requirement.

### C.    Petitioner Is an Interested Person.

A dissenting shareholder who is a party to a Cayman appraisal action is an "interested person." *In re Ord. Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, No. 4:21-MC-00153-AGF, 2021 WL 1611673, at *3 (E.D. Mo. Apr. 26, 2021) ("Petitioners are interested parties in the foreign tribunal because each is a dissenting shareholder and a party to the Cayman Islands Appraisal Proceeding."). Petitioner satisfies this requirement.

## II.    The Discretionary Factors Favor Granting the Petition.

Once Section 1782's statutory requirements are met, this Court should consider whether in the exercise of its discretion the Petition should be granted. *Intel*, 542 U.S. at 264. The Supreme Court has set forth four non-exhaustive factors for courts to consider: (1) whether the respondent is a participant in the foreign proceeding; (2) the nature and character of the foreign tribunal and the receptivity of the foreign tribunal to U.S. judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome. *Federal Republic of Nigeria v. VR Advisory Services, Ltd.*, 27 F.4th 136,

148 (2d Cir. 2022). Courts should not "'read extra-statutory barriers to discovery into section 1782' under the guise of exercising their discretion." *Id.* (internal citation omitted).

As set forth below, all four *Intel* factors strongly favor granting the Petition and there is no fact that militates against granting it.

## A.    Neither Respondent Is Not a Participant in the Appraisal Proceeding.

When a respondent is not a party to the foreign proceeding, "[its] evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. That is precisely the situation here. As Mr. Dawson explains in his Declaration, even though Mr. Chao controls New Wave and is chairman of Sina, neither Mr. Chao nor New Wave is a party to the Appraisal Proceeding. Dawson Decl. ¶¶25-28. They are therefore beyond the jurisdictional reach of the Cayman Court. *Id*. As a result, absent discovery via Section 1782, Petitioner has no practicable way to obtain discovery from Mr. Chao or New Wave, even though they are key witnesses with first-hand knowledge of the central issues in the Appraisal Proceeding. *Id*. As such, the first *Intel* factor strongly supports granting the Petition against Mr. Chao and New Wave. *In re Kuwait Ports Authority*, 2021 WL 5909999, at*9 (S.D.N.Y. Dec. 14, 2021) ("as a nonparticipant in the anticipated Cayman litigation and with no factual support suggesting otherwise, Citibank is 'outside the foreign tribunal's jurisdictional reach.'").

It does not matter under the first *Intel* factor that Mr. Chao controls New Wave, which in turn owns the Company. Although the Company is a party to the Appraisal Proceeding, New Wave is not. Courts in this District and across the country have almost uniformly rejected this "true target" line of argument against granting Section 1782 applications. *See In re Evenstar Master Fund SPC*, 2021 WL 5498283, at *4 (S.D.N.Y. Nov. 13, 2021) (there is "no bar to production where the subpoenaed party and the litigation opponent are 'separate legal entities'") (internal citation omitted); *In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020)

("Credit Suisse USA and Dougan have separate legal personalities" and therefore the fact that their Swiss-based corporate parent was a participant in the underlying foreign proceeding was not a relevant consideration); *see also In re Kidd*, 2020 WL 5594122, at *3-5 (D. Conn. Sep. 18, 2020) (it was proper to grant a Section 1782 application against "officers, directors, or indirect controlling parties" of parties to the underlying foreign proceeding"); *de Leon v. Clorox Co.*, 2021 WL 718840, at *4 (N.D. Cal. Feb. 24, 2021) ("This 'true target' argument misses the mark. Whether Clorox *should* have been served with the subpoena is not dispositive . . .The Federal Rules of Civil Procedure 'require a subpoenaed party to produce those records in its possession, custody or control.'") (emphasis in original); *In re H.M.B. Limited*, 2018 WL 4778459, at *8 (S.D. Fla. July 2, 2018) (there is "no authority that stands for the proposition that, under the first *Intel* factor, a court may look beyond the subpoenaed party to ascertain the *true* target of discovery.") (emphasis in original). Therefore, because neither Respondent is a party to the Appraisal Proceeding, they are the proper targets of Section 1782 discovery.

> **B.** **The Cayman Court Is Receptive to U.S. Judicial Assistance.**

Under the second *Intel* factor, courts may "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.

