# EXHIBIT 3

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| | | |
|---|---|---|
| In re Oasis Foocus Fund LP | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 22-mc-113 |
| | ) | |
| | ) | |
| *Defendant* | ) | |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To: New Wave MMXV Limited

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: TSG Reporting<br>580 California Street, 12th & 16th Floors<br>San Francisco, CA 94101 | Date and Time:<br>05/31/2022 9:00 am *(or as the parties may otherwise agree)* |
|---|---|

The deposition will be recorded by this method: Stenographic and video

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Schedule A, attached hereto. You are required to produce by May 16, 2022, to TSG Reporting, 580 California Street, 12th & 16th Floors, San Franciso, CA 94101

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 04/14/2022

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | /s/ Minyao Wang |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Oasis Focus Fund LP , who issues or requests this subpoena, are:

Minyao Wang, Reid Collins & Tsai LLP, 330 West 58th Street, Suite 403, New York, NY 10019, mwang@reidcollins.com, (212) 344-5200

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Case 2:22-mc-00803-JLR Document 1-6 Filed 10/28/22 Page 3 of 19
Case 2:22-mc-00391-AJB Document 1-6 Filed 10/24/22 Page 3 of 19

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# SCHEDULE A
# DEFINITIONS

a. "YOU" "YOUR" "YOURS" and "NEW WAVE" mean New Wave MMXV Limited its parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents, PROFESSIONALS, investigators, representatives, and any other person or entity acting on its behalf or subject to its control. This definition includes, without limitation, CHAO.

b. "ALTERNATIVE TRANSACTION" means with respect to the COMPANY, any transaction or potential transaction other than the MERGER (including, for illustrative purposes only, proposed transactions to distribute or dispose of the COMPANY's stake in WEIBO), or with respect to TUSIMPLE, any transaction or potential transaction other than the TUSIMPLE IPO.

c. "BOARD" means the Company's Board of Directors.

d. "BUYER GROUP" means the following entities, their parents, subsidiaries, affiliates, and other entities under their control and any of their employees, officers, directors, managers, members, agents, representatives, PROFESSIONALS (including, without limitation, Skadden, Arps, Slate, Meagher & Flom LLP), or all other persons acting or claiming to act on their behalf:

    i. YOU;
    ii. CHAO
    iii. New Wave Holdings Limited; and
    iv. New Wave Mergersub Limited.

e. "CHAO" means Charles Guowei Chao, and each of his PROFESSIONALS, employees, agents, representatives, and any other person or entity acting on his behalf or subject to his control.

f.  "COMMUNICATIONS" means and include any transmission or exchange of any information, whether orally or in writing, including, without limitation, any conversation or discussion by means of letter, note, memorandum, inter-office correspondence, telephone, electronic mail, telegraph, telex, telecopy, cable communicating data processors, or some other electronic or other medium.

g.  "COMPANY" or "SINA" means Sina Corporation, and its parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents, PROFESSIONALS, investigators, representatives, and any other person or entity acting on its behalf or subject to its control.

h.  "DOCUMENTS" shall have the meaning set forth in Fed. Rule Civ. Pro. 34(a)(1). It shall include, without limitation, all originals, duplicates, and drafts of each such DOCUMENTS, as well as DOCUMENTS that are electronically stored on backup tapes, and is meant to include all DOCUMENTS in YOUR possession, custody or control, whether the DOCUMENTS were compiled by YOU or by any other person for any reason whatsoever. The term "DOCUMENT" also includes any message sent electronically, including, without limitation, any message sent via cell phone (including, without limitation, smart phones, iPhones, or Android phones), electronic tablet (including, without limitation, iPads or Android tablets), text, Blackberry Messenger, Facebook Messenger, Google Chat, Google Talk, GroupMe, Jabber, Line, iMessage, Skype, Slack, Snapchat, Telegram, Viber, WeChat, or WhatsApp.

i.  "FAIRNESS OPINION" means MORGAN STANLEY's fairness opinion dated September 28, 2020 as reflected at Annex F to the PROXY.

