# EXHIBIT 10

# 公　证　书

中华人民共和国上海市奉贤公证处

V. Lord
Made on behalf of the Petitioner
Exhibit: VAL-1
Affirmed: 9 November 2021
Filed: 9 November 2021

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

CAUSE NO: FSD 128 OF 2021 (RPJ)

**IN THE MATTER OF THE COMPANIES ACT (2021 REVISION)**

**AND IN THE MATTER OF SINA CORPORATION**

---

### FIRST AFFIRMATION OF VICTORIA ANN LORD

---

I, **Victoria Ann Lord**, of Unit 2, 9th Floor, Tower 3, Lujiazui Finance Plaza, 826 Century Avenue, Pudong New Area, Shanghai, the People's Republic of China (the ***PRC*** or ***China***), **TRULY AND SINCERELY AFFIRM AND SAY** as follows: -

1.      I am the Managing Partner of Aristodemou Loizidis Yiolitis LLC Shanghai Representative Office (Cyprus) (***Harneys Shanghai***), which is a member of the Harneys group. I am a qualified barrister in England and Wales, called in 2007 (currently not practicing) and was admitted to the bar of the East Caribbean Supreme Court in the British Virgin Islands in September 2011, which jurisdiction's laws I have been practising ever since.

2.      I have also been registered to practise as a foreign lawyer in the PRC since May 2019, regulated, along with Harneys Shanghai, by the Ministry of Justice of the PRC.  As a foreign registered lawyer I am not permitted to practice the laws of the PRC.  As a resident of the PRC and located here geographically I am bound by the laws of the PRC as are the staff of Harneys Shanghai.  As the appointed Chief Representative of Harneys Shanghai, I bear ultimate responsibility for Harneys Shanghai vis-a-vis the regulatory authorities.

3.      I am also the client relationship Partner for the Petitioner, Sina Corporation (the ***Company***) in these proceedings. I make this affirmation on behalf of the Company to provide evidence of the steps that the Company has taken to date in preparing for its

discovery in these proceedings, and in attempting to obtain approval from the relevant government authority for the transmission of documents cross-border for the purpose of discovery in these proceedings. At all material times in conducting these proceedings I have liaised closely with my colleagues from Harney Westwood & Riegels in the Cayman Islands (**Harneys Cayman**).

4. I confirm that the facts and matters to which I depose in this affirmation are within my personal knowledge and are true. Where facts and matters are not within my own knowledge, the source of my information is stated and the facts and matters are true to the best of my information and belief. Nothing in this affirmation is intended to waive privilege over the advice that I or Harneys have provided to the Petitioner in relation to these proceedings.

5. Produced to me at the time of making this affirmation and marked as "Exhibit VAL-1" is a bundle of true copy documents referred to in this affirmation. A reference to a page number in this affirmation is a reference to the corresponding page number in Exhibit VAL-1.

**Collection of Data and discovery process to date**

6. By a letter dated 16 October 2021 it was suggested by the attorneys acting for those shareholders who have dissented from the Merger and who are now contesting the question of fair value, before the Court (the **Dissenters**) that the Company's proposals as to disclosure are "*concerning*", that the Company is "*limiting its custodians to persons involved in the Merger*", and that the Company may be using "*targeted collection as a method for searching for relevant documents*". Further the Dissenters are "*very concerned that … the Company has not given any or any proper thought to the keywords that it would need to apply*". The letter closed with a demand for a shopping list of information as to the process of discovery.

7. In response, on 4 November 2021, Harney Cayman wrote to respond to the perceived "*concerns*" and confirmed that additional detail as to the Company's disclosure process to date would be provided by evidence to be filed on 8 November 2021. I now set out below details of the discovery process conducted by the Company to date:

a.  Preservation letters were issued on 1 April 2021 to put the following on notice that the Company would potentially be involved in this litigation:

 (i)  The Special Committee members, namely, ZHANG Yichen, WANG Yan and ZHANG Songyi (the *SC Members*);

 (ii)  XUE Fang, YUE Qi, YING Ethan, GUO Keron and WEN Xuechun from Gibson, Dunn & Crutcher LLP (*GDC*), US legal counsel appointed by the Special Committee;

 (iii)  Morgan Stanley (*MS*), financial advisors appointed by the Special Committee.

 (together, the *Third Party Custodians*)

 Copies of the preservation letters are at pages 1 to 10.

b.  The Company through Harneys Shanghai, commenced identification of an e-discovery provider in April 2021.

c.  On 3 June 2021, following interview and negotiation as to terms, the Company formally engaged Epiq China, a part of the Epiq Group, as its e-discovery provider.  Epiq is an internationally recognised global provider of professional services including e-discovery.  Epiq's website confirms that they have over 80 offices across the world and have more than 7,000 people within their business, including offices in the PRC.

d.  On various days from 10 June to 13 August 2021, Epiq's staff together with Ms Vivian Ma prepared for and conducted numerous interviews in Chinese with numerous company employees, in the financial and legal departments of Sina, as well as with senior management.  Ms Ma is employed as a Senior Associate of Harneys Shanghai, is admitted to practice as a solicitor in the High Court of Hong Kong Special Administrative Region of the PRC, having been admitted in February 2013 and has been registered to practice as a foreign lawyer in the PRC since March 2020. Ms Ma is Chinese and is fluent in

both Mandarin and Cantonese, as well as English.  I understand from Ms Ma that the interviews covered (i) the custodians' involvement with the Company and, where that was relevant, the merger transaction; (ii) the manner in which they stored data relevant to the Companies' financials and operations, which data could conceivably be relevant to the question of fair value; (iii) the need to identify all possibly relevant documentation for collection in both electronic and hard copy; (iv) the IT environment in which the person worked, the devices and mediums of communication used, including WeChat and any hard copy documents; and (v) the procedure and next steps for collection of data.

e.   On 26 July 2021, the first collection was conducted in advance of other on-site collections due to the impending maternity leave of the employee in question, with both Ms Ma and Jack Zhao of Epiq attending.

f.   From 24 August 2021 to 24 September 2021, further on-site collections were made from the identified custodians, who numbered 21 in total.  Again, this included collections from senior management, members of the Finance Department as well as other departments in Sina.

g.   Collections made in Beijing at the Company's headquarters had to be rescheduled a number of times due to concerns as to increased cases of coronavirus in Beijing and separately in Shanghai.  This rescheduling was on my instructions, in conjunction with advice from my Human Resources team, and took into account the increased risk to staff were we to return from a high risk area in Beijing with coronavirus or come from Shanghai Pudong to Beijing and import the virus.  The consequences had either scenario occurred would have been most undesirable from both a reputational and a business operations perspective.  I can confirm that the approach to pandemic control here in the PRC, in both Beijing and Shanghai in my experience is extremely strict and we needed to ensure that minimal risk was caused by travel which was not at that time encouraged by the relevant municipal governments.  This inevitably caused some delay to the process.

4

h.  In relation to the collections that took place in Beijing at the Company's Headquarters, these were attended by either myself, Ms Ma and/or Mr Brian Lin (an associate of Harneys Shanghai and a New York qualified attorney) with Jack Zhao of Epiq attending.

i.  The collection process was for Epiq to image the relevant folders and files that were identified as the repositories for the information likely to be relevant, contained on various electronic files and folders within the company's systems and in the employee's devices.  No fileting by keyword search was undertaken.  The identification of such files, folders and other material and data by the Company was undertaken by Epiq, following discussion with the custodian in question, in conjunction with Harneys Shanghai legal team, which included myself, so as to ensure the relevant data was identified and captured in line with the usual discovery process in the Cayman Islands.

j.  In addition, the Company's staff reviewed, in conjunction with and on the instructions of Harneys Shanghai legal team, the entirety of the Company's paper filing system in the financial department to identify all potentially relevant hard copy documents.  These hard copies were scanned in by the secretarial staff of the Company and provided to Epiq also in electronic copy.  Obviously these hard copies and the hard copy filing system itself are not susceptible to any keyword search.

k.  I should, at this juncture, also clarify that I have been informed by senior management at the Company and the lawyers at Gibson Dunn & Crutcher, the Special Committee's advisors, that no Virtual Data Room was set up in relation to the merger transaction.  Nor was any project name used by the Company for the purposes of the merger transaction.

l.  The data that has been collected is now being processed by Epiq to ensure that it is de-duplicated where necessary and will be reviewed by Harneys Shanghai, in the PRC, for relevance, privilege and the like and so that the relevant material for disclosure may be identified in the usual way, under my supervision, pending certain approval processes which I understand to be

required under the laws of the PRC, which also include a simultaneous review by PRC counsel.  Subject to the relevant regulatory approvals being granted (which I discuss further below), I estimate that Harneys Shanghai will have completed its review and the documents will be ready to be disclosed by mid to late March 2022.

**PRC Data Security Law and Personal Information Protection Law**

8.    In light of the coming into force of the Data Security Law of the People's Republic of China (*DSL*), the Company is working hard to meet both its regulatory obligations in the PRC and its discovery obligations in the Cayman Islands.

9.    The DSL was only published in June 2021 and enacted in September 2021.  Within the space of only a few months, the Company and its advisors, myself included, have urgently sought to understand the scope of the obligations posed.  Non-compliance with the DSL or the Personal Information Protection Law is not an option in the current regulatory environment in the PRC, given the potentially severe consequences.  I can confirm from my experience speaking with experts in the field, including to PRC Counsel for companies in China who are in the midst of or about to initiate proceedings in the BVI and in the Cayman Islands, the legal position is not yet clear.  That uncertainty is mirrored in the memorandum prepared by Yanhua Lin, who is a partner at Fangda law firm in the People's Republic of China which is at pages 11 to 17.

10.    Indeed, in my own experience, and without waiver of privilege or of confidentiality, I have two clients presently in the process of seeking to ascertain the process by which regulatory approval may be obtained so as to permit them to disclose documents which are in fact helpful to their cases.

11.    The Company is also in the process of seeking the relevant regulatory approvals.  In the absence of detailed guidance, the Company has taken various steps to ascertain the relevant process and to seek the necessary guidance as to how to obtain the necessary approval under the law so as to obtain the relevant approvals for cross-border transfers, the precise details of which I am not presently able to disclose for reasons beyond my and the Company's control.  I can, however, confirm that a letter was sent on 1

November 2021 by courier, to the Beijing Municipal Cyberspace Administration (the **BMCA**) seeking instructions and guidance on whether the Company needed prior approval before it can transfer documents and other information cross-border in these proceedings, together with a copy of a Memorandum explaining the Cayman Islands position. A copy of the letter is at pages 18 to 20, with its English translation at pages 21 to 22. A copy of the Memorandum (in both English and Chinese) is at pages 23 to 50. The courier slip shows that the document was received by the BMCA at 4:13pm on 1 November 2021. A copy of the relevant courier slip is at page 51, with its English translation at page 52. Once permission is given to disclose any response, whether oral or in writing, this will be provided immediately to the Dissenters and the Court.

AFFIRMED by the within )
named )
**VICTORIA ANN LORD** )
this 9ᵗʰ of November 2021 )
at *shanghai* )

_____
**VICTORIA ANN LORD**

BEFORE ME:

_____
NOTARY PUBLIC

THIS AFFIRMATION was filed by Harney Westwood & Riegels, Attorneys-at-Law for the Petitioner, whose address for service is 3rd Floor, Harbour Place, 103 South Church Street, PO Box 10240, Grand Cayman KY1-1002, Cayman Islands (Ref: 055301.0001 – KLP/ GMK/ MRH).

V. Lord
Made on behalf of the Petitioner
Exhibit: VAL-1
Affirmed:   November 2021
Filed:   November 2021

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

**CAUSE NO: FSD 128 OF 2021 (RPJ)**

**IN THE MATTER OF THE COMPANIES ACT (2021 REVISION)**

**AND IN THE MATTER OF SINA CORPORATION**

---

**CERTICIATE OF EXHIBIT TO FIRST AFFIRMATION OF VICTORIA ANN LORD**

---

I **HEREBY CERTIFY** that this is the document referred to as Exhibit VAL-1 in the First Affirmation of Victoria Ann Lord.