Courts in the Second Circuit apply a presumption that the foreign tribunal is receptive to receiving evidence obtained under Section 1782 unless there is "authoritative proof" to the contrary. *Fund for Protection of Investor Rights in Foreign States Pursuant to 28 U.S.C. § 1782 for Order Granting Leave to Obtain Discovery*, 5 F.4th 216, 230 (2d Cir. 2021) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)); *In re Atvos Agroindustrial Investimentos SA*, 481 F. Supp.3d 166, 176-77 (S.D.N.Y. 2020) (this *Intel* factor favored discovery

because petitioner submitted a foreign attorney declaration and "Respondents have failed to provide authoritative proof to the contrary.").

Here, Oasis submitted a declaration from a Cayman attorney confirming that Cayman courts are receptive to using evidence obtained through U.S. discovery procedures. *See* Dawson Decl., ¶¶11-12. Indeed, the Cayman Court of Appeal expressly held in *Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited*, [2009] CILR 553, a binding Cayman Islands precedent, that the right to obtain full discovery via Section 1782 "is a right conferred by U.S. law-it is *not a right* conferred by, or *to be withheld under Cayman law*." *Id*. ¶¶13-15 (citing opinion and emphasis added). This fact weighs heavily in favor of granting the Petition.

Many courts recognize that "Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law." *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) (citing *Lyxor*); *see also In re Hopkins*, 2020 WL 733182, at *3 (N.D. Cal. Feb. 13, 2020) (stating "[t]here is no indication that the Cayman Islands court would not be receptive to the information sought from [respondent]" and citing cases that approved Section 1782 applications for Cayman legal proceedings.); *In re Penner*, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (*Lyxor*) was sufficient to satisfy the second *Intel* factor). It is clear that "Cayman courts take a permissive, and indeed, solicitous, view of a Cayman litigant's efforts to utilize U.S. discovery procedures when possible, so long as such litigant is not acting oppressively or abusing the process of the Cayman courts." *Platinum Partners*, 583 B.R. at 816-17.

Cayman courts have a particularly strong basis for receiving foreign discovery in appraisal proceedings because Cayman courts expressly disclaim any expertise in valuation and rely heavily upon the evidence and testimony presented by the parties' valuation experts.

Dawson Decl. ¶18. As an appellate Cayman opinion explained, the "sole task of the Court is to determine the fair value of the dissenters' shares. To do that, *it needs all information*." *Id*. (citing opinion and emphasis added). Accordingly, Cayman courts will consider any evidence that has a bearing on fair value, including evidence from outside of the Cayman Islands and in the possession of a company's financial advisor. *Id*. ¶19 (citing Cayman court opinion).

In discovery scheduling orders in recent appraisal cases and in the pending order in this case, the Cayman Court expressly contemplated the possibility that dissenting shareholders would seek discovery in the United States via Section 1782. *Id*. ¶¶ 20-23 (attaching orders). There can be no plausible argument that the Cayman Court is not receptive to Section 1782 discovery.

Thus, the second *Intel* factor weighs heavily in favor of granting the Petition.

### C.     The Petition Is Not an Attempt to Circumvent Cayman Law.

The third *Intel* factor asks, "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country." *See Intel*, 542 U.S. at 244-45. As the Second Circuit recently explained, "circumvention occurs where the applicant uses a § 1782 application to avoid measures [in the foreign jurisdiction] that are *intended* to restrict certain means of gathering or using evidence." *Republic of Nigeria*, 27 F.4th at 153 (emphasis in original). "[W]e have cautioned that courts should not give undue weight to the mere absence in foreign jurisdictions of proof-gathering *mechanisms* available in the United States." *Id*. (emphasis in original).

This *Intel* factor only counsels against discovery if the foreign jurisdiction affirmatively prohibits the discovery sought by a petitioner. *In re Accent Delight International Ltd.*, 791 Fed.Appx. 247, 251 (2d Cir. 2019) (upholding approval of section 1782 application because respondent "has not provided any showing that the policy or restrictions of any relevant foreign

jurisdiction prohibit the discovery sought by Petitioners."); *In re Application of Polygon Global Partners LLP for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 2021 WL 2117397, at * 10 (S.D.N.Y. May 25, 2021) (there was no circumvention because the Spanish court decision relied upon by respondent did not expressly prohibit discovery of the documents at issue).