2

j. "FINANCIAL REPORT" means any financial statements or schedules or reports or analyses that provide financial information or information that is relevant to financial information (for example, including Documents constituting or concerning business strategy, financing and capital structure, operating costs, revenues, investments in business assets, the sales of business assets, share repurchase and equity distributions, analysis of the industry or competitors), including balance sheets, income statements, cash flow statements, free cash flows schedules, statements of common equity, information about revenues, expenditures, investments, and profitability (including EBIT, EBITDA, and operating profit), and any supporting schedules or information constituting or concerning any of those DOCUMENTS.

k. "GO-SHOP" means a provision in a merger agreement that allows a company to seek out competing offers even after its board of directors has approved the transaction.

l. "HAINAN HUIYUAN PROPERTY PROJECT" means the real estate development owned or controlled by the Company located in or near Yanzhou District, Sanya City, Hainan Province, the People's Republic of China.

m. "LENDERS" means (i) China Minsheng Banking Corp., Ltd. Shanghai Branch; and (ii) China Minsheng Banking Corp., Ltd. Hong Kong Branch, and their parents, subsidiaries, affiliates, and other entities under their control and each of their employees, directors, officers, agents, PROFESSIONALS, investigators, representatives, and any other person or entity acting on their behalf or subject to their control.

n. "MERGER AGREEMENT" means the Amended and Restated Agreement and Plan of Merger dated as of September 28, 2020, as referenced in the PROXY.

o.  "MERGER" means all of the transactions contemplated by the MERGER AGREEMENT (as defined in the PROXY), including the merger among the COMPANY and the BUYER GROUP, which became effective on or about March 23, 2021, by which the BUYER GROUP accomplished the privatization of the COMPANY.

p.  "MORGAN STLANEY" means Morgan Stanley, its parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents, PROFESSIONALS, investigators, representatives, and any other person or entity acting on its behalf or subject to its control, including, without limitation, Morgan Stanley Asia Limited, Morgan Stanley & Co. LLC, and Mr. Richard Wong, the Managing Director who signed the FAIRNESS OPINION.

q.  "MORGAN STANLEY PRESENTATION" means the Powerpoint presentation entitled "Discussion Materials prepared by Morgan Stanley Asia Limited for discussion with the special committee of the board of directors of the Company" MORGAN STANLEY rendered to the SPECIAL COMMITTEE on September 28, 2020, available at https://www.sec.gov/Archives/edgar/data/1094005/000104746920005169/a2242505zex-99_c2.htm.

r.  "PROFESSIONAL" means advisors, consultants, attorneys, counsel, service providers, bankers, financiers, accountants, together with their affiliates.

s.  "PROJECTIONS" means any forecast or projection or other information constituting or concerning the COMPANY's FINANCIAL REPORT for a period of time after the date the DOCUMENT was created, including any PROJECTION created on an annual, quarterly, or monthly basis.

t. "PROXY" means Exhibit (a)-(1) annexed to the Schedule 13E-3 filed by the COMPANY on November 20, 2020.

u. "SINA PLAZA" means the real estate that is the headquarters of the COMPANY located at No. 8, Sina Plaza, Courtyard 10, The West Xibeiwang E. Road, Haidian District Beijing, the People's Republic of China, 100193.

v. "SPECIAL COMMITTEE" means the committee of members of the BOARD as publicly announced by the COMPANY on July 6, 2020.

w. "SUN DREAM" means Sun Dream, Inc., and its parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents, PROFESSIONALS, , investigators, representatives, and any other person or entity acting on its behalf or subject to its control.

x. "TUSIMPLE" means Tusimple Holdings, Inc., and its parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents, PROFESSIONALS, , investigators, representatives, and any other person or entity acting on its behalf or subject to its control.

y. "TUSIMPLE IPO" means the initial public offering by TUSIMPLE which closed on or around April 15, 2021 on the Nasdaq stock exchange.

z. "TUSIMPLE 2019 PRIVATE PLACEMENT" means the Series D Funding by TUSIMPLE, as referenced by TUSIMPLE's press releases dated September 17, 2019, and February 13, 2019.