Dated the    9th day of November 2021

Before me

_____

Notary Public

IN THE GRAND COURT OF THE CAYMAN ISLANDS

FINANCIAL SERVICES DIVISION

CAUSE NO:  FSD 128 OF 2021 (RPJ)

IN THE MATTER OF THE COMPANIES ACT (2021 REVISION)

AND IN THE MATTER OF SINA CORPORATION

---

### INDEX

---

| TAB | DATE | DOCUMENT DESCRIPTION | PAGE |
|---|---|---|---|
| | | **PRESERVATION LETTERS** | |
| 1 | 1 April 2021 | Preservation letter to ZHANG Songyi | 1-2 |
| 2 | 1 April 2021 | Preservation letter to WANG Yan | 3-4 |
| 3 | 1 April 2021 | Preservation letter to ZHANG Yichen | 5-6 |
| 4 | 1 April 2021 | Preservation letter to Gibson, Dunn & Crutcher LLP | 7-8 |
| 5 | 1 April 2021 | Preservation letter to Morgan Stanley Asia Limited | 9-10 |
| | | **OTHERS** | |
| 6 | 8 November 2021 | Memorandum from Fangda law firm | 11-17 |
| 7 | 1 November 2021 | Letter to Beijing Municipal Cyberspace Administration (CHN) | 18-20 |
| 8 | 1 November 2021 | Letter to Beijing Municipal Cyberspace Administration (ENG) | 21-22 |

| 9 | 18 October  2021 | Memorandum from Harneys | 23-50 |
| 10 | 1 November 2021 | Courier slip (CHN) | 51 |
| 11 | 1 November 2021 | Courier slip (ENG) | 52 |

# HARNEYS

Aristodemou Loizides Yiolitis LLC
Shanghai Representative Office (Cyprus)
Lujiazui Finance Plaza
Unit 2, 9th Floor, Tower 3
826 Century Avenue
Pudong New Area, Shanghai
200120 PR China
Tel: +86 21 2030 7888
Fax: +86 21 2030 7868

1 April 2021
**By email**

Vicky.Lord@harneys.com
+86 21 6126 9850
055301.0001/VAL

Song-Yi Zhang
c/o Sina Corporation
No. 8 SINA Plaza,
Courtyard 10, West Xibeiwang East Road
Haidian District
Beijing
People's Republic of China

**Email:** SY-Stark@mandra.hk

Dear Sir

**Sina Corporation (the "Company")**

We act on behalf of the Company as its Cayman Islands legal adviser. The Company will potentially be involved in litigation concerning the "going private" merger by and between New Wave Holdings Limited, New Wave Mergersub Limited and the Company which was duly approved at the extraordinary general meeting of shareholders on 23 December 2020. The litigation concerns the determination by the Cayman Islands Court of the fair value of the shares in the Company held by certain Company shareholders.

It is important that the Company is able to make available to us, its legal adviser, all documents and files, including any electronic documents or electronically stored information ("**ESI**") which could be of relevance. It is therefore essential that you take immediate and affirmative steps to preserve all paper documents and ESI, which may be of relevance. The test for the "relevance" of any particular document is a wide one. In general terms, a document is "relevant" if it may advance or damage the case of a party to the relevant legal proceedings, or if it may fairly lead to a train of enquiry that would have either of those consequences. This is a legal test, and must be applied by us, so please do not attempt to determine what is or is not relevant, but rather preserve all documents that may be potentially relevant. As a general guide only, please note that documents dating back to 23 December 2015 could be considered relevant.

In terms of document sources, please note that these will include all documents stored on your work or personal laptop or desktop computer, server/cloud/online storage/backup/archive system, mobile phone (work or personal), electronic tablet or other devices such as USB keys or flash drives (work or personal). "**Documents**" include letters, faxes, internal and external memoranda and notes, diaries,

Registered with the PRC Ministry of Justice under 臺浦路斯瑞拓律師事所駐上海代表処
Aristodemou Loizides Yiolitis LLC Shanghai Representative Office (Cyprus), a member of the
Harneys Group.
Bermuda legal services provided through an association with Zuill & Co.
??:Shanghai Legal Letter

Anguilla | Bermuda | British Virgin Islands | Cayman Islands
Cyprus | Hong Kong | London | Luxembourg | Montevideo
São Paulo | Shanghai | Singapore | Vancouver
harneys.com

internal and external emails and other electronic communications (whether or not printed), instant messages such as WeChat, Ding Ding or text messages, CDs, flash drives or tapes, calendar / diary entries, comments or annotations on reports or other written documents.  They also include draft documents, copies and duplicates, electronic drafts and copies such as Word documents, Excel spreadsheets, PowerPoints, pdfs etc., and handwritten notes.  These are examples only, and do not comprise an exhaustive list.

Further, the documents to be preserved also include documents (electronic or hard copy) which would normally be deleted in accordance with any document retention policies or otherwise deleted in the ordinary course of business. You should therefore suspend all data destruction processes (whether routine or automatic).

If you are unclear as to whether a document may be potentially relevant, you should preserve that document for a more detailed review by us at a later stage.  If you have any queries as to whether you should be retaining something, please do not hesitate to raise them directly with the Company.  Please do not attempt to access potentially relevant documents if doing so would alter the documents unnecessarily, and please do not alter or delete any potentially relevant information.  If you do so, it could be detrimental to the Company's position in the potential litigation.

The Company and/or Harneys will follow up with more information as the situation develops, including advising you as to when the legal hold is no longer required, or when the Company needs you to provide the documents to us. In the meantime, please respond to confirm that you have read and understood this request, and agreed to comply with it.

If you have any questions, please contact Vicky Lord at vicky.lord@harneys.com and/or Natalie Lee at natalie.lee@harneys.com.


**Aristodemou Loizides Yiolitis LLC**
**Shanghai Representative Office (Cyprus)**

*Aristodemou Loizides Yiolitis*
*Shanghai Representative Office (Cyprus)*

1 April 2021

# HARNEYS

Aristodemou Loizides Yiolitis LLC
Shanghai Representative Office (Cyprus)
Lujiazui Finance Plaza
Unit 2, 9th Floor, Tower 3
826 Century Avenue
Pudong New Area, Shanghai
200120 PR China
Tel: +86 21 2030 7888
Fax: +86 21 2030 7868

1 April 2021
**By email**

Vicky.Lord@harneys.com
+86 21 6126 9850
055301.0001/VAL

Yan Wang
c/o Sina Corporation
No. 8 SINA Plaza,
Courtyard 10, West Xibeiwang East Road
Haidian District
Beijing
People's Republic of China

**Email:** yanwangsina@gmail.com and yanwanghk@yahoo.com

Dear Sir

**Sina Corporation (the "Company")**

We act on behalf of the Company as its Cayman Islands legal adviser. The Company will potentially be involved in litigation concerning the "going private" merger by and between New Wave Holdings Limited, New Wave Mergersub Limited and the Company which was duly approved at the extraordinary general meeting of shareholders on 23 December 2020. The litigation concerns the determination by the Cayman Islands Court of the fair value of the shares in the Company held by certain Company shareholders.

It is important that the Company is able to make available to us, its legal adviser, all documents and files, including any electronic documents or electronically stored information ("**ESI**") which could be of relevance.  It is therefore essential that you take immediate and affirmative steps to preserve all paper documents and ESI, which may be of relevance. The test for the "relevance" of any particular document is a wide one.  In general terms, a document is "relevant" if it may advance or damage the case of a party to the relevant legal proceedings, or if it may fairly lead to a train of enquiry that would have either of those consequences.  This is a legal test, and must be applied by us, so please do not attempt to determine what is or is not relevant, but rather preserve all documents that may be potentially relevant.  As a general guide only, please note that documents dating back to 23 December 2015 could be considered relevant.

In terms of document sources, please note that these will include all documents stored on your work or personal laptop or desktop computer, server/cloud/online storage/backup/archive system, mobile phone (work or personal), electronic tablet or other devices such as USB keys or flash drives (work or personal).  "**Documents**" include letters, faxes, internal and external memoranda and notes, diaries,

Registered with the PRC Ministry of Justice under 塞浦路斯珥拓律师事务所驻上海代表处
Aristodemou Loizides Yiolitis LLC Shanghai Representative Office (Cyprus), a member of the
Harneys Group.
Bermuda legal services provided through an association with Zuill & Co.
??-Shanghai Legal Letter

Anguilla | Bermuda | British Virgin Islands | Cayman Islands
Cyprus | Hong Kong | London | Luxembourg | Montevideo
São Paulo | Shanghai | Singapore | Vancouver
harneys.com

internal and external emails and other electronic communications (whether or not printed), instant messages such as WeChat, Ding Ding or text messages, CDs, flash drives or tapes, calendar / diary entries, comments or annotations on reports or other written documents.  They also include draft documents, copies and duplicates, electronic drafts and copies such as Word documents, Excel spreadsheets, PowerPoints, pdfs etc., and handwritten notes.  These are examples only, and do not comprise an exhaustive list.

Further, the documents to be preserved also include documents (electronic or hard copy) which would normally be deleted in accordance with any document retention policies or otherwise deleted in the ordinary course of business. You should therefore suspend all data destruction processes (whether routine or automatic).

If you are unclear as to whether a document may be potentially relevant, you should preserve that document for a more detailed review by us at a later stage.  If you have any queries as to whether you should be retaining something, please do not hesitate to raise them directly with the Company.  Please do not attempt to access potentially relevant documents if doing so would alter the documents unnecessarily, and please do not alter or delete any potentially relevant information.  If you do so, it could be detrimental to the Company's position in the potential litigation.

The Company and/or Harneys will follow up with more information as the situation develops, including advising you as to when the legal hold is no longer required, or when the Company needs you to provide the documents to us. In the meantime, please respond to confirm that you have read and understood this request, and agreed to comply with it.

If you have any questions, please contact Vicky Lord at vicky.lord@harneys.com and/or Natalie Lee at natalie.lee@harneys.com.


**Aristodemou Loizides Yiolitis LLC**
**Shanghai Representative Office (Cyprus)**

*Aristodemou Loizides Yiolitis*
*Shanghai Representative Office (Cyprus)*

1 April 2021

VAL-1 Page 4



Aristodemou Loizides Yiolitis LLC
Shanghai Representative Office (Cyprus)
Lujiazui Finance Plaza
Unit 2, 9th Floor, Tower 3
826 Century Avenue
Pudong New Area, Shanghai
200120 PR China
Tel: +86 21 2030 7888
Fax: +86 21 2030 7868

1 April 2021
**By email**

Vicky.Lord@harneys.com
+86 21 6126 9850
055301.0001/VAL

Yichen Zhang
c/o Sina Corporation
No. 8 SINA Plaza,
Courtyard 10, West Xibeiwang East Road
Haidian District
Beijing
People's Republic of China

**Email:** yz-stark@citiccapital.com

Dear Sir

**Sina Corporation (the "Company")**

We act on behalf of the Company as its Cayman Islands legal adviser. The Company will potentially be involved in litigation concerning the "going private" merger by and between New Wave Holdings Limited, New Wave Mergersub Limited and the Company which was duly approved at the extraordinary general meeting of shareholders on 23 December 2020. The litigation concerns the determination by the Cayman Islands Court of the fair value of the shares in the Company held by certain Company shareholders.

It is important that the Company is able to make available to us, its legal adviser, all documents and files, including any electronic documents or electronically stored information (**"ESI"**) which could be of relevance. It is therefore essential that you take immediate and affirmative steps to preserve all paper documents and ESI, which may be of relevance. The test for the "relevance" of any particular document is a wide one. In general terms, a document is "relevant" if it may advance or damage the case of a party to the relevant legal proceedings, or if it may fairly lead to a train of enquiry that would have either of those consequences. This is a legal test, and must be applied by us, so please do not attempt to determine what is or is not relevant, but rather preserve all documents that may be potentially relevant. As a general guide only, please note that documents dating back to 23 December 2015 could be considered relevant.

In terms of document sources, please note that these will include all documents stored on your work or personal laptop or desktop computer, server/cloud/online storage/backup/archive system, mobile phone (work or personal), electronic tablet or other devices such as USB keys or flash drives (work or personal). **"Documents"** include letters, faxes, internal and external memoranda and notes, diaries,

Registered with the PRC Ministry of Justice under 嘉浦路斯瑞拓律师事务所驻上海代表处
Aristodemou Loizides Yiolitis LLC Shanghai Representative Office (Cyprus), a member of the
Harneys Group.
Bermuda legal services provided through an association with Zuill & Co.
??Shanghai Legal Letter

Anguilla | Bermuda | British Virgin Islands | Cayman Islands
Cyprus | Hong Kong | London | Luxembourg | Montevideo
São Paulo | Shanghai | Singapore | Vancouver
harneys.com

nternal and external emails and other electronic communications (whether or not printed), instant messages such as WeChat, Ding Ding or text messages, CDs, flash drives or tapes, calendar / diary entries, comments or annotations on reports or other written documents.  They also include draft documents, copies and duplicates, electronic drafts and copies such as Word documents, Excel spreadsheets, PowerPoints, pdfs etc., and handwritten notes.  These are examples only, and do not comprise an exhaustive list.