Here, there is no Cayman law or court decision that prohibits the discovery sought in this Petition. As noted previously, Cayman courts have a liberal approach to discovery. There is no Cayman procedure designed to prevent the discovery of the material requested in this Petition. Petitioner cannot, as a practical matter, seek this discovery through the Cayman Court because, unlike this Court, it lacks jurisdiction over Mr. Chao and New Wave.[3] But the Cayman Court would welcome this Court's assistance in obtaining discovery relevant to the Appraisal Proceeding. Thus, an order from this Court granting the Petition would not be interpreted by the Cayman Court as a circumvention of Cayman procedures. Dawson Decl. ¶¶11-12.

### D. The Discovery Sought Is Not Unduly Burdensome.

Under the fourth *Intel* factor, a court may consider whether the discovery requests are "unduly intrusive or burdensome" and should be "rejected or trimmed." *Intel*, 542 U.S. at 265. The standard used to evaluate burden is the same standard that applies to any federal civil litigation. *See In re Bayer AG,* 146 F.3d 188 at 195 (3d Cir. 1998) ("The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules

---

[3] In addition, there is no requirement under Section 1782 that a petitioner must first apply to the foreign court for discovery. *Mees*, 793 F.3d 291 at 303 ("We have rejected such a 'quasi-exhaustion' requirement, reasoning that it 'finds no support in the plain language of the statute and runs counter to its express purposes.'") (internal quotation marks and citation omitted); *In re Top Matrix Holdings.*, 2020 WL 248716, at *6 ("Applicants are not required to exhaust all available remedies in the foreign jurisdiction before filing a Section 1782 application"). Therefore, Oasis was not required to apply to the Cayman Court for discovery prior to filing this Petition.

should also apply when discovery is sought under the statute."). Discovery must therefore be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The discovery Petitioner seeks from Mr. Chao and New Wave fully complies with this standard.

### 1. The Requested Discovery Is Appropriate Given Mr. Chao and New Wave's Extensive Roles in the Underlying Events.

Mr. Chao and New Wave (under Mr. Chao's direction) played the central role in the valuation and process issues that are at the heart of the Appraisal Proceeding. For years prior to the Merger, Mr. Chao almost single-handedly operated the Company, stacked the Board with his personal allies and through New Wave, controlled over 60% of the Company's voting power. In the Merger, Mr. Chao and New Wave successfully extinguished the ownership interests of Oasis and Sina's other public shareholders for what Oasis believes was woefully inadequate consideration. Mr. Chao negotiated the Merger with a special committee of purportedly independent directors who appear to have been beholden to him professionally and personally. For example, MS Asia advised Special Committee that standard practice for an insider transaction of this nature requires a pre-signing market check and/or post-signing go-shop provision to protect the interests of the minority shareholders, but the Special Committee ignored that advice. Moreover, while the Special Committee initially asked for a "majority of the minority" provision that would have given the minority shareholders a decisive voice in whether or not to approve the Merger, the Special Committee relinquished this critical demand for only a modest US$2.30 per share increase in the Merger price. This meant that Mr. Chao and New Wave were permitted to exploit their super-voting shares to approve a transaction for Mr. Chao's benefit, even though a

strong majority of non-insider shareholders actually voted *against* the Merger. The Special Committee did not object when Mr. Chao informed the Special Committee in no uncertain terms that he would not support any alternative transaction. Faced with Mr. Chao's self-serving intransigence, it appeared that the Special Committee made no genuine effort to explore an alternative to acquiescing to the Merger proposal that benefited only Mr. Chao.

It is therefore appropriate, and not unduly burdensome, for Petitioner to seek discovery from Mr. Chao himself and from New Wave, Mr. Chao's vehicle for the Merger. If the Court grants this Petition against Mr. Chao, Mr. Chao is required to produce documents within his custody or control, in addition to documents in his immediate possession. Directors of companies are routinely held to have custody or control of their companies' documents. *In re Kidd*, 2020 WL 5594122, at *4 (granting 1782 discovery against two executives for discovery in the possession of their company because their corporate roles gave them the "practical ability" to obtain the documents from the company.); *see also Huang v. iTV Media, Inc.*, 2017 WL 706194, at *9 (E.D.N.Y. Feb. 22, 2017) (ordering individual defendant to produce documents in the possession of a non-party corporation of which he was the CEO); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 181 (S.D.N.Y. 2006) (finding that a former senior executive of a company must produce documents in possession of that company notwithstanding any confidentiality provisions in the employment agreement); *In Re Teligent, Inc.*, 358 B.R. 45, 60-61 (Bankr. S.D.N.Y. 2006) (high ranking officer of the corporation had practical ability to obtain corporate documents); *United States v. Int'/ Bus. Machines Corp.*, 71 F.R.D. 88, 91 (S.D.N.Y. 1976) ("A subpoena duces tecum seeking corporate documents directed to an individual who is an officer or director of a corporation acts to create an obligation upon the corporation-through those who manage and direct the corporation-to produce the documents sought."). Mr. Chao is the controlling