aa. "TUSIMPLE 2020 PRIVATE PLACEMENT" means the Series E Funding by TUSIMPLE, completed on or around November 2020.

bb. "VALUABLE CAPITAL" means Valuable Capital Group, and its parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents, PROFESSIONALS, , investigators, representatives, andany other person or entity acting on its behalf or subject to its control.

cc. "WEIBO" means Weibo Corporation, and its parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents, PROFESSIONALS, , investigators, representatives, andany other person or entity acting on its behalf or subject to its control.

dd. "ZHANG" means Bonnie Yi Zhang, the Chief Financial Officer of the COMPANY, each of her PROFESSIONALS, employees, agents, , representatives, and any other person or entity acting on her behalf or subject to her control.

## INSTRUCTIONS

1. YOU are requested to produce all responsive DOCUMENTS and COMMUNICATIONS that are in YOUR possession, custody, or control, wherever located, including those in the custody of YOUR PROFESSIONALS and affiliates.

2. If any part of the following Requests cannot be responded to in full, please respondto the extent possible, specifying the reason(s) for YOUR inability to respond to the remainder and stating whatever information or knowledge YOU have relating to the portion to which YOU do not respond.

3. If there are no DOCUMENTS responsive to any particular Request, please state so in writing.

4.      Where any copy of any DOCUMENT whose production is sought herein, whether a draft or final version, is not identical to any copy thereof, by reason of alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

5.      If any DOCUMENT requested herein was formerly in YOUR possession, custody, or control (or that of YOUR PROFESSIONAL) and has been lost or destroyed or otherwise disposed of, YOU are requested to submit in lieu of any such DOCUMENT a written statement (i) describing in detail the nature of the DOCUMENT and its contents, (ii) identifying the person(s) who prepared or authored the Document and, if applicable, the person(s) to whom the DOCUMENT was sent, (iii) specifying the date on which the DOCUMENT was prepared or transmitted, and (iv) specifying the date on which the DOCUMENT was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the person(s) requesting and performing the destruction.

6.      All DOCUMENTS shall be produced in TIFF format with OCR images in color. All DOCUMENTS shall be produced with metadata, including the date created/sent, author, recipients, cc-copies, and bcc-blind copies. All Microsoft Excel, .csv, Microsoft Powerpoint, Microsoft Word, and similar files shall be produced in their native format. We reserve the right to request that DOCUMENTS be produced in their native format.

7.      A request for any DOCUMENT shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to such DOCUMENT, in addition to the DOCUMENT in its full and unexpurgated form.

8.      References to the singular shall include the plural and references to the plural shall include the singular; the conjunctive shall include the disjunctive and the disjunctive shall include the

conjunctive; and the present tense shall include the past tense and the past tense shall include the present tense as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

9. DOCUMENTS should be produced in the manner they are kept in the ordinary courseof business. DOCUMENTS attached to each other should not be separated.

10. If any DOCUMENT is withheld or not produced under a claim of privilege, immunity,or otherwise, identify in writing the basis upon which the asserted privilege, immunity, or other reason for non-disclosure is claimed, in accordance with terms and conditions to be agreed upon by the parties or ordered by the Court.

11. If only a part of a DOCUMENT is protected by any privilege or immunity, the DOCUMENT shall be produced with only the privileged matter redacted.

12. The following Requests are to be deemed continuing in nature. If YOU become aware of or acquire additional information relating or referring to any of the following Requests, such additional information must be promptly produced.

13. Unless otherwise specified in any of the Requests, the date range for the Requests is January 1, 2018 through May 1, 2021.

## DOCUMENT REQUESTS

*Concerning the MERGER*

1. All DOCUMENTS concerning the formation of NEW WAVE, New Wave Mergersub Limited, and New Wave Holdings Limited.

2. DOCUMENTS sufficient to show the identities of the officers and directors of NEW WAVE, New Wave Mergersub Limited, and New Wave Holdings Limited.

3. DOCUMMENTS sufficient to show YOUR relationships with CHAO, SINA, ZHANG and/or SUN DREAM.

4. All non-privileged DOCUMENTS and COMMUNICATIONS concerning any Cayman Islands Appraisal Proceeding regarding the valuation of SINA, including risk analysis, internal reports, and discussions of implications for public relations and business strategy.