Further, the documents to be preserved also include documents (electronic or hard copy) which would normally be deleted in accordance with any document retention policies or otherwise deleted in the ordinary course of business. You should therefore suspend all data destruction processes (whether routine or automatic).

If you are unclear as to whether a document may be potentially relevant, you should preserve that document for a more detailed review by us at a later stage.  If you have any queries as to whether you should be retaining something, please do not hesitate to raise them directly with the Company.  Please do not attempt to access potentially relevant documents if doing so would alter the documents unnecessarily, and please do not alter or delete any potentially relevant information.  If you do so, it could be detrimental to the Company's position in the potential litigation.

The Company and/or Harneys will follow up with more information as the situation develops, including advising you as to when the legal hold is no longer required, or when the Company needs you to provide the documents to us. In the meantime, please respond to confirm that you have read and understood this request, and agreed to comply with it.

If you have any questions, please contact Vicky Lord at vicky.lord@harneys.com and/or Natalie Lee at natalie.lee@harneys.com.


**Aristodemou Loizides Yiolitis LLC**
**Shanghai Representative Office (Cyprus)**


*Aristodemou Loizides Yiolitis*
*Shanghai Representative Office (Cyprus)*
_____

1 April 2021



Aristodemou Loizides Yiolitis LLC
Shanghai Representative Office (Cyprus)
Lujiazui Finance Plaza
Unit 2, 9th Floor, Tower 3
826 Century Avenue
Pudong New Area, Shanghai
200120 PR China
Tel: +86 21 2030 7888
Fax: +86 21 2030 7868

1 April 2021
**By email**

Vicky.Lord@harneys.com
+86 21 6126 9850
055301.0001/VAL

Fang Xue, Xuechun Wen
Gibson, Dunn & Crutcher LLP
Unit 1301, Tower 1, China Central Place
No. 81 Jianguo Road
Chaoyang District
Beijing
People's Republic of China

**Email:** FXue@gibsondunn.com and XWen@gibsondunn.com

Dear Madam

**Sina Corporation (the "Company")**

We act on behalf of the Company as its Cayman Islands legal adviser. The Company will potentially be involved in litigation concerning the "going private" merger by and between New Wave Holdings Limited, New Wave Mergersub Limited and the Company which was duly approved at the extraordinary general meeting of shareholders on 23 December 2020. The litigation concerns the determination by the Cayman Islands Court of the fair value of the shares in the Company held by certain Company shareholders.

It is important that the Company is able to make available to us, its legal adviser, all documents and files, including any electronic documents or electronically stored information ("**ESI**") which could be of relevance. It is therefore essential that you take immediate and affirmative steps to preserve all paper documents and ESI, which may be of relevance. The test for the "relevance" of any particular document is a wide one. In general terms, a document is "relevant" if it may advance or damage the case of a party to the relevant legal proceedings, or if it may fairly lead to a train of enquiry that would have either of those consequences. This is a legal test, and must be applied by us, so please do not attempt to determine what is or is not relevant, but rather preserve all documents that may be potentially relevant. As a general guide only, please note that documents dating back to 23 December 2015 could be considered relevant.

In terms of document sources, please note that these will include all documents stored on your work or personal laptop or desktop computer, server/cloud/online storage/backup/archive system, mobile phone (work or personal), electronic tablet or other devices such as USB keys or flash drives (work or personal). "**Documents**" include letters, faxes, internal and external memoranda and notes, diaries,

Registered with the PRC Ministry of Justice under 嘉浦路斯瑞拓律师事务所驻上海代表处
Aristodemou Loizides Yiolitis LLC Shanghai Representative Office (Cyprus), a member of the
Harneys Group.
Bermuda legal services provided through an association with Zuill & Co.
??:Shanghai Legal Letter

Anguilla | Bermuda | British Virgin Islands | Cayman Islands
Cyprus | Hong Kong | London | Luxembourg | Montevideo
São Paulo | Shanghai | Singapore | Vancouver
harneys.com

internal and external emails and other electronic communications (whether or not printed), instant messages such as WeChat, Ding Ding or text messages, CDs, flash drives or tapes, calendar / diary entries, comments or annotations on reports or other written documents. They also include draft documents, copies and duplicates, electronic drafts and copies such as Word documents, Excel spreadsheets, PowerPoints, pdfs etc., and handwritten notes. These are examples only, and do not comprise an exhaustive list.

Further, the documents to be preserved also include documents (electronic or hard copy) which would normally be deleted in accordance with any document retention policies or otherwise deleted in the ordinary course of business. You should therefore suspend all data destruction processes (whether routine or automatic).

If you are unclear as to whether a document may be potentially relevant, you should preserve that document for a more detailed review by us at a later stage. If you have any queries as to whether you should be retaining something, please do not hesitate to raise them directly with the Company. Please do not attempt to access potentially relevant documents if doing so would alter the documents unnecessarily, and please do not alter or delete any potentially relevant information. If you do so, it could be detrimental to the Company's position in the potential litigation.

The Company and/or Harneys will follow up with more information as the situation develops, including advising you as to when the legal hold is no longer required, or when the Company needs you to provide the documents to us. In the meantime, please respond to confirm that you have read and understood this request, and agreed to comply with it.

If you have any questions, please contact Vicky Lord at vicky.lord@harneys.com and/or Natalie Lee at natalie.lee@harneys.com.

**Aristodemou Loizides Yiolitis LLC**
**Shanghai Representative Office (Cyprus)**

*Aristodemou Loizides Yiolitis*
*Shanghai Representative Office (CYPRUS)*

1 April 2021



Aristodemou Loizides Yiolitis LLC
Shanghai Representative Office (Cyprus)
Lujiazui Finance Plaza
Unit 2, 9th Floor, Tower 3
826 Century Avenue
Pudong New Area, Shanghai
200120 PR China
Tel: +86 21 2030 7888
Fax: +86 21 2030 7868

1 April 2021
**By email**

Vicky.Lord@harneys.com
+86 21 6126 9850
055301.0001/VAL

Frank Jin
Morgan Stanley Asia Limited
46/F International Commerce Centre
1 Austin Road West
Kowloon
Hong Kong

**Email:** Frank.Jin@morganstanley.com

Dear Sir

**Sina Corporation (the "Company")**

We act on behalf of the Company as its Cayman Islands legal adviser. The Company will potentially be involved in litigation concerning the "going private" merger by and between New Wave Holdings Limited, New Wave Mergersub Limited and the Company which was duly approved at the extraordinary general meeting of shareholders on 23 December 2020. The litigation concerns the determination by the Cayman Islands Court of the fair value of the shares in the Company held by certain Company shareholders.

It is important that the Company is able to make available to us, its legal adviser, all documents and files, including any electronic documents or electronically stored information ("**ESI**") which could be of relevance. It is therefore essential that you take immediate and affirmative steps to preserve all paper documents and ESI, which may be of relevance. The test for the "relevance" of any particular document is a wide one. In general terms, a document is "relevant" if it may advance or damage the case of a party to the relevant legal proceedings, or if it may fairly lead to a train of enquiry that would have either of those consequences. This is a legal test, and must be applied by us, so please do not attempt to determine what is or is not relevant, but rather preserve all documents that may be potentially relevant. As a general guide only, please note that documents dating back to 23 December 2015 could be considered relevant.

In terms of document sources, please note that these will include all documents stored on your work or personal laptop or desktop computer, server/cloud/online storage/backup/archive system, mobile phone (work or personal), electronic tablet or other devices such as USB keys or flash drives (work or personal). "**Documents**" include letters, faxes, internal and external memoranda and notes, diaries,

Registered with the PRC Ministry of Justice under 嘉浦路斯瑞拓律师事务所驻上海代表处
Aristodemou Loizides Yiolitis LLC Shanghai Representative Office (Cyprus), a member of the
Harneys Group.
Bermuda legal services provided through an association with Zuill & Co.
??:Shanghai Legal Letter

Anguilla | Bermuda | British Virgin Islands | Cayman Islands
Cyprus | Hong Kong | London | Luxembourg | Montevideo
São Paulo | Shanghai | Singapore | Vancouver
harneys.com

nternal and external emails and other electronic communications (whether or not printed), instant messages such as WeChat, Ding Ding or text messages, CDs, flash drives or tapes, calendar / diary entries, comments or annotations on reports or other written documents. They also include draft documents, copies and duplicates, electronic drafts and copies such as Word documents, Excel spreadsheets, PowerPoints, pdfs etc., and handwritten notes. These are examples only, and do not comprise an exhaustive list.

Further, the documents to be preserved also include documents (electronic or hard copy) which would normally be deleted in accordance with any document retention policies or otherwise deleted in the ordinary course of business. You should therefore suspend all data destruction processes (whether routine or automatic).

If you are unclear as to whether a document may be potentially relevant, you should preserve that document for a more detailed review by us at a later stage. If you have any queries as to whether you should be retaining something, please do not hesitate to raise them directly with the Company. Please do not attempt to access potentially relevant documents if doing so would alter the documents unnecessarily, and please do not alter or delete any potentially relevant information. If you do so, it could be detrimental to the Company's position in the potential litigation.

The Company and/or Harneys will follow up with more information as the situation develops, including advising you as to when the legal hold is no longer required, or when the Company needs you to provide the documents to us. In the meantime, please respond to confirm that you have read and understood this request, and agreed to comply with it.

If you have any questions, please contact Vicky Lord at vicky.lord@harneys.com and/or Natalie Lee at natalie.lee@harneys.com.

**Aristodemou Loizides Yiolitis LLC**
**Shanghai Representative Office (Cyprus)**

Aristodemou Loizides Yiolitis
Shanghai Representative Office (CYPRUS)

1 April 2021

# 方 達 律 師 事 務 所

## FANGDA PARTNERS

上海 Shanghai · 北京 Beijing · 深圳 Shenzhen · 香港 Hong Kong · 广州 Guangzhou

### M E M O R A N D U M

| | | | |
|---|---|---|---|
| ): Aristodemou Loizides Yiolitis LLC, Shanghai Representative Office (Cyprus) (*Harneys*) | | **FROM:** | Yanhua Lin, Fangda Partners |
| C: | | **DATE:** | November 8, 2021 |
| )TAL PAGES: 3 | | **REF.:** | |
| C: The *Data Security Law of the People's Republic of China* ("**DSL**"). | | | |

I, Yanhua Lin, am a partner at Fangda Partners and a licensed attorney in the People's Republic of China ("**PRC**").   Fangda Partners is one of the major law firms in PRC, with approximately 700 lawyers in five offices in Shanghai, Beijing, Guangzhou, Shenzhen, and Hong Kong.   Fangda Partners has been regularly recognized by law reviews and legal rankings, including being recently named:

(1) China Firm of the Year (China Law and Practice 2018, 2019);
(2) Dispute Resolution (PRC Firms) - Band 1 (Chambers Global 2020, 2021);
(3) Dispute Resolution (PRC Firms) - Band 1 (Chambers Asia-Pacific 2020, 2021);
(4) Regulatory/compliance: PRC firms - Tier 1 (The Legal 500, Asia Pacific, 2020, 2021);
(5) Regulatory: Outstanding (Asialaw Profiles, China, 2021).

I studied law at Peking University in Beijing, PRC between 2001 and 2005 and received an LL. B. degree in 2005.   I also received a Master of Common Law degree from the University of Hong Kong in 2006 and an LL.M. degree from Columbia University in 2011.

My practice is primarily focused on dispute resolution and compliance matters.   I regularly advise clients on compliance with PRC law in connection with cross-border data transmission, including compliance with the DSL and other relevant laws regulating cross-border transmission of data.   A true copy of my expert declaration and of my resume is attached hereto for reference at **Appendix A**.

I have been asked by Harneys to give an explanation as to the impact of Article 36 of the DSL and in particular its impact on companies located and doing business in the PRC.   I understand that this memorandum may be provided to the Court.

### Introduction to Article 36 of the DSL

Article 36 of the DSL provides that:

*The competent authority of the People's Republic of China shall handle the requests for data provision by foreign judicial or law enforcement organizations in accordance with relevant laws and international treaties and conventions concluded or acceded to by the*

age 2                                                    FANGDA PARTNERS

*People's Republic of China, or under the principle of equality and reciprocity. Without the approval of the competent authority of the People's Republic of China, domestic organizations and individuals shall not provide the data stored within the territory of the People's Republic of China to foreign judicial or law enforcement organizations.*

. According to Article 36 of the DSL, (1) the PRC competent authority shall handle a request by a foreign judicial or law enforcement organization for provision of data stored within the PRC territory; and (2) without the approval of the PRC competent authority, a PRC organization or individual shall not provide data stored within the territory of the PRC to a foreign judicial or law enforcement organization.