shareholder of New Wave, Parent and Merger Sub. Since the Merger, he also owns Sina through New Wave. Under the standards of the aforementioned cases, Mr. Chao has the practical ability to search and produce documents in the possession of New Wave, Parent, and Merger Sub. He should be ordered to do so.

Likewise, if the Court grants this Petition against New Wave, New Wave will be required to produce responsive documents in Mr. Chao's possession. This is because "where an individual creates documents in furtherance of his functions as a corporate officer, those documents are within the corporation's control for Rule 34 purposes and must be disclosed in response to a proper notice for production" on the corporation. *CA, Inc. v. AppDynamics, Inc.*, 2014 WL 12860591, at 3-4 (E.D.N.Y. Sept. 8, 2014) (ordering corporate defendant to search personal email addresses of its founders and officers). Here, given the intertwined roles of Mr. Chao and New Wave as initiators and beneficiaries of the Merger transaction, all relevant documents in the possession of Mr. Chao were created in furtherance of his role as the sole director of New Wave. Therefore, a subpoena served on New Wave reaches discovery in Mr. Chao's possession as well.

Petitioner therefore seeks discovery from Mr. Chao and New Wave concerning: (a) the actions taken by Mr. Chao to form a buyer group in connection with the Merger; (b) the valuation of the Company and its various components; (c) the relationships (both professional and personal) between Mr. Chao and members of the Special Committee; (d) relevant communications with Weibo and TuSimple; (e) whether and how Respondents influenced the decision to engage both MS Asia and MSC for potentially conflicted roles; (f) communication with the lenders (China Minsheng Banking Corp., Ltd. Hong Kong & Shanghai Branches) or other potential lenders who funded the Merger transaction; (g) communications with the Special Committee, the Company, other key constituencies, and their professionals concerning the Merger and (h) documents and

communications related to the issuance of the 7,500 super-voting shares to New Wave which provided Respondents with the voting power to ensure approval of their undervalued Merger. The proposed discovery will significantly assist the Cayman Court in its evaluation of the Merger and determination of the fair value of the Petitioner' shares of Sina.

### 2. The Requests to Depose Mr. Chao and New Wave Are Not Burdensome.

Petitioner also seeks to depose Mr. Chao personally and a corporate representative of New Wave concerning the same topics. Depositions are liberally permitted in this District in the context of Section 1782 discovery. *In re Ex Parte Application of Porsche Automobil Holding SE*, 2016 WL 702327, at *13 (S.D.N.Y. Feb. 18, 2016) (it was "relatively evident from precedent in this circuit generous to Section 1782 applicants that there was a reasonable chance [respondents] would have to produce documents and prepare witnesses on a short timetable").[4] Given the demonstrated relevance of these topics to the Appraisal Proceeding, it is appropriate and not unduly burdensome to ask Mr. Chao, who personally orchestrated and directly benefited from the Merger, to provide deposition testimony. It is likewise appropriate to ask a corporate representative of New Wave, which now owns Sina outright, to explain the Merger transaction under oath.

Petitioner is willing take the requested depositions via Zoom (or another appropriate videoconferencing platform) to minimize the time and burden associated with them. In addition, to the extent that New Wave designates Mr. Chao as its corporate representative, Petitioner is open to a combined deposition of appropriate length, further minimizing any burden on Respondents.