5. All DOCUMENTS and COMMUNICATIONS concerning the MERGER or the MERGER AGREEMENT.

6. All DOCUMENTS and COMMUNICATIONS concerning any ALTERNATIVE TRANSACTION (other than the MERGER) authored, reviewed, considered, addressed, discussed, analyzed by YOU or any other person acting on YOUR behalf.

7. All DOCUMENTS and COMMUNICATIONS exchanged between YOU and any member(s) of the BUYER GROUP, the BOARD, the COMPANY, the SPECIAL COMMITTEE, a member of the SPECIAL COMMITTEE, MORGAN STANLEY, TUSIMPLE, WEIBO, SUN DREAM, the LENDERS and/or ZHANG concerning the MERGER or any ALTERNATIVE TRANSACTION.

8. All DOCUMENTS and COMMUNICATIONS concerning the FAIRNESS OPINION.

9. ALL DOCUMENTS and COMMUNICATIONS concerning the MORGAN STANLEY PRESENTATION

10. All DOCUMENTS and COMMUNICATIONS concerning the formation of the SPECIAL COMMITTEE, including the selection and appointment of members of the SPECIAL

COMMITTEE, the purported independence of such members and relationship YOU may have or had with any members of the SPECIAL COMMITTEE.

11. All DOCUMENTS and COMMUNICATIONS exchanged between YOU and the government of the People's Republic of China concerning the COMPANY, any of the assets of the Company, WEIBO and/or the MERGER.

12. ALL DOCUMENTS and COMMUNICATIONS concerning any investments held directly or indirectly by the COMPANY.

13. ALL DOCUMENTS and COMMUNICATIONS concerning the COMPANY's FINTECH BUSINESSES as set forth on pages 17, 19, 27, 36, and 37 of the MORGAN STANLEY PRESENTATION and 33, 37 and 45 of the PROXY.

14. ALL DOCUMENTS and COMMUNICATIONS concerning the COMPANY's PORTAL BUSINESSES as set forth on pages 8, 9, 19, 17, 18, and 40 of the MORGAN STANLEY PRESENTATION and 37 and 45 of the PROXY.

15. ALL DOCUMENTS and COMMUNICATIONS concerning SINA PLAZA including any plans to sell SINA PLAZA in whole or in part to WEIBO.

16. ALL DOCUMENTS and COMMUNICATIONS concerning VALUABLE CAPITAL. For purposes of this Request, the relevant time range is from January 2019 to the present.

17. ALL DOCUMENTS and COMMUNICATIONS concerning the HAINANHUIYUAN PROPERTY PROJECT. For purposes of this Request, the relevant time range is from January 2016 to the present.

18. ALL DOCUMENTS and COMMUNICATIONS concerning the COMPANY's filings with the Securities and Exchange Commission and any agency or component of the

Government of the People's Republic of China. For purposes of this Request, the relevant time range is from January 2016 to the present.

19. All DOCUMENTS and COMMUNICATIONS concerning valuation reports, fairness or solvency opinions, appraisals, analyses, reviews, discounted cash flow or other comparable companies analysis, or other documents concerning the value, market value, book, value or fair value of the COMPANY, its stock, and/or any of the COMPANY's assets or businesses.

20. All DOCUMENTS and COMMUNICATIONS concerning any forecast of the COMPANY's future performance, including, but not limited to the PROJECTIONS.

21. All DOCUMENTS concerning or comprising assumptions underlying all analyses, opinions, or projections concerning the COMPANY.

22. All materials including books, analyses, and/or presentations (including drafts) concerning the MERGER, strategic alternatives, or any other offer as well as materials supporting such books, analyses, and/or presentations.

23. All DOCUMENTS and COMMUNICATIONS concerning any inquiry, expression of interest, or proposal from any party to acquire any or all of the stock or assets of the COMPANY.

24. All DOCUMENTS and COMMUNICATIONS concerning or with the Shareholder A identified in the PROXY.

25. All DOCUMENTS and COMMUNICATIONS concerning any condition that the MERGER be approved by a majority of the shares not held by the BUYER GROUP and its affiliates.