. I am aware of the concept of disclosure to opposing parties in common law systems, in which I understand parties are compelled to make disclosure of relevant material whether helpful or adverse to their case to each other, from my experience as a practicing lawyer specialized in cross-border litigation. Albeit there is uncertainty, I can confirm that it is my view that a possible interpretation of Article 36 of the DSL is that a request by a foreign judicial authority may include disclosure compelled by a foreign Court's order or by rules of a foreign court, particularly because in the PRC no equivalent *inter partes* disclosure similar to the common law regime I described above exists in domestic legislation.

. Currently, it remains unclear how certain aspects of Article 36 of the DSL would be implemented in practice.   In particular, Article 36 of the DSL does not specify the "competent authority" from which a PRC organization or individual shall seek approval before providing data stored within the territory of the PRC to a foreign judicial or law enforcement organization, or the procedures and requirements for obtaining such approval. There is also no current published definitive detailed interpretation or supporting legislation in force that sheds light on the implementation of Article 36 of the DSL at this stage.

. **Difficulties that companies and individuals located in China are currently facing when seeking to comply with Article 36 of the DSL based on my experience advising Chinese companies other than SINA**

). Absent detailed interpretative guidance, and based on the numerous confidential matters that I am presently engaged on I can confirm that many companies are currently having difficulty identifying exactly what they must do in order to comply with their obligations under Article 36 of the DSL.

10. Under PRC law, a Chinese company may be subject to the supervision and administration of multiple PRC government authorities.   It would thus be difficult for a Chinese company to identify the "competent authority" from which it should seek approval under Article 36 of the DSL.   For instance, in view of international treaties and conventions concluded or acceded to by the PRC, the competent authority could be the *Ministry of Justice of the People's Republic of China* that handle affairs relating to judicial assistance under international treaties and conventions.   Nevertheless, a Chinese company is also

2

age 3                                                    FANGDA PARTNERS

directly under the supervision of the PRC government authority in charge of the industry which the company engages in. For example, a company that engages in the internet industry is under the supervision of the *Ministry of Industry and Information Technology of the People's Republic of China* and/or its local administrations. In addition, from the perspective of data security supervision, the competent authority could also be the Cyberspace Administration of China and/or its local administrations. Suffice it to say that currently there are no rules as to which specific department amongst the foregoing PRC government authorities should be directly approached by a Chinese company seeking approval under Article 36 of the DSL.

1. Nor are there any definitive guidelines as to the process to be adopted in relation to the approval to be obtained for the data to be transferred outside of the PRC. This too is impacting many companies who need to follow the regulatory process in mainland China as it is very difficult at this stage to be able to assess the length of time it will take to obtain approval or the procedure to follow.

2. It is possible that a detailed interpretation or supporting legislation may be issued in the future with respect to the approval mechanism under Article 36 of the DSL, in particular the "competent authority" that would be authorized to grant approval for providing data stored within the territory of the PRC to a foreign judicial or law enforcement organization.

• **What is the likely timeframe when the "competent authority" or the process for approval under Article 36 of the DSL will be clarified?**

3. The DSL only recently came into effect on 1 September 2021. Based on publicly available information to date, there is no official timeframe for the issuance of detailed interpretation or supporting legislation in respect of the DSL. As the PRC legal regime on cross-border data transmission is constantly evolving, it would be difficult to predict when the "competent authority" under Article 36 of the DSL will be clarified. However, the penalties for non-compliance are very clear: loss of business license and criminal sanctions can be expected for non-compliance in severe circumstances.

                                    ***

I hope you find the above analysis helpful. Should you have any further questions or requests, please feel free to let me know.

                                              Very truly yours,

                                              *Yanhua Lin*
                                              Yanhua Lin

                                              Fangda Partners

                                       3

# APPENDIX A

I THE GRAND COURT OF THE CAYMAN ISLANDS
NANCIAL SERVICES DIVISION

CAUSE NO: FSD 128 OF 2021(RPJ)

I THE MATTER OF THE COMPANIES ACT (2021 REVISION)
ND IN THE MATTER OF SINA CORPORATION

## ACKNOWLEDGMENT OF EXPERT'S DUTY & STATEMENT OF TRUTH

I have read Part IV of Order 38 of the Grand Court Rules (GCR), together with Section B4 and Section B5 of the Financial Services Division Guide, Second Edition of the Grand Court of the Cayman Islands which sets out the duties applicable to expert witnesses in the Cayman Islands, and confirm I have complied with Section B5.2 (b): General Requirements. I am fully aware of my duties as an expert witness under the procedural rules of this Honourable Court.

I acknowledge that my duty as an expert is to assist the Court on matters within my area of expertise. I further acknowledge that this duty overrides any obligation to the parties instructing me and by whom I am being paid.

The evidence and opinions contained in this Report are the product of my independent consideration uninfluenced by the pressures of litigation or any party pursuant to my duty to provide independent assistance to the Court by way of an unbiased opinion in relation to matters within my expertise. To the best of my knowledge, I have considered all facts material to the questions on which I provide an opinion in this Report.

I confirm that I have made clear which facts and matters referred to in this Report are within my own knowledge and which are not. Those that are within my own knowledge I confirm to be true. The opinions I have expressed represent my true and complete professional opinions on the matters to which they refer.

November 2021

Signature

*Yanhua Lin*

# YANHUA LIN

Partner, Fangda Partners
+86 10 5769 5653
yanhua.lin@fangdalaw.com



## PRACTICE AREAS

MS. LIN SPECIALIZES IN DISPUTE RESOLUTION, INCLUDING ARBITRATION, LITIGATION AND INVESTIGATION AND COMPLIANCE MATTERS.

## REPRESENTATIVE MATTERS AND CASES

### Compliance and Investigation

- Advised a China-based company in relation to discovery procedures in a Cayman Islands shareholder litigation and advised on PRC law concerning cross-border data transmission.
- Advised several US-listed China-based companies in connection with investigations initiated by foreign regulators and/or legal proceedings of U.S. class actions.   Provided comprehensive legal services including screening sensitive information in the documents subject to discovery and advising on PRC law concerning cross-border data transmission.
- Advised a China-based pharmaceutical company in connection with cross-border document production in the context of a US class action.
- Advised several international accounting firms in connection with various matters concerning cross-border regulatory investigations.   Advised on Chinese law issues related to cross-border data production.
- Advised several clients in the administrative investigation proceedings before the China Securities Regulatory Commission.
- Advised a multinational company in an investigation initiated by the Chinese police into data privacy violations.

### Commercial Dispute Resolution (Arbitration & Litigation)

- Represented a significant PRC computer manufacturer in an arbitration in Hong Kong in accordance with the UNCITRAL Arbitration Rules regarding a HK law governed dispute over the supply of computer equipment in Africa.

1 / 2

- Represented a PRC state-owned company in a HKIAC arbitration case concerning a several-billion-RMB dispute related to a real estate project.
- Represented a PRC investor in an ICC arbitration in Hong Kong in relation to a US$100 million dispute arising from a share purchase agreement and in ancillary court proceedings relating to injunctive orders.
- Represented a PRC subsidiary of a South-East Asian company in an ad hoc arbitration in Hong Kong involving disputes under a purchase and sale contract.
- Represented several European clients in relation to the enforcement of an ICC arbitral award in China.
- Represented an Israeli company in the enforcement of an ICC arbitral award in China.
- Represented a U.S. company in the enforcement of a SCC arbitral award in China.
- Defended the receiver of Lehman Brothers (Europe) in Chinese court proceedings relating to its role in structuring certain financial derivatives in the amount of approximately US $ 200 million.
- Defended ConocoPhillips China Inc. in its dispute against a number of sea-cucumber farmers for the farmers' alleged aquaculture losses arising from the Penglai 19-3 Oil Spill that occurred in June 2011.

## OTHER INFORMATION

### Education

- **Columbia University,** LL.M.: James Kent Scholar
- **University of Hong Kong,** MCL: Lee Shiu Scholar
- **Peking University,** LL.B.
- **Peking University,** B.A. in Economics

### Professional Qualification

- Admitted to practice in the PRC
- Qualified to practice in the State of New York

### Social/Professional Position

- HK 45 Regional Ambassador (Hong Kong International Arbitration Center) from 2019 - 2021
- China representative of the ICC YAF (Young Arbitrators Forum) from 2017 - 2019

### Languages   Mandarin; Cantonese; English

VAL-1 Page 17

# 新浪公司关于数据出境的请示

**尊敬的北京市委网信办：**

近年来，随着《个人信息和重要数据出境安全评估办法》《数据安全法》等相关法律法规出台施行以来，政府部门对于数据安全保护工作已进入正轨。新浪公司作为中国互联网企业，也高度重视数据安全问题。近期，因一起海外诉讼，我公司面临数据出境问题，因此项工作是在《数据安全法》等系列相关法律法规出台后第一次出现，特将相关情况予以请示。

## 一、背景情况

2021 年 5 月 18 日，新浪公司作为呈请人根据开曼群岛《公司法》（修订版）（"**《公司法》**"）第 238 条向英国海外领地开曼群岛大法院提起诉讼程序，旨在要求法院对某些反对 2020 年根据《公司法》进行法定合并的公司前股东（异议股东，即诉讼程序答辩方）所持公司股份的"公允价值"进行确定（"**开曼诉讼**"）。公司被告知开曼群岛法院的诉讼各方须披露与争议问题相关的文件、出席管理层与估值专家的会议并就提供信息的要求作出应答。

现根据开曼诉讼中的披露义务，需要将新浪公司数据转移到中国境外并在境外诉讼程序中披露。然而，公司注意到新颁布的《数据安全法》第 36 条规定：未经中国主管部门批准，中国境

1

的组织和个人不得向外国司法或执法机构提供存储在中国境内数据。现阶段，公司对相关主管部门的认定及审批制度的具体实施方式尚不确定，且无法自行判断。

**二、需要提交的数据类型**

本次需提交的出境数据主要为用以确认当初法定合并时的价值是否公允的相关文件及信息，包括但不限于以下数据：

1. 企业经营的财务数据和运营数据；

2. 法定合并期间各方的通讯往来；

3. 第三方行业报告；

4. 开曼群岛法院根据估值专家的要求而判定需要新浪公司提供的信息；

5. 诉讼程序中公司管理团队成员出席与估值专家的会议笔录及会议中所提供的信息；

需要说明的是，披露的这部分财务数据和运营数据超过了正常上市公司披露的范围，存在企业敏感数据。

**三、需要请示的内容**

在此阶段，我公司无法确定这些文件及数据信息是否属于国家核心数据或重要信息，以及《数据安全法》第36条是否适用于开曼诉讼程序中的证据披露、管理层会议及提供信息的要求。考虑到新浪是中国互联网企业的代表性企业，出境的数据可能包含

2

微博的数据，暂时无法判断是否对舆论场和意识形态安全产生影响。

希望主管部门对新浪公司数据是否可以出境进行指导，并给予正式回复，公司将严格按照回复批示执行，在积极应诉的基础上确保数据安全。

最后，政府部门对数据安全监管政策措施不断细化，平台也深知做好数据安全保护工作任重而道远，新浪将在主管部门的指导下，全力做好数据安全保护。

妥否，请指示。



新浪公司

2021 年 10 月 28 日

VAL-1 Page 20

**Sina Corporation's Request for Instructions on Cross-Border Data Transfer**

Dear Beijing Cyberspace Administration:

In recent years, with the promulgation and implementation of the Measures on Security Assessment for Cross-Border Transfer of Personal Information and Important Data, the Data Security Law and other relevant laws and regulations, government authorities have been on track in terms of data security protection. As a Chinese Internet enterprise, Sina Corporation also attaches great importance to data security. Recently, due to an overseas lawsuit, the company is facing the issue of cross-border data transfer. Since it is the first time that this piece of work emerges following the introduction of the Data Security Law and a series of relevant laws and regulations, we hereby set out relevant information and request for instructions.

**Background Information**

On 18 May 2021, Sina Corporation, as the petitioner, filed a lawsuit with the Grand Court of the Cayman Islands, an overseas Territory of the United Kingdom, in accordance with Section 238 of the Companies Act of the Cayman Islands (the "**Act**"), with the purpose to request the court to determine the "fair value" of shares in the company held by certain former shareholders of the company (dissenting shareholders, i.e. the respondent in the proceedings) who dissented to a statutory merger pursuant to the Act in 2020 (the "**Cayman Proceedings**"). The company is informed that all parties to the proceedings in the court of the Cayman Islands shall disclose documents related to the issues in dispute, attend meetings between the management and valuation experts and respond to information requests.