### 3. Section 1782 Reaches Documents Located Outside the United States.

Finally, even if Respondents' documents are located abroad, the Second Circuit has expressly recognized that Section 1782 does not have a geographical restriction and "authorize[s]

---

[4] Moreover, Cayman courts have the discretion to admit U.S. deposition transcripts. Dawson Decl. ¶15 (discussing *Lyxor's* treatment of U.S. deposition transcripts).

extraterritorial discovery so long as the documents to be produced are within the subpoenaed party's possession, custody, or control." *Ruiz*, 939 F.3d 520 at 533; *see also Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016) ("[T]he location of responsive documents and electronically stored information — to the extent a physical location can be discerned in this digital age — does not establish a per se bar to discovery under § 1782."). Courts in this Circuit have accordingly ordered the production of documents located outside the United States. *See Kuwait Ports Authority*, 2021 WL 5909999, at *11 (if "there are documents located abroad, so long as they are in the possession, custody, or control of Citibank, the extraterritorial discovery is permissible."); *Matter of Degens,* 2020 WL 4252725, at *5 (S.D.N.Y. July 24, 2020) (relying on *Ruiz* to order production of information globally)*; Union Fenosa Gas, S.A. v. Depository Tr. Co.,* 2020 WL 2793055, at *8 (S.D.N.Y. May 29, 2020) ("the Court declines Egypt's request to limit discovery to materials that are within the United States"); *see also In re Belparts Group, N.V.*, 2021 WL 4942134, at *7 (D. Conn. Oct. 22, 2021) (citing *Ruiz* to conclude that petitioner "is not prohibited from obtaining discovery of documents located outside the United States under § 1782, including those documents that are also possessed by foreign affiliates" of the respondent).

So too have courts across the country. *See In re Liverpool Ltd. P'ship,* 2021 WL 3793901, at *3 (D. Del. Aug. 26, 2021) (ordering the production of documents in Japan); *In Re Application of Polygon Global Partners LLP*, 2021 WL 1894733, at *3 (D.R.I May 11, 2021) (foreign location of documents did not bar discovery); *Matter of De Leon*, 2020 WL 1180729, at *9-10 (S.D. Ohio Mar. 12, 2020) (ordering production of documents that a wholly owned foreign subsidiary of an Ohio entity held outside the U.S.), *appeal dismissed sub nom. In re De Leon*, No. 20-3406, 2020 WL 3969865 (6th Cir. May 26, 2020); *Illumina Cambridge*, 2020 WL 820327, at *10 (N.D. Cal.

26

Feb. 19, 2020) ("the Court declines to limit production to documents physically located within the United States.").

Given the reality of twenty-first century business, it is reasonable to focus on functional control rather than geographic boundaries. As the past two years have starkly illustrated, online and computer access to people and information has become more important to modern business than a street address. This is particularly true here because Mr. Chao, an ***American citizen***, chose to buy out the shares of a United States listed company through a company registered in the British Virgin Islands and headquartered in Beijing, China. Mr. Chao should not be permitted to shield relevant evidence from generally applicable discovery requirements if he chose to store them in a server outside the United States. Accordingly, this Court has the authority to order Mr. Chao and New Wave to produce any documents maintained outside this country, and should do so.

### E. The Context of the Appraisal Proceeding Supports Approval of the Petition.

The four *Intel* factors are not exclusive. A district court can consider any other pertinent facts in deciding whether to grant the requested discovery. *Ruiz*, 939 F. 3d 520 at 533 (observing that there is no mechanical application of *Intel* factors); *In re Gorsoan Ltd.*, 2021 WL 240736, at *7(S.D.N.Y. Jan. 25, 2021) (discretion is not exercised in a vacuum and "context matters" in reviewing a 1782 application). Here, the significant connections between the facts underlying the Appraisal Proceeding and the United States provide an additional compelling reason for the Court to grant Petitioner the requested discovery. This case differs from a common posture of a Section 1782 petition in which a foreigner comes to the U.S. seeking evidence for use in a foreign litigation that has only an incidental connection to this country. Here, by contrast, the Petitioner is a Delaware limited partnership, and courts are more inclined to grant discovery under Section 1782 where the discovery is being sought to benefit an American. *De Leon v. Clorox Co.*, 2021 WL 718840, at *4 (granting discovery requests by an American citizen who is a party to an inheritance

dispute in Saudi Arabia). Moreover, Respondents are an American citizen[5] and an offshore company he controls.

In addition, Sina, for more than twenty years (for a majority of that period under Mr. Chao's personal leadership), took advantage of the U.S. capital markets to obtain financing. Petitioner became a shareholder of Sina by purchasing stock on a U.S. exchange. Mr. Chao and New Wave then orchestrated a transaction to take the Company private and extinguish the ownership interests of non-insider shareholders such as Petitioner. The propriety of the Merger process and the fairness of the consideration paid by Mr. Chao and New Wave for these U.S.-traded shares are precisely what is being litigated in the Appraisal Proceeding.