26. All DOCUMENTS and COMMUNICATIONS concerning any condition that the MERGER be subject to a GO-SHOP.

27. All DOCUMENTS and COMMUNICATIONS concerning the industry in which the COMPANY operates.

28. ALL DOCUMENTS and communications concerning the financing of the MERGER including potential but unconsummated financing plans and DOCUMENTS and COMMUNICATIONS produced by, provided to, obtained from, exchanged with or relating to financiers or purchasers and/or any prospective or potential financiers or purchasers, including without limitation, the LENDERS.

29. All DOCUMENTS and COMMUNICATIONS concerning the equity financing CHAO provided YOU concerning the MERGER.

30. All DOCUMENTS and COMMUNICATIONS concerning the preference shares issued to NEW WAVE on or around November 7, 2017, as referenced in the COMPANY's Form 6-K filing dated November 8, 2017.

31. All DOCUMENTS and COMMUNICATIONS concerning the trading price of SINA common stock.

32. All DOCUMENTS and COMMUNICATIONS concerning any plan to list the shares of the COMPANY or any part of it in a stock exchange after the completion of the MERGER. For purposes of this Request, the ending date range is the present time.

33. All DOCUMENTS and COMMUNICATIONS concerning any meeting of the BOARD concerning the MERGER or any ALTERNATIVE TRANSACTION.

34. All DOCUMENTS and COMMUNICATIONS that are or are related to a valuation of the COMPANY or any part of it.

35. All DOCUMENTS and COMMUNICATIONS that are or related to a calculation of the profit or returns YOU or CHAO anticipated making from the MERGER.

*Concerning the TUSIMPLE IPO*

36. ALL DOCUMENTS and COMMUNICATIONS concerning the TUSIMPLE IPO.

37. ALL DOCUMENTS and COMMUNICATIONS concerning any ALTERNATIVE TRANSACTION considered other than the TUSIMPLE IPO.

38. ALL DOCUMENTS and COMMUNICATIONS concerning the timing of the TUSIMPLE IPO, specifically, but not limited to, its relationship to the timing of the MERGER.

39. ALL DOCUMENTS and COMMUNICATIONS concerning the TUSIMPLE 2019 PRIVATE PLACEMENT.

40. ALL DOCUMENTS and COMMUNICATIONS concerning the TUSIMPLE 2020 PRIVATE PLACEMENT.

41. ALL DOCUMENTS provided to or by and COMMUNICATIONS with MORGAN STANLEY concerning the TUSIMPLE IPO or any ALTERNATIVE TRANSACTION.

42. ALL DOCUMENTS provided to or by and COMMUNICATIONS with ZHANG concerning the TUSIMPLE IPO or any ALTERNATIVE TRANSACTION.

43. ALL DOCUMENTS and COMMUNICATIONS concerning actual, potential or contemplated investment by CHAO, the COMPANY and/or SUN DREAM in TUSIMPLE.

44. All DOCUMENTS and COMMUNICATIONS concerning any connection between YOU and/or CHAO on the one hand and SUN DREAM on the other.

45. All DOCUMENTS and COMMUNICATIONS concerning any connection between the COMPANY and SUN DREAM.

46. ALL DOCUMENTS and COMMUNICATIONS concerning any conflicts of interest arising from the engagements of MORGAN STANLEY for the MERGER and the TUSIMPLE IPO.

47. To the extent not otherwise provided in response to these requests, all DOCUMENTS and COMMUNICATIONS produced as part of any other Section 1782 proceedings concerning the MERGER, any strategic alternatives and/or ALTERNATIVE TRANSACTIONS to the MERGER contemplated by the COMPANY, and/or the TUSIMPLE IPO.

## SCHEDULE B

## DEPOSITION TOPICS

The Definitions in Schedule A are incorporated herein by reference. YOU shall testify concerning:

      1.     All DOCUMENTS, and the subjects they cover, produced by YOU in response to this Subpoena and the method by which such DOCUMENTS were identified, collected, and reviewed for production.