Now therefore, according to the disclosure obligations in the Cayman Proceedings, the data of Sina Corporation is required to be transferred outside of China and disclosed in the overseas proceedings. However, as known to the company, Article 36 of the newly promulgated Data Security Law stipulates that: Without the approval from competent Chinese authorities, organizations and individuals within the territory of China are not permitted to provide foreign judicial or law enforcement agencies with the data stored within the territory of China. At this stage, the company is neither certain about nor capable of estimating on its own specific implementation manners in connection with identification and approval policies of relevant competent authorities.

**Types of Data to be Submitted**

The data to be submitted under cross-border transfer this time shall mainly be relevant documents and information to be used to determine whether the price upon the statutory merger is fair, including but not limited to the following data:

financial data and operation data relating to the enterprise operation;

communications among the parties during the statutory merger;

third party industry reports;

the information that Sina Corporation is required to provide, as ordered the court of the Cayman lands in accordance with requests of valuation experts;

minutes of meetings with valuation experts during the proceedings, as attended by the company's management team members, and the information provided at such meetings;

should be noted that this part of financial data and operating data to be disclosed is beyond the normal scope of disclosure for listed companies, and contains sensitive data of the enterprise.

**I. Contents with Instructions Requested**

t this stage, the company is unable to determine whether these documents, data and information belong to national core data or important information, and whether Article 36 of the Data Security aw is applicable to requirements in connection with evidence disclosure, management meetings nd information requests under the Cayman Proceedings. Considering that Sina is a typical Chinese nternet enterprise and the data under cross-border transfer may contain that of Weibo, we are emporarily unable to estimate whether it will have an impact on the security of the public opinion eld and ideology.

Ve hope that the competent authority can provide guidance on whether the cross-border transfer f the data of Sina Corporation is permitted, as well as a formal reply. The company will strictly ollow instructions in the reply and ensure data security while actively responding to the lawsuit.

inally, as government authorities continue to refine data security regulating policies and measures, he platform is well aware that there is a long way to go to do well in data security protection. Sina vill make every effort to do well in data security protection under the guidance of the competent uthority.

lease provide instructions on whether it is appropriate or not.

Sina Corporation

28 October 2021

**HARNEYS**

## 备忘录

## MEMORANDUM

| | |
|---|---|
| **致:** | 新浪公司监管部门 |
| **To:** | The Regulatory Body of Sina Corporation |
| **由:** | 衡力斯 |
| **From:** | Harney Westwood & Riegels |
| **主题:** | 开曼群岛的文件披露义务 |
| **Subject:** | Cayman Islands document disclosure obligations |
| **日期:** | 2021 年 10 月 18 日 |
| **Date:** | 18 October 2021 |

衡力斯是开曼群岛律师组成的律师事务所，已就新浪公司（"**公司**"）在《公司法》（"**《公司法》**"）第 238 条项下的开曼群岛诉讼接受其指示。公司要求我们列出其有关该诉讼的义务，我们将在下文予以列出。

Harney Westwood & Riegels are a firm of Cayman Islands Attorneys and have been instructed by Sina Corporation (the Company), in relation to its Cayman Islands litigation under section 238 of the Companies Act (the Act). We have been asked by the Company to set out its obligations in relation to that litigation, which we do below.

### 背景

### BACKGROUND

1. 新浪公司（"**公司**"）是在英国海外领地开曼群岛的大法院进行的诉讼中的一方当事人。该诉讼根据开曼群岛《公司法》（修订版）（"**《公司法》**"）第 238 条提起。

   Sina Corporation (the *Company*) is party to proceedings before the Grand Court of the Cayman Islands, an overseas Territory of the United Kingdom. The proceedings are brought pursuant to s.238 of the Companies Act (As Revised) of the Cayman Islands (the *Act*).

2. 该开曼群岛诉讼的目的在于确定反对 2020 年根据《公司法》进行法定合并的公司某些前股东（"**异议股东**"）所持公司股份（"**股份**"）的"公允价值"。该诉讼中异议股东的名单（包括其所在地）参见附件 A。本案主审法官为尊敬的 Parker 法官。

1

**HARNEYS**

The purpose of the proceedings in the Cayman Islands is to determine the *"fair value"* of shares in the Company held by certain former shareholders of the Company (the ***Shares***) who dissented to a statutory merger pursuant to the Act in 2020 (***Dissenters***). A list of the Dissenters in the action including the location of said dissenter is at Appendix A.  The presiding judge is the Honourable Justice Parker.

二、　披露令

I.   DISCLOSURE ORDERS

1.1   法院将下令披露该开曼群岛诉讼中所需提供的文件。披露令是《公司法》第 238 条项下诉讼中的标准命令。法官可能作出的披露令的格式（包括公司需要披露的文件类别的广度）可能属于开曼群岛民事诉讼中常见的标准形式，对于公司法第 238 条估值诉讼而言尤为如此。它反映了开曼群岛民事诉讼中完善的规则，即当事人需要披露与争议焦点（在本案中即股份的公允价值）相关（或可能相关）的文件（英国和美国法律制度中也有类似的披露义务——尽管披露义务的范围在不同法域和个案中有所区别）。如果公司无法披露文件，则无法在法庭上公平完整地陈述案情。这可能会对公司产生不利影响。

The Court will order disclosure of documents to be given in these Cayman Islands proceedings. The Disclosure order is a standard order made in proceedings under s.238 of the Act. The form of the disclosure order likely to be made by the Judge (including the breadth of the categories of documents that the Company is required to disclose) is likely to be standard for Cayman Islands civil litigation generally and s.238 appraisal proceedings in particular. It reflects the well-established position in Cayman Islands civil litigation that parties are required to disclose documents that are relevant (or may be relevant) to the issues in dispute (in this case the fair value of the shares) (similar obligations exist under English and United States legal systems, albeit the scope of the disclosure obligation differs from jurisdiction to jurisdiction and from case to case). If the Company is unable to disclose the documents it will be unable to present its case fairly and completely in the Court.  This may have adverse consequences for the Company.

2

HARNEYS

*披露令项下需要披露的文件*

*Documents liable to be disclosed under Disclosure Orders*

1.2 关于拟披露的文件，根据我们先前的经验，法官可能会下令要求公司向异议股东作出下列披露：

In terms of the documents to be disclosed, based on our prior experience the Judge will likely make orders that the company is required to make the following disclosure to the Dissenters:

a. 公司在合并前通过虚拟数据库向公司的潜在买家提供的文件；

those documents that the Company made available to potential buyers of the Company via a virtual data room in the lead up to the merger;

b. 与*随附*的附件 B 清单中所列类别相对应的文件；

those documents that respond to the categories listed in the list **enclosed** Appendix B;

c. 与确定股份公允价值有关的任何其他文件。

any other documents that are relevant to determining the fair value of the Shares.

1.3 异议股东要求公司同意法官命令公司披露的文件类别参见附件 C。

Please also see at Appendix C the categories of documents that the Dissenters have requested the Company to agree for the Judge to order the company to make disclosure of.

*文件披露方法*

*Method of disclosure*

1.4 法官可能会命令公司必须通过电子数据库将文件提供给异议股东，他们的律师，指定的估值专家和顾问。这些人(大部分或者全部)身处中华人民共和国（"中国"<sup>1</sup>）境外。考虑到可能需要披露的文件的数量，电子披露的方式非常常见。这些文件一旦披露，可供任何一方在开曼诉讼中用作证据。

The Judge will likely order that the Company must make the Documents available to the Dissenters, their attorneys, appointed valuation expert and advisors via an electronic data room. These persons are (predominantly, if not all) based outside the People's Republic of

<sup>1</sup> 为此处目的仅指中国（不包括澳门和香港特别行政区及台湾省）。

3

HARNEYS

China (the *PRC²*). Electronic disclosure is common given the volume of documents that are likely to be required to be disclosed.  Once disclosed, the documents would be available for use as evidence in the proceedings in Cayman by either side.

三、 提供信息指令

## III. INFORMATION REQUESTS

3.1 法官可能会进一步命令公司向异议股东以及其律师、指定估值专家和顾问提供任何其他信息、文件、材料和通信，或是任何估值专家证人为准备其意见而要求提供的信息。这可能涉及披露其他文件或以书面形式提供信息。如果要求提供文件，则该文件会向其他方披露，并且由于文件可能位于公司记录和文件的保存地以及公司的运营地中国，可能涉及跨境数据传输。如果提供信息，该信息可能来自中国境内的个人，而其所知来源于同样位于中国境内的公司的账册和记录。

The Judge will likely further order that the Company shall make available to the Dissenters, their attorneys, appointed valuation experts and advisors any additional information, documents, materials and communications or information requested by either of the valuation expert witnesses for the purpose of preparing their opinions. This can involve either the disclosure of additional documents or the provision of information in writing.  If a document is requested, it will be disclosed to the other parties and is likely to involve a cross-border transfer of data as the document is likely to be located in the PRC where the company's records and documents are kept and where the Company operates.  Where information is provided, this information is likely to emanate from individuals based in the PRC whose knowledge is derived from the books and records of the Company also located in the PRC.

四、 管理层会议

## IV. MANAGEMENT MEETINGS

4.1 法官可能会进一步命令公司促使其管理团队成员出席与估值专家的会议，以提供信息并回答与专家报告的准备相关的问题。通常采用的形式是：专家证人将在录音环境中向公司管理团队成员提问，异议股东及公司律师均在场，会准备会议笔录且随后发给异议股

---

For present purposes only references to the PRC exclude The Special Administrative Regions of Macau and Hong Kong and the Province of Taiwan.

**HARNEYS**

东。在天合光能一案中，笔录在不得作为呈堂证据的基础上提供（本质上意味着不能在法庭上用作依据），因此并未提供给法庭，然而专家可以使用笔录内容，并在适当的情况下以提供信息指令的形式要求公司回答问题（参见本备忘录第三条），但是不能在法庭上使用管理层会议笔录。我们将此称为*不得作为呈堂证据的管理层会议*。在晶澳太阳能一案中所适用的另一种方案也遵循相同的模式，但并未规定笔录不得作为呈堂证据，公司或异议股东可将其作为法庭证据。

The Judge will likely further order that the Company procure that members of its Management Team be available to attend a meeting with the valuation experts, for the purpose of providing information and answering queries that are relevant to the preparation of their reports. The format that is typically taken is that the expert witnesses will ask questions of the members of the Company's management team, in a recorded setting, with attorneys for the Dissenters and the Company present and a transcript will be made of the same. That Transcript will then be made available to the Dissenters. In the case of Trina Solar, the transcript was provided on a without prejudice basis (essentially meaning that it could not be relied upon in Court) and so was not provided to the Court, but the experts could use the contents and where appropriate could ask the Company to give its answers to the questions by way of Information Request (as per section 3 of this memorandum) but could otherwise not use the Transcript of the Management Meeting in Court. We refer to this as the *WP Management Meeting*. The alternative position adopted in the case of JA Solar follows the same model except that the transcript is not without prejudice and may be deployed as evidence in Court by the Company or the Dissenters.

五、《数据安全法》项下的批准
V. APPROVAL UNDER DSL

5.1 据了解，根据《中华人民共和国数据安全法》（"《数据安全法》"）的规定，新浪拥有或控制的位于中国境内的数据的跨境转移必须遵守相关审批程序并获得公司相关监管机构的批准。

It is understood that pursuant to the provisions of the Data Security Law of the People's Republic of China (*DSL*) an approval process must be followed and approval obtained for the cross border transfer of data from the Company's relevant regulatory body or bodies for data that is located in the PRC that is under Sina's possession or control.

VAL-1 Page 27

HARNEYS

5.2   公司了解其在《数据安全法》第 36 条项下的义务。

The Company is aware of its obligations under article 36 of the DSL.

## 六.   公司未能遵守其义务的后果
## VI.   CONSEQUENCES IF THE COMPANY FAILS TO COMPLY WITH ITS OBLIGATIONS

6.1   文件披露是开曼群岛所遵循的源于英国的普通法法律制度的一个重要方面。开曼群岛法律制度需要当事人能够通过对方当事人的文件来检验和支持自己的立场。因此，公司若不能履行披露义务，则该行为可能严重削弱法院裁决案件的能力。如果《数据安全法》的应用阻碍了公司及时披露和/或依赖相关文件的能力，或是无法披露和/或依赖，公司的利益将受到损害。

Document disclosure is an integral part of the Cayman Islands' English-derived common law based legal system. The Cayman Islands legal system relies on parties being able to test and support their case by reference to the opposing parties' documents. An absence of disclosure by the Company may severely undermine the Court's ability to determine the case. The Company would be prejudiced if the application of the DSL prevents it from disclosing and/or relying upon relevant documents in a timely manner or at all.