There are other important U.S. connections as well. The Merger was financed through a cash contribution of US$127 million by Mr. Chao and a loan in the amount US$2.1 billion with New Wave as the borrower. Those cash proceeds were directed to buy out shares of an issuer in a New York-based stock exchange. Respondents were jointly represented in the Merger process by a well-known U.S. based international law firm, Skadden, Arps, Slate, Meagher & Flom LLP. Notably, Mr. Chao signed on behalf of himself and on behalf of New Wave multiple SEC filings related to the Merger. In his capacity as Chairman of Sina, Mr. Chao also co-signed the Proxy Statement filed with the SEC and sent to Sina shareholders recommending an affirmative vote in favor of the Merger. Mr. Chao also signed multiple transaction documents related to the Merger, including the Merger agreement and the financing documents, which were attached as exhibits to

---

[5] As the Supreme Court has noted, "[i]t is also beyond controversy that one of the duties which the citizen owes to his government is to support the administration of justice by attending its courts and giving his testimony whenever he is properly summoned." *Blackmer v. United States*, 284 U.S. 421, 438 (1932). Mr. Chao did not hesitate to tout his American citizenship as a shield when the Committee on Foreign Investment in the United States launched an inquiry into the foreign ownership of TuSimple. *See* Wang Decl. Ex. L at 2 (noting that "Sun Dream, Inc., which currently holds approximately 5.8% of the voting power of the Company, is ultimately controlled by a U.S. citizen [Mr. Chao].")). Mr. Chao should not be permitted to take advantage of his American citizenship without honoring its basic responsibilities.

the Company's SEC filings, and thereby communicated the substance of those filings to the investing public in the United States.

In sum, it is neither burdensome nor unfair for this Court to order Mr. Chao and New Wave to produce relevant discovery related to the Merger.

## III.    _Ex Parte_ **Relief Is Warranted.**

Petitioner submits that proceeding _ex parte_ is appropriate here. Section 1782 applications for discovery are routinely granted _ex parte_ in district courts in this Circuit. _Gushlak v. Gushlak,_ 486 Fed.Appx. 215, 217 (2d Cir. 2012) ("it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 _ex parte_. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash."); _see also In re Application of Patokh Chodiev_, 2021 WL 3270042, at *1 (S.D.N.Y. July 30, 2021) ("Courts routinely grant similar petitions _ex parte_."); _In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings_, 2016 WL 702327, at *1 n.3 (S.D.N.Y. Feb. 18, 2016) ("As typically or, at least, frequently is the case in § 1782 proceedings, leave to serve the subpoenas was granted _ex parte_."). Respondents will not be prejudiced by granting Petitioner's application _ex parte_ as they will have an opportunity to challenge the discovery Petitioner seeks once it is served. _Id_. ("all questions with respect to the propriety of the grant of leave and with respect to the content to the subpoenas" may be raised via a motion to quash by respondent).

## **CONCLUSION**

Respondents have access to key evidence that is central to the Appraisal Proceeding. It is fair and reasonable to deploy Section 1782 to compel Respondents to produce evidence necessary to resolve the Appraisal Proceeding. While the Cayman Court will welcome the introduction of this highly relevant evidence, it lacks the jurisdiction necessary to order the discovery itself. But this Court has the jurisdiction and the authority to order Respondents to provide the discovery that Petitioner is requesting.

For all of the foregoing reasons, the Court should grant this Petition and authorize Petitioner to serve subpoenas on Mr. Chao and New Wave pursuant to 28 U.S.C. § 1782 on Respondents substantively in the form set forth as Exhibits A and B to the Wang Decl. for discovery, and grant such other and further relief as the Court deems just and proper.

DATED: April 14, 2022

REID COLLINS & TSAI LLP

By */s/ William T. Reid IV*

William T. Reid IV
Rachel S. Fleishman
Minyao Wang
Yonah Jaffe
REID COLLINS & TSAI LLP
330 West 58th Street, Suite 403
New York, NY 10019
Telephone: (212) 344-5200
Fax: (212) 344-5299
wreid@reidcollins.com
rfleishman@reidcollins.com
mwang@reidcollins.com
yjaffe@reidcollins.com

Jonathan M. Kass
jkass@reidcollins.com
REID COLLINS & TSAI LLP
300 Delaware Avenue
Suite 770
Wilmington, DE 19801
Telephone: (302) 467-1765

*Attorneys for Petitioner*