6.2   如果开曼群岛诉讼案件的当事人不遵守法院的文件命令，则可能导致重大不利后果，包括法院将会:

Failure by a party to a Cayman Islands proceeding to comply with the Court's orders can have severe adverse consequences, including that the Court:

a.   对隐瞒文件的内容作出不利于当事人在诉讼中的利益的推论;

draws inferences about the content of the withheld documents that are adverse to the party's interests in the proceeding;

b.   (在极端情况下)剥夺当事人在诉讼中为其立场辩护的机会。

(in an extreme case) denies the party the opportunity to defend its position in the proceeding.

6.3   上述与提供信息指令和管理层会议有关的流程也已经成为《公司法》第 238 条规定的程序的标准部分。如果开曼群岛法院法官就提供信息指令和/或管理层会议作出命令，则

6

VAL-1 Page 28

**HARNEYS**

公司在此类诉讼中未能遵守与这些程序有关的义务可能会被认定为藐视法庭并导致上文第 6.2.a 和/或 6.2.b 段中描述的后果。

The processes described above in relation to Information Requests and Management Meetings have also become a standard part of proceedings under s.238 of the Act. If the Judge of the Cayman Islands Court makes orders in relation to Information Requests and/or Management Meetings, failure by the Company in such proceedings to comply with its obligations in relation to those processes may be found in contempt of court and result in the consequences described at paragraphs 6.2.a and/or 6.2.b above.

6.4 我们尚不清楚法院在面对一方当事人仅因非开曼群岛的法律制度的要求而未能履行其义务的情况下将做何种处理。我们至少可以想象法院有可能(但不是绝对)最终采用上文第 6.2.a 段中讨论的方式,并有可能采用第 6.2.b 段中讨论的方式。

It is unclear how the Court would deal with a situation where a party's failure to comply with its obligations arises solely due to the intervention of the requirements of a non-Cayman Islands legal system. It is at least conceivable (but not certain) that the Court would ultimately resort to the measures discussed at paragraph 6.2.a, and possibly 6.2.b, above.

6.5 如上文第 3.1 段所述,提供信息指令获得的数据可能来自于身在中国内地的个人,他们对信息的认知同样来自于存在中国内地的公司账簿和记录。此外,鉴于大部分管理层成员身处中国内地,管理层会议很可能在中国内地举行,因此笔录和录音也将在中国内地生成。因此,在开曼群岛诉讼程序中使用提供信息指令获得的数据和管理层会议记录可能涉及数据的跨境传输。

As mentioned in paragraph 3.1 above, the information request data is likely to emanate from individuals based in the PRC whose knowledge is derived from the books and records of the Company also located in the PRC. Further, the Management Meeting is likely to be held in the PRC given that most of the management members are located in the PRC, therefore the transcript and the recordings are also to be generated from the PRC. As such, use of information request data and the transcript of the Management Meeting in the Cayman Islands proceedings will likely involve cross-border transfer of data.

如果您需要我们协助,请告知我们。

Please let us know if we can be of further assistance.

7

**HARNEYS**

**Appendix A – Dissenter List**

**附件 A — 异议股东名单**

| NO.<br>编号 | Dissenter<br>异议者 | Address[3]<br>地址 |
|---|---|---|
| Dissenters represented by Mourant Ozannes<br>由 Mourant Ozanne 代表的异议股东 | | |
| 1. | Oasis Investments II Master Fund Ltd | C/O Maples and Calder<br>Ugland House PO Box 309<br>Grand Cayman E9<br>KY1-1104<br>Cayman Islands |
| 2. | Oasis Focus Fund LP | 21st Floor, Man Yee Building<br>68 Des Voeux Road<br>Central K3 00000<br>The People's Republic of China Special Administrative Region of Hong Kong[4] |
| 3. | Oasis Special Situation SPC– Gamma SP | C/O Maples and Calder<br>Ugland House PO Box 309<br>Grand Cayman E9<br>KY1-1104<br>Cayman Islands |
| 4. | Oasis Investments Limited | C/O Mourant Ozannes, 94 Solaris Avenue<br>Camana Bay, PO Box 1348<br>Grand Cayman, KY1-1108<br>Cayman Islands |

As per the Securities and Exchange Commission of the United States of America EDGAR system, unless otherwise stated
根据美国证券交易委员会的 EDGAR 系统，除非另有说明
incorporated in New York, United States of America
成立于美国纽约

8

**HARNEYS**

| NO.<br>编号 | Dissenter<br>异议者 | Address[3]<br>地址 |
|---|---|---|
| **Dissenters represented by Collas Crill**<br>**由Collas Crill代表的异议股东** | | |
| 5. | Fourworld Special Opportunities Fund, LLC | 7 World Trade Center<br>FL. 46, New York, NY 10007<br>United States of America[5] |
| 6. | Fourworld Global Opportunities Fund Ltd | C/O Mourant Governance Services (Cayman) Limited<br>94 Solaris Avenue, PO Box 1348<br>Grand Cayman, George Town<br>KY KY1-1108<br>Cayman Islands[6] |
| 7. | Corbin ERISA Opportunity Fund Ltd | C/O Elian Fiduciary Services (Cayman) Limited<br>89 Nexus Way, Camana Bay<br>KY1-9007, Cayman Islands[7] |
| 8. | Corbin Opportunity Fund, LP | Corbin Capital Partners, L.P.<br>590 Madison Avenue, 31st Floor<br>New York NY 10022<br>United States of America[8] |
| 9. | Pinehurst Partners LP | Corbin Capital Partners<br>590 Madison Avenue, 31st Floor<br>New York NY 10022<br>United States of America[9] |

---

Incorporated in Delaware, United States of America

成立于美国特拉华州

Cited as the legal address per LEI.report

根据 LEI.report 引用为法定地址

Cited as the legal address as per OpenLEIs.com

根据 OpenLEIs.com 引用为法定地址

Incorporated in Delaware, United States of America

成立于美国特拉华州

Incorporated in Delaware, United States of America

成立于美国特拉华州

VAL-1 Page 31

**HARNEYS**

| NO. 编号 | Dissenter 异议者 | Address[3] 地址 |
|---|---|---|
| 10. | Boothbay Diversified Alpha Master Fund LP | C/O Appleby Global Services (Cayman) Limited<br>71 Fort Street, PO Box 500<br>Grand Cayman, George Town<br>KY KY1-1106, Cayman Islands[10] |
| 11. | Boothbay Absolute Return Strategies LP | 140 E 45th Street 14th Floor<br>New York NY 10017<br>United States of America[11] |
| 12. | QVT Family Office Fund LP | C/O Intertrust SPV (Cayman) Limited<br>190 Elgin Avenue, George Town<br>KY1-9005, Cayman Islands[12] |
| 13. | Athos Asia Event Driven Master Fund | Maples Corporate Services Limited<br>PO Box 309, Ugland House<br>Grand Cayman, KY1-1104<br>Cayman Islands |
| 14. | Athos Special Situations Fund SPC – Athos Global Opportunities SP 1 | PO Box 309, Ugland House<br>Grand Cayman, KY1-1104<br>Cayman Islands[13] |
| 15. | FMAP ACL Limited | C/O Maples Corporate Services Limited<br>PO Box 309, Ugland House<br>George Town, KY1-1104<br>Cayman Islands[14] |

Cited as the legal address per LEI.report
根据 LEI.report 引用为法定地址
Incorporated in Delaware, United States of America
成立于美国特拉华州
Cited as the legal address as per OpenLEIs.com
根据 OpenLEIs.com 引用为法定地址
Cited as the legal address per LEI.global
根据 LEI.report 引用为法定地址
Cited as the legal address per LEI.report
根据 LEI.report 引用为法定地址

10

VAL-1 Page 32

**HARNEYS**

| NO.<br>编号 | Dissenter<br>异议者 | Address[3]<br>地址 |
|---|---|---|
| 16. | 405 ACM Ltd | PO Box 309, Ugland House<br>Grand Cayman, KY1-1104<br>Cayman Islands[15] |
| 17. | Quadre Investments LP | 353 East 83rd Street #23H<br>New York NY 10028<br>United States of America[16] |
| **Dissenters Represented by Carey Olsen**<br>**由Carey Olsen代表的异议股东** | | |
| 18. | Fulcrum Distressed Opportunities Fund III LP | 4th Floor, Harbour Place<br>103 South Church Street<br>Grand Cayman, Cayman Islands<br>KY1-1002 |
| 19. | Sunrise Partners Limited Partnership | Two American Lane<br>Greenwich Ct 06836-2571<br>United States of America[17] |
| 20. | Stonehill Institutional Partners LP | 320 Park Avenue, 26th Floor<br>New York NY 10022<br>United States of America[18] |
| 21. | Stonehill Master Fund Ltd | 885 Third Avenue, 30th Floor<br>New York NY 10022<br>United States of America[19] |

---

[15] Cited as the legal address per LEI.report
根据 LEI.report 引用为法定地址
[16] Incorporated in Delaware, United States of America
成立于美国特拉华州
[17] Incorporated in Delaware, United States of America
成立于美国特拉华州
[18] Incorporated in Delaware, United States of America
成立于美国特拉华州
[19] Incorporated in the Cayman Islands
成立于开曼群岛

**HARNEYS**

| NO.<br>编号 | Dissenter<br>异议者 | Address[3]<br>地址 |
|---|---|---|
| 22. | HCN LP | C/O Halcyon Capital Management, LLC<br>477 Madison Ave., 8th Floor<br>New York NY 10022 United States Of America[20] |
| 23. | Bardin Hill Event-Driven Master Fund LP | C/O Bardin Hill Investment Partners Lp<br>477 Madison Ave., 8th Floor<br>New York NY 10022[21] |
| 24. | APS Holding Corporation | 15710 JOHN F KENNEDY BLVD<br>WORLD HOUSTON PLZ STE 700<br>HOUSTON TX 77032[22] |
| 25. | Hildene Opportunities Master Fund II Ltd | PO Box 309, Ugland House<br>South Church Street, George Town<br>KY1-1104, Cayman Islands[23] |
| 26. | George Town Holdings | C/O Carey Olsen<br>Willow House, Cricket Square, PO Box 10008<br>Grand Cayman KY1-1001<br>Cayman Islands |
| 27. | Camelot Event Driven Fund, a series of Frank Funds Trust | 000 Town Centre Drive. Suite 400<br>Broadview Heights, Ohio 44147<br>United States of America[24] |

---

[20] Incorporated in Delaware, United States of America
成立于美国特拉华州

[21] Incorporated in the Cayman Islands
成立于开曼群岛

[22] Incorporated in Delaware, United States of America
成立于美国特拉华州

[23] Cited as their legal address on OpenLEIs.com
根据 OpenLEIs.com 引用为法定地址

[24] Cited as their address on their website.
根据其网站引用为其地址

12

**HARNEYS**

| NO. 编号 | Dissenter 异议者 | Address[3] 地址 |
|---|---|---|
| **Dissenter represented by Ogier** **由Ogier代表的异议股东** | | |
| 28. | Capital Ventures International | Windward 1 Regatta Office Park, West Bay Road Grand Cayman E9 KY1-1103 Cayman Islands |

**HARNEYS**

**Appendix B – Categories of documents to be disclosed**
**附件 B — 需要披露的文件类别**

Documents which exist and are within the Company's possession, custody or power and which fall within the following categories:

存在的由公司占有、保管或掌控并属于以下类别的文件：

a.  Communications, documents and other materials between and/or previously provided to or obtained from Morgan Stanley Asia Limited /or its affiliates (the **Financial Advisors**) in relation to the fair value opinion and for the purposes of compiling that opinion, including those passing between the Financial Advisors and:

   (i)   the independent directors or Special Committee of the Company;

   (ii)  the Company's other directors, management, employees, counsel or advisors; and

   (iii) the buyer group and/or any of their respective advisors and/or representatives (the **Buyer Group**); and

Morgan Stanley Asia Limited /或其附属机构（财务顾问）之间和/或先前向其提供或从其获得的与公允价值意见有关以及为编制该意见的通信、文件和其他材料，包括财务顾问与以下人员之间的沟通：

   (i)   公司的独立董事或特别委员会；

   (ii)  公司的其他董事、管理层、雇员、律师或顾问；及

   (iii) 买方集团和/或他们各自的任何顾问和/或代表（*买方集团*）；及

b.  Communications, documents and other materials previously provided to or obtained from the Financial Advisors, and created by the Company and/or the Special Committee, concerning all terms of the Financial Advisors' engagement as such, and any negotiations/discussions between the Special Committee and/or its advisors and the Financial Advisors regarding the terms of that engagement;

之前提供给财务顾问或从财务顾问处获得的、由公司和/或特别委员会制作的、关于财务顾问的所有聘用条款的通信、文件和其他材料，以及特别委员会和/或其顾问与财务顾问之间关于该聘用条款的任何谈判/讨论；

c.  Communications, documents and other materials passing between the Special Committee and the Company's other directors, management, employees, counsel or advisors, and/or

14

HARNEYS

between the Special Committee and/or its advisors and/or representatives and a Buyer Group in relation to the Merger;

特别委员会与公司其他董事、管理层、雇员、律师或顾问之间，和/或特别委员会和/或其顾问和/或代表与买方集团之间就合并事宜进行的通信、文件和其他材料；

d.  Communications, documents and other materials previously produced by, provided to or communicated between employees, directors, management or consultants of the Company in the production and calculation of any projections sent to the Financial Advisors or the Special Committee and any other sets of management projections in existence;

公司员工、董事、管理层或顾问在制作和计算发送给财务顾问或特别委员会的任何预测以及现存的任何其他几套管理预测时，先前制作的、提供给他们的或他们之间交流的通信、文件和其他材料；

e.  Communications, documents and other materials passing between the Company and a Buyer Group or other party who considered or did participate in making any offer for the Company (whether provided to or from any of the persons mentioned in (a), (b) or (c) above or passing between such persons for the purposes of undertaking due diligence on the Company or otherwise in relation to the merger (including but not limited to all management forecasts provided to the same);

公司与买方集团或其他考虑或已参与对公司提出任何要约的一方之间传递的通信、文件和其他材料（无论是向上述(a)、(b)或(c)中提到的任何人员提供的、这些人员提供的，还是这些人员之间为对公司进行尽职调查或其他与合并有关的目的传递的（包括但不限于向其提供的所有管理预测）；

f.  Communications, documents, and other materials previously provided to or obtained from a Buyer Group's financiers or prospective financiers (whether provided to or from any of the persons mentioned in paragraph (a), (b), (c), or (d) above or passing between such persons) for the purposes of securing finance for the merger transaction (by way of debt finance or equity capital contributions), undertaking due diligence on the Company and/or for negotiating the terms of the Merger (including those concerning price, structure or conditions);

为确保合并交易的融资（通过债务融资或股本出资）、对公司进行尽职调查和/或谈判合并条款（包括有关价格、结构或条件的条款），先前向买方集团的融资人或潜在融资

HARNEYS

人提供或从他们那里获得的通信、文件和其他材料（无论是向上述(a)、(b)、(c)或(d)段所述的任何人员提供或从他们那里获得，还是在这些人员之间传递）；

g.  Board meeting agendas and minutes and any board packs and/or other reports prepared for board meetings including any supporting documentation;
董事会会议议程和会议记录以及为董事会会议准备的任何董事会文件包和/或其他报告，包括任何证明文件。

h.  Monthly management accounts;
月度管理账户；

i.  Management reports and any other documents routinely prepared by or for management and any business plans, accounts or other financial statements of any type (including any accompanying or supporting documentation) provided to the recipient;
管理报告和由管理层或为管理层例行编制的任何其他文件，以及提供给接收方的任何业务计划、账户或其他任何类型的财务报表（包括任何附带或支持文件）；

j.  Consolidated quarterly accounts;
季度综合账户；

k.  Monthly and/or quarterly financials including, where available, profit and loss statements, balance sheets, cash flow statements and any accompanying notes or commentary;
月度和/或季度的财务状况，包括（如有）损益表、资产负债表、现金流量表和任何附带的说明或评论；

l.  Internal long-term projections, forecasts, budgets, reports and models including source data and any supporting documentation (including projections about user growth and revenues per user);
内部长期预测、预报、预算、报告和模型，包括源数据和任何支持文件（包括关于用户增长和每个用户收入的预测）；

16

HARNEYS

m.  External projections, forecasts, budgets and reports relating to the Company's long-term plans including any supporting documentation;

与公司长期计划有关的外部预测、预报、预算和报告，包括任何证明文件；

n.  Any communications, board minutes or other documents relating to the Company's projections (for the avoidance of doubt including but not limited to those documents and communications previously produced by, provided to, or communicated between, employees of the Company in the production and calculation of the projections sent to the Financial Advisor and any other sets of projections in existence);

与公司预测有关的任何通信、董事会记录或其他文件（为避免疑问，包括但不限于公司员工在制作和计算发送给财务顾问的预测时先前制作的、提供给他们的或他们之间交流的那些文件和通信，以及现存的任何其他几套预测）；

o.  Valuations or models of the Company (or any part of it, whether prepared for financial reporting, tax or investment appraisal purposes or otherwise) prepared by or for the Company, including any accompanying or supporting documentation and documents provided to or obtained from any financial advisor in relation to any such valuation;

由公司或为公司编制的公司评估或模型（或其任何部分，无论是否为财务报告、税务或投资评估目的而编制），包括就任何此类评估向任何财务顾问提供或从其获得的文件和任何随附或支持文件和文件；

p.  Analyst, third party market and industry reports relevant to the markets in which the Company operates;

与公司经营市场相关的分析、第三方市场和行业报告；

q.  Agreements with the Company's major suppliers and any related communications and documentation;

与公司主要供应商的协议以及任何相关的通信和文件；

r.  Internal documents relating to market share and margins broken down by business segment where available;

与市场份额和按业务部门分类的利润率有关的内部文件，如有；

17

VAL-1 Page 39

**HARNEYS**

s.   Internal documents relating to any other potential acquisition of the Company considered by the Company's management;

与公司管理层考虑的任何其他潜在收购有关的内部文件；

t.   Communications and documents relating to any significant changes to the business or industry-related events having a significant effect on the Company's long term projections;

与业务的任何重大变化或对公司的长期预测有重大影响的行业相关事件有关的通信和文件；

u.   Communications and documents relating to potential significant transactions of the Company's shares;

与公司股份的潜在重大交易有关的通信和文件；

v.   Documents supporting the values of long-term investment, loans and other receivables and liabilities;

证明长期投资、贷款和其他应收款项及负债价值的文件；

w.   Documentation of any off-balance-sheet or non-operating assets and liabilities, including pension liabilities;

任何资产负债表外或非经营性资产和负债的文件，包括退休金负债；

x.   Terms and conditions of any outstanding share options;

任何未完成的股票期权的条款和条件；

y.   Advice or analysis relating to corporation tax, withholding tax or other tax prepared by or for the Company's management;

由公司管理层或为其准备的与公司税、预扣税或其他税种有关的建议或分析；

z.   Communications and documents relating to potential significant transactions of the Company's shares and the terms and conditions of any outstanding share options; and

与本公司股份的潜在重大交易以及任何未完成的股票期权的条款和条件有关的通信和文件；及

18

**HARNEYS**

aa.   The number and class of shares issued and any changes thereto

已发行股票的数量和类别及其任何变化

**HARNEYS**

**Appendix C – Dissenters - Categories of documents to be disclosed**
**附件 C — 异议者 - 需要披露的文件类别**

Documents which exist and are within the Company's possession, custody or power and which were created or received in the five year period ending on the Valuation Date, which fall within the following categories:

存在并由公司拥有、保管或授权的，在截至评估日前的五年期间内创建或收到的文件，并且这些文件属于以下类别：

Unless otherwise stated, the definitions in the Company's proxy statement dated 20 November 2020 (the **"Proxy"**) are adopted herein below.

除非另有说明，下文采用本公司 2020 年 11 月 20 日的股东签署的委托书（"委托书"）中的定义。

a.　Communications and documents produced by, provided to or obtained from Morgan Stanley or its affiliates (the "Financial Advisor") in relation to the merger, which includes all matters set out in the Proxy (including but not limited to the fair value opinion dated 28 September 2020 (the **"Fairness Opinion"**), Merger Agreement, Plan of Merger and Transactions) (the **"Merger"**), including those passing between the Financial Advisor and:

　　Morgan Stanley 或其关联公司（"财务顾问"）制作、提供或获得的与合并有关的通信和文件，其中包括委托书中列出的所有事项（包括但不限于 2020 年 9 月 28 日的公允价值意见（"公允意见"）、合并协议、合并计划和交易）（"合并"），包括财务顾问与如下人物的传递：

　　i.　The independent directors or Special Committee of the Company;
　　　　公司的独立董事或特别委员会；

　　ii.　The Company's other directors, management, employees, counsel or advisors; and
　　　　公司的其他董事、管理层、雇员、律师或顾问；以及

　　iii.　The Buyer Group and/or any of their respective advisors and/or representatives (the **"Buyer Group Team"**); and
　　　　买方集团和/或其各自的任何顾问和/或代表（"买方集团团队"）；以及

　　iv.　Any other potential purchasers.
　　　　任何其他潜在的购买者。

20

VAL-1 Page 42

**HARNEYS**

b. Any communications with and documents produced by, provided to or received by the Special Committee or its members in relation to the Merger including communications, documents and other materials passing between the Special Committee and the Company, or between the Special Committee and the Buyer Group, in relation to the Merger; such communications, documents and other material to include, without limitation, any minutes or agendas of all meetings of the Special Committee, any supporting documentation, notes, records and any other reports prepared for such meetings.

特别委员会或其成员就合并问题产生的、向其提供的或收到的任何通信和文件，包括特别委员会与公司之间或特别委员会与买方集团之间就合并问题进行的通信、文件和其他材料；此类通信、文件和其他材料包括但不限于特别委员会所有会议的任何记录或议程、任何辅助文件、笔记、记录和为此类会议准备的任何其他报告。

c. Any communications and documents in relation to the appointment of Song Yi Zhang, Yichen Zhang and Yan Wang as directors of the Company (including communications and documents made and produced prior to their appointment) and any internal or external analysis conducted in respect of their independence as directors.

有关任命张颂义、张懿宸和汪延为公司董事的任何通讯和文件（包括在他们被任命之前所做的通讯和文件）以及就他们作为董事的独立性所进行的任何内部或外部分析。

d. Any communications and documents in respect of the Company's decision to form the Special Committee, including the Company's choice of independent directors.

与公司决定成立特别委员会有关的任何通信和文件，包括公司对独立董事的选择。

e. Communications, documents and other materials previously produced by, provided to, or communicated between employees, directors, management or consultants of the Company in the production and calculation of any projections sent to the Financial Advisor and Special Committee and any other sets of projections in existence (including, for the avoidance of doubt, in respect of any proposal).

在制作和计算发送给财务顾问和特别委员会的任何预测以及现有的任何其他几套预测（为避免疑问，包括与任何提案有关的预测）时，先前由公司雇员、董事、管理层或顾问制作、提供给他们或他们之间沟通的通信、文件和其他材料。

HARNEYS

f.   All communications, documents and other materials passing between the Company on the one hand and the Buyer Group on the other, including any communications and documents produced by, previously provided to or obtained from the Buyer Group or any of its members (whether provided to or from any of the persons mentioned in (a), (b) or (c) above or passing between such persons), for purposes of undertaking due diligence on the Company or otherwise in relation to the Merger (including, but not limited to, all management forecasts or other budgets, models or reports provided to the same, all prior versions and drafts of the Merger Agreement and all communications and documents relevant to the negotiation of the same).

在本公司与买方集团之间传递的所有通讯、文件和其他材料，包括买方集团或其任何成员制作的、先前向其提供的或从其获得的任何通讯和文件（无论是向上述(a)、(b)或(c)中提到的任何人员提供的，还是在这些人员之间传递的）。为对公司进行尽职调查或其他与合并有关的目的（包括但不限于向其提供的所有管理预测或其他预算、模型或报告、合并协议的所有先前版本和草案以及与谈判该协议有关的所有通信和文件）。

g.   Communications, documents, and other materials previously provided to or obtained from the Buyer Groups' financiers or prospective financiers (whether provided to or received from any of the persons mentioned in paragraph (a), (b) or (c) above or passing between such persons) for the purposes of securing finance for the merger transaction (by way of debt finance or equity capital contributions), undertaking due diligence on the Company and/or for negotiating the terms of the Merger (including those concerning price, structure or conditions).

为确保合并交易的融资（通过债务融资或股本出资的方式）、对公司进行尽职调查和/或谈判合并条款（包括有关价格、结构或条件的条款），先前向买方集团的融资人或潜在融资人提供或从他们那里获得的通信、文件和其他材料（无论是向上述（a）、（b）或（c）段所述的任何人员提供或从他们那里获得，还是在这些人员之间传递）。

h.   Communications and documents which were provided to or received from (i) any potential purchasers who considered making or did make proposals in respect of the Merger and (ii) any potential purchaser's financiers or prospective financiers for the purposes of securing finance for a potential purchaser's proposal, undertaking due diligence on the Company and/or for negotiating the terms of a proposal (including those concerning price, structure or conditions),including but not limited to China Minsheng Bank.

向(i)任何考虑就合并提出建议或已经提出建议的潜在购买者和(ii)任何潜在购买者的金融

22

HARNEYS

家或潜在融资人提供或收到的通信和文件，以便为潜在买家的提案提供融资，对公司进行尽职调查和/或就建议的条款（包括有关价格、结构或条件）进行谈判，包括但不限于中国民生银行。

i.   Communications, documents and other materials relating to Weibo Corporation ("Weibo"), including:
      与微博公司（"微博"）有关的通信、文件和其他材料，包括：

      (i)   the Company's valuations or valuation analyses of Weibo and any financial statements of Weibo created or received in the five year period ending on the Valuation Date;
            公司对微博的估值或估值分析，以及在截至评估日的五年期间创建或收到的微博的任何财务报表；

      (ii)  in relation to any proposed or potential sale of the Company's shares in Weibo and/or any proposed or potential privatization or delisting of Weibo, including communications, documents and other materials created by or passing between the Company, the Special Committee, the Financial Advisor, Weibo and/or New Wave (or any other member of the Buyer Group) in relation to the same; and
            有关任何建议或潜在的出售公司在微博的股份和/或任何建议或潜在的微博私有化或退市，包括公司、特别委员会、财务顾问、微博和/或 New Wave（或买方集团的任何其他成员）之间就上述事项建立或传递的通信、文件和其他材料；以及

      (iii) in relation to the indication from New Wave that it would not acquire the Company without Weibo and that it did not wish to break up the Company.
            关于 New Wave 公司表示在没有微博的情况下不会收购本公司，并且不希望拆散公司。

j.   Minutes and agendas of Board meetings and any supporting documentation and any other reports prepared for Board Meetings of the Company.
      董事会会议的记录和议程以及任何证明文件和为公司董事会会议准备的任何其他报告。

k.   Monthly management accounts for the Company.
      公司的月度管理账户。

23

**HARNEYS**

l.   Consolidated quarterly accounts for the Company.

公司的季度综合账户。

m.   Monthly and/or quarterly financials for the Company including, where available, profit and loss statements, balance sheets, cash flow statements and any accompanying notes, commentary, reports or business plans.

公司的月度和/或季度财务状况，包括（如有）损益表、资产负债表、现金流量表以及任何附带的说明、评论、报告或商业计划。

n.   Financial projections, forecasts, valuations, budgets, reports and models and supporting documentation including source data which were:

财务预测、预报、估价、预算、报告和模型以及辅助文件，包括源数据，这些都是：

    i.   Prepared by or for the Company for internal planning purposes, financial reporting, tax, investment appraisal, or in relation to the Company's long term plans, including any communications, board minutes or other documents relating to the Company's projections (for the avoidance of doubt including but not limited to those documents and communications previously produced by, provided to, or communicated between, employees of the Company in the production and calculation of the projections sent to the Financial Advisor and any other sets of projections in existence);

由公司或为公司编制的用于内部规划、财务报告、税务、投资评估或与公司长期计划有关的文件，包括与公司预测有关的任何通信、董事会会议记录或其他文件（为避免疑问，包括但不限于公司员工在制作和计算发送给财务顾问的预测时先前制作的、提供给他们的或他们之间沟通的那些文件和通信以及现有的任何其他几套预测）；

    ii.   Exchanged between the Company and the Special Committee and/or the Financial Advisors;

公司与特别委员会和/或财务顾问之间的交流；

    iii.   Exchanged between the Company and the Buyer Groups; and

公司与买方集团之间的交流；以及

    iv.   Exchanged between the Company and a potential purchaser.

公司与潜在购买者之间的交流。

**HARNEYS**

Such documents to include:

这些文件包括：

i. Internal long-term forecasts, budgets, projections, reports and models including source data and any supporting documentation;

内部长期预测、预算、预测、报告和模型，包括源数据和任何证明文件。

ii. External forecasts, budgets, projections, reports and models relating to the Company's long-term plans including any supporting documentation;

与公司长期计划有关的外部预测、预算、预测、报告和模型，包括任何证明文件。

iii. Any communications, board minutes or other documents relating to the Company's projections (for the avoidance of doubt including but not limited to those documents and communications previously produced by, provided to, or communicated between, employees of the Company in the production and calculation of the projections sent to the Financial Adviser and any other sets of projections in existence; and

与本公司预测有关的任何通信、董事会记录或其他文件（为避免疑问，包括但不限于公司雇员在制作和计算发送给财务顾问的预测时先前制作的、提供给他们的或他们之间交流的那些文件和通信，以及现有的任何其他预测；以及

iv. Valuations or models of the Company (or any part of it, and whether for financial reporting, tax or investment appraisal purposes or otherwise) prepared by or for the Company, including any accompanying or supporting documentation and documents provided to or obtained from any financial adviser in relation to any such valuation.

由公司或为公司准备的公司（或其任何部分，以及无论是出于财务报告、税务或投资评估目的还是其他目的）的评估或模型，包括就任何此类评估向任何财务顾问提供或从其获得的任何附带或证明文件。

o. Analyst, third party market and industry reports relevant to the markets in which the Company operates, including any communications with and documents produced by, provided to or received from any such analyst, third party and/or industry member.

HARNEYS

与公司经营的市场有关的分析者、第三方市场和行业报告，包括与任何此类分析者、第三方和/或行业成员的沟通，以及向其提供或从其收到的文件。

p. Internal documents relating to market share and commission broken down by business segment (where available).
按业务部门划分的市场份额和佣金相关的内部文件(如有)。

q. Internal documents relating to any other potential acquisition of the Company considered by the Company's management.
与公司管理层考虑的任何其他潜在收购公司有关的内部文件。

r. Agreements with the Company's major suppliers and any related communications and documentation.
与公司主要供应商的协议以及任何相关的通信和文件。

s. Communications and documents relating to any significant changes to the business of the Company or industry- related events that either had, or were perceived as having, a significant effect on the Company's long term projections.
与公司业务的任何重大变化或与行业有关的事件有关的对公司的长期预测被认为有重大影响的事件的通信和文件。

t. Communications and documents relating to the value of investments including, but not limited to, all documents and communications related to the IPO and pre-IPO funding of Tusimple and/or any potential relisting or IPO of the Company, in the People's Republic of China or elsewhere, whether or not said potential relisting or IPO was ultimately pursued.
与投资价值有关的通信和文件，包括但不限于与 Tusimple 的 IPO 和 IPO 前融资和/或公司在中华人民共和国或其他地方的任何潜在重新上市或 IPO 有关的所有文件和通信，无论上述潜在重新上市或 IPO 最终是否被采纳。

u. Communications and documents supporting the values of loans and other receivables and liabilities of the Company.
证明公司贷款和其他应收账款及负债价值的通信和文件。

26

**HARNEYS**

v.  Communications and documents relating to the value of any real estate holdings of the Company including but not limited to, valuations, lease agreements with tenants, investment plans or proposals.

与公司持有的任何房地产的价值有关的通信和文件，包括但不限于评估、与租户的租赁协议、投资计划或建议。

w.  The number and class of shares issued and any changes thereto, and the terms and conditions of any outstanding share options and any documents or communications relating to any potential stock buybacks.

已发行股票的数量和类别及其任何变化，以及任何尚未行使的股票期权的条款和条件，以及与任何潜在股票回购有关的任何文件或通信。

x.  Any communications produced by, provided to or received from the Company and/or any of its shareholders in relation to shareholders' interests and incentives and exercise of shareholders' voting rights or voting agreements, including all written objections to the Merger received by the Company and any documents responding to, discussing, analysing or commenting on the objections received from shareholders.

由公司和/或其任何股东制作、提供或收到的与股东利益和激励措施以及行使股东投票权或投票协议有关的任何通信，包括公司收到的对合并的所有书面反对意见以及对股东提出的反对意见进行回应、讨论、分析或评论的任何文件。

y.  Communications and documents relating to any actual or potential significant transactions of the Company's shares.

与本公司股票的任何实际或潜在重大交易有关的通信和文件。

z.  Documentation of any off-balance sheet or non-operating assets and liabilities of the Company, including pension liabilities.

公司的任何资产负债表外或非经营性资产和负债的文件，包括养老金负债。

aa. Any communications or documents relating to any material non-public information ("MNPI") in relation to the Company, and the value of the shares of the Company.

与公司的任何重大非公开信息（"MNPI"）有关的任何通信或文件，以及本公司股份的价值。

VAL-1 Page 49

**HARNEYS**

bb. Any communications or documents produced by, provided to, received from or communicated between employees, directors, management or consultants of the Company in relation to the market price of the shares of the Company including, but not limited to, documents discussing whether the Company's market price was believed to have reflected the Company's intrinsic value.

公司雇员、董事、管理层或顾问就公司股份的市场价格所制作、提供给他们、从他们那里收到或沟通的任何通讯或文件，包括但不限于讨论公司的市场价格是否被认为已反映本公司的内在价值的文件。

In respect of paragraphs (h) to (bb) above, Company shall be defined as meaning the Company, its Affiliates, Controlled Entities and/or Subsidiaries.

就上述(h)至(bb)段而言，公司的定义是指本公司、其关联公司、受控实体和/或附属公司。

28

3:57 📡                                    📶 4G 🔋

‹                    电子存根                    •••  ◉

**电子存根**          运单详情



**目的地：**
**010**

SF6509503610487

李琳 150****2155 👁
寄 北京市北京市海淀区北京市海淀区西北旺东路10号院8号楼新浪总部大厦

北京网信网安处 186****6689 👁
收 北京市北京市朝阳区华威南路弘善家园弘善家园413号楼

| 托寄物 | 数量 | 物品价值 |
|---|---|---|
| 文件票件 | 1 | 4001–5000元 |

| 产品类型： | 同城急送 | 付款方式： | 寄付现结 |
|---|---|---|---|
| 实际重量： | 1.00 | 件数： | 1 |
| 计费重量： | 1.00 | 应付总金额： | ￥65.50 |

优惠信息：

| 优惠金额 | – ￥9.45 |
|---|---|
| 实际支付费用 | ￥56.05 |

备注：无
寄件时间：                    2021–11–01 13:46:49
收件时间：                    2021–11–01 13:55:25
完成时间：                    2021–11–01 16:13:30
订单编号：                    CX2237796308869388

3:57 ⏎                                    ⊾⊿ 4G ⊡⚡

## Electronic Slip

**Electronic Slip**          **Waybill Details**

                             **Destination:**

SF6509503610487              **010**


Shipper:        LI Ling 150****2155

                No.8 Sina Plaza Courtyard 10, the West XiBeiWang E. Rd, HaiDian District, Beijing

Receiver:       Cybersecurity Department of Beijing Cyberspace Administration 186****6689

                Building 413, Hongshan Jiayuan, Hongshan Jiayuan, South Huawei Road, Chaoyang
                District, Beijing, Beijing


Content               Quantity                        Article Value

Document              1                                4001-5000 Yuan

Product Type:  speedy express - same city      Payment Terms: delivery fee prepaid in cash

Actual Weight:        1.00              Piece:        1

Chargeable Weight:    1.00              Total Payable:    RMB 65.50

Discount Information:

Discount Amount:                               - RMB 9.45


Actual Charge:                                 RMB 56.05


Remarks: N/A

Sent at:           2021-11-01 13:46:49

Collected at:      2021-11-01 13:55:25

Completed at:      2021-11-01 16:13:30

Order No.:         CX2237796308869388

# 公 证 书

（2021）沪奉证外字第 2589 号

申请人：VICTORIA ANN LORD，女，1981 年 8 月 15 日出生，英国护照号码：548266456。

公证事项：签名

兹证明 VICTORIA ANN LORD 于 2021 年 11 月 9 日来到我处，在本公证员的面前，在前面的《FIRST AFFIRMATION OF VICTORIA ANN LORD》上签名。

中华人民共和国上海市奉贤公证处

公 证 员 



2021 年 11 月 23 日





—1—

扫码在线核验本公证书真伪

# NOTARIAL CERTIFICATE

(2021)H.F.Z.W.Z.No.2589

Applicant: VICTORIA ANN LORD, female, born on August 15, 1981, British Passport No.:548266456.

Notary matters: Signature

This is to certify that VICTORIA ANN LORD came to our office and signed on the foregoing *FIRST AFFIRMATION OF VICTORIA ANN LORD* in front of this notary public on November 9, 2021.

Fengxian Notary Public Office Shanghai

The People's Republic of China

(seal)

Notary Public: Zhu Wei

(seal)

Dated this 23rd day of November, 2021

I V42